UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 cv 10541

-------------------------------------------------------------------------x

CORDELL CONSULTANTS, INC., MONEY :     Civil Action No. _____
PURCHASE PLAN, a Qualified Florida Retirement :
Plan Trust, and CORDELL FUNDING, LLLP :
    :
                   Plaintiffs, :
    :
     - against - :
    :
EDWARD H. OKUN; SAM TRUSTEE SERVICES, :
LLC; IPOFA 5201 LENDER, LLC; INVESTMENT :
PROPERTIES OF AMERICA, LLC; CROSSROADS :
TRANSPORTATION & LOGISTICS, INC.; SIMONE :
CONDO I, LLC; and SIMONE CONDO II, LLC, :
    :
                Defendants. :

-------------------------------------------------------------------------x

## NOTICE OF REMOVAL

        Defendants IPofA 5201 Lender, LLC; Investment Properties Of America, LLC;

Crossroads Transportation & Logistics, Inc.; Simone Condo I, LLC; and Simone Condo II, LLC

("Defendants"), pursuant to 28 U.S.C. §§ 1446 and 1452(a) hereby file this Notice of Removal

of this action, on the basis that it arises in and/or is related to cases under title 11 of the United

States Code, from the Supreme Court of New York, County of New York, where it is currently

pending, to the United States District Court for the Southern District of New York, and state as

follows:

        1.     Plaintiffs Cordell Consultants, Inc., Money Purchase Plan and Cordell

Funding LLLP (together, "Cordell") commenced this action by filing a Motion for Summary

Judgment in Lieu of Complaint in the Supreme Court of the State of New York, Index No.

603472/07, on or about October 19, 2007, and simultaneously moved by order to show cause for

an attachment and for the appointment of a receiver.  The Court issued an order to show cause

with temporary restraining order on October 22, 2007.  Cordell then served its initial pleadings,

the order and the underlying motion papers on defendants on October 23, 2007 and thereafter.

Cordell's motions have been adjourned to December 20, 2007. A copy of Cordell's initial

pleadings are annexed hereto as Exhibit A. A copy of the October 22, 2007 with underlying

Affirmation of Douglas E. Spelfogel, Esq. In Support of Ex Parte Motion for Attachment and

Appointment of Receiver ("Spelfogel Aff.") are attached hereto as Exhibit B.

       2.      This Notice of Removal is filed within thirty (30) days after receipt by

defendants of the initial pleading on which this action is based, pursuant to 28 U.S.C. § 1446(b)

and Federal Rule of Civil Procedure 6(a).

       3.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334, in that this action arises in and is related to cases filed under title 11.

### PLAINTIFFS' CLAIMS "ARISE IN" AND ARE "RELATED TO" CASES UNDER TITLE 11

       4.      Section 1452 (a) of title 28 of the United States Code provides that "[a]

party may remove any claim or cause of action in a civil action . . . to the district court where

such civil action is pending, if such district court has jurisdiction of such claim or cause of action

under § 1334 of this title."

       5.      Under 28 U.S.C. § 1334(b), this Court has jurisdiction to hear all civil

proceedings "arising under title 11, or arising in or related to cases under title 11." A claim in a

civil action is "related to" a bankruptcy case under title 11 if "the outcome of that proceeding

could conceivably have any effect on the estate being administered in bankruptcy." *In re*

*Worldcom, Inc. Securities Litigation*, 293 B.R. 308, 317 (S.D.N.Y. 2003), *citing In re Cuyahoga*

*Equipment Corp.*, 980 F.2d 110 (2d Cir. 1992), as adopting the standard set forth in *In re Pacor,*

*Inc.*, 743 F.2d 984 (3d Cir. 1984).

> For a federal court to have "related to" jurisdiction over an action, 'the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'

*In re Worldcom*, 293 B.R. at 317-318, *citing Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995). Thus, the proceedings need not be asserted against the debtor or the debtor's property in order for the claim to be "related to" the debtor's bankruptcy case. *In re Worldcom*, 293 B.R. at 311-312 (holding that cases against defendants connected to Worldcom, but which were not debtors themselves, were properly removed as being "related to" a bankruptcy case).

6.      Under this standard, this case both "arises in" and is "related to" pending bankruptcy cases.

7.      Plaintiffs state the they "have made four separate secured loans to certain Defendants in the aggregate principal amount of approximately $42 million as of August 1, 2007, which loans have been guaranteed by certain other Defendants," and that such loans are in default. (Spelfogel Aff. at ¶ 3.) Plaintiffs seek a judgment against defendants of more than $42 million, as well as an attachment of the defendants' personal property and the appointment of a receiver. Plaintiffs have also obtained an *ex parte* restraining order that restricts the transfer of certain notes and other assets that belong to certain of the defendants.

*Four Defendants Have Filed Bankruptcy Petitions*

8.      On November 15, 2007, four of the defendants in this case – IpofA 5201 Lender, LLC, Investment Properties of America LLC, Simone Condo I, LLC and Simone Condo II, LLC – filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Cases"). The case

numbers assigned to these cases, which are all assigned to Bankruptcy Court Judge Hon. Martin
Glenn, are, respectively, case number 07-13622-MG, case number 07-13621-MG, case number
07-13629-MG, and case number 07-13630-MG.

9.      The Bankruptcy Cases are related to a group of other cases already
pending before Judge Glenn in the Bankruptcy Court, entitled *In Re The 1031 Tax Group, LLC,
et al.,* Case Nos. 07-B-11448 (MG) (Jt. Admin.) (the "1031 Cases"). Gerard A. McHale, Jr., has
been appointed Chapter 11 Trustee for the debtors (the "1031 Debtors") in the 1031 Cases. (The
1031 Cases and the Bankruptcy Cases are referred to jointly herein as the "1031 Bankruptcy
Cases").

10.     The fact that four of the seven defendants in this case have now filed
bankruptcy petitions in and of itself brings this action within the "arising in" jurisdiction of this
Court. As a result of these filings, this action is now a civil proceeding "arising in . . . cases
under title 11, " a basis for removal of this case pursuant to 28 U.S.C. § 1452(a) and 28 U.S.C. §
1334(b).

*All Defendants Are Interrelated with Bankruptcy Debtors*

11.     In addition, all of the claims in this case are "related to" the 1031
Bankruptcy Cases, thus providing another basis for removal under 28 U.S.C. § 1452(a) and 28
U.S.C. § 1334(b).

12.     The 1031 Cases, the Bankruptcy Cases and this action are all related to the
mass diversion of funds from the debtors in the 1031 Cases by defendant Edward H. Okun
("Okun"), who was the sole member of that entity. Prior to the bankruptcy filing of the 1031
Cases, the 1031 Tax Group LLC and related entities, which are now the debtors in the 1031
Cases, acted as "qualified intermediaries," providing custodial services to individuals and entities
(the "exchangers") conducting deferred like-kind property exchanges consummated pursuant to

section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031. In the course of their businesses, the 1031 Debtors accumulated cash to be held in custody for exchangers. Beginning in 2005 and continuing until 2007, prior to the filing of the 1031 Cases, a substantial portion of the money held by the 1031 Debtors was wrongfully taken by Okun and used to invest in the business and investment activities of entities that Okun owned or controlled, including defendants in this action, and to purchase a shocking array of luxury homes, planes, boats and cars.

13.    The defendant entities in this action are related to the wrongful conduct by Okun that is at the center of the 1031 Cases. Plaintiffs acknowledge that Okun is "the principal of all of the other Defendants." Spelfogel Aff. ¶ 3. Okun was also the direct or indirect principal of all of the debtors in the 1031 Bankruptcy Cases. As alleged by Cordell in this action, "Okun is the sole member of The 1031 Tax Group, LLC, which is the direct and indirect parent of certain other entities (collectively, the '1031 Entities'). Okun is or was a member, director and/or person in control of all of the 1031 Entities." Spelfogel Aff. ¶ 40.

14.    In short, as plaintiffs allege here, and as alleged in connection with the 1031 Bankruptcy Cases, Okun was engaged in a massive fraud by utilizing numerous entities to defraud investors and lenders out of $130 million or more. (*See, e.g.*, Spelfogel Aff. at ¶ 39-44) The defendants in this action are entities used as part of this fraud.

15.    Thus, all of the defendants (debtors and non-debtors) and the assets at issue in this case are "related to" the 1031 Bankruptcy Cases. They, as well as all the debtors in the 1031 Bankruptcy Cases, were all subject to Okun's ownership and control, and monies and assets moved between them and the Debtors as part of Okun's diversion of funds. Further, the assets that Cordell is seeking to attach and otherwise affect through the imposition of a Receiver, and by obtaining a judgment against defendants, are subject to claims by the 1031 Debtors to the

extent that the 1031 Debtors' funds, which are essentially funds that were diverted from exchangers, were used to acquire these assets.

*The Transfer Agreement*

16.     This case is also "related" to the 1031 Bankruptcy Cases based on a court-approved agreement under which Okun and his wife transferred to the Trustee in the 1031 Cases all of their interests in real property and tangible and intangible property owned by them, directly or indirectly, subject to certain limited exceptions.

17.     Specifically, on October 11, 2007, Okun and the Debtors in the 1031 Cases entered into an Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates (the "Transfer Agreement"). The Transfer Agreement was approved by the Bankruptcy Court by an Order entered on October 26, 2007. (The Transfer Agreement and Order approving it are annexed hereto as Exhibits C and D respectively.)

18.     Under the Transfer Agreement, Okun and his wife, subject to a few specified exceptions, conveyed from the Okuns to the Debtors in the 1031 Cases "all right, title and interest, direct and indirect, in and to Assets," which are in turn defined as including "all of the real property, tangible and intangible personal property owned by the Grantors [Okun and his wife] directly or indirectly, or acquired by the Grantors during the term of this Agreement . . ." (Exhibit C, §2) The term of the Agreement continues "until all allowed claims in the Debtors' Chapter 11 cases are paid in full, with applicable interest." (Ex. C §7.2) The Agreement provides that "Assets" specifically include ownership interests in entities owned and controlled by Okun, including the defendants, "and all associated rights and benefits flowing from such ownership interests, including without limitation . . . the right to vote or consent with respect to any action taken by such entities . . . ." (*Id.*, §2)

19.     Thus, under the Transfer Agreement, Okun's ownership interest in the defendants and their assets were transferred by Okun to the 1031 Debtors, and are now under the control of the Trustee appointed in the 1031 Cases. Cordell's claims in this action therefore are directed against entities and assets that belong to the 1031 Debtors and are under the control of the Trustee in the 1031 Cases. Plainly, resolution of plaintiffs' claims "could conceivably" have an effect on the administration of the estates of the 1031 Bankruptcy Cases.

20.     Plaintiffs' pleadings make clear that they seek to recover money from and enforce their security interests against collateral held by parties that have filed for protection of the Bankruptcy Court. In addition, this case is "related to" the 1031 Bankruptcy Cases, because the defendants and claims in this proceeding are part of the same web spun by Okun, and resolution of this case against them not only "could," but undeniably "would," impact the administration of the 1031 Bankruptcy Cases. Moreover, the assets at issue in this proceeding constitute assets that are under the jurisdiction of the Bankruptcy Court as a result of the court-approved Transfer Agreement. Removal of this action pursuant to 28 U.S.C. § 1452(a) is therefore warranted.

## CONCLUSION

21.     A copy of this Notice promptly will be filed with the Clerk of the Supreme Court for the State of New York, County of New York, as provided by law, and written notice will be sent to plaintiffs' counsel and defendant Edward H. Okun.

22.     Defendants have not sought similar relief.

23.     If any questions arise as to the propriety of the removal of this action, movants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is removable.

**WHEREFORE,** defendants IPofA 5201 Lender, LLC; Investment Properties of America, LLC; Crossroads Transportation & Logistics, Inc.; Simone Condo I, LLC; and Simone Condo II, LLC respectfully request that this action currently pending in the Supreme Court of the State of New York, County of New York be removed therefrom to this Court.

Dated: New York, New York
      November 21, 2007

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP

By:_____
    David J. Eiseman (DE 4584)

437 Madison Avenue, 35th Floor
New York, New York 10022-7302
(212) 907-7300

*Attorneys for Defendants IPofA 5201
Lender, LLC; Investment Properties Of
America, LLC; Crossroads Transportation
& Logistics, Inc.; Simone Condo I, LLC;
and Simone Condo II, LLC*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Florida Retirement
Plan Trust, and CORDELL FUNDING, LLLP,

Index No. _603472/07_

              Plaintiffs,

**SUMMONS**

- against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER, LLC;
INVESTMENT PROPERTIES OF AMERICA,
LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC; and
SIMONE CONDO II, LLC,

              Defendants.

To the above-named Defendants:

You are hereby summoned and required to submit to Plaintiffs' attorney your answering papers on this motion within the time provided in the notice of motion annexed hereto. In case of your failure to submit answering papers, summary judgment will be taken against you by default for the relief demanded in the notice of motion.

The basis of the venue designated is the location for the closing and consummation of the transactions, which are the subject hereof, and agreed to by the parties.

Dated: October 19, 2007
      New York, New York

BAKER & HOSTETLER LLP

By: _____
    Douglas E. Spelfogel
    45 Rockefeller Plaza
    New York, New York 10111
    Phone: (212) 589-4200
    Fax: (212) 589-4201

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Florida
Retirement Plan Trust, and CORDELL
FUNDING, LLLP,

                              Plaintiffs,

      - against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER, LLC;
INVESTMENT PROPERTIES OF AMERICA,
LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC;
and SIMONE CONDO II, LLC,

                              Defendants.

Index No. _603472/07_

**NOTICE OF MOTION FOR
SUMMARY JUDGMENT IN
LIEU OF COMPLAINT**

Upon the summons dated October 19, 2007, and the Affirmation of Douglas E. Spelfogel, dated October 19, 2007, Plaintiffs will move this Court, at the Courthouse located at 60 Centre Street, New York, New York, Motion Submission Part – Room 130, on November 20, 2007, at 9:30 a.m., for summary judgment in lieu of complaint, pursuant to CPLR § 3213, in favor of Plaintiffs and against Defendants, for $42,143,034.00 with interest thereon from August 1, 2007, together with attorneys' fees, and costs and disbursements of this action, upon the ground that this action is based upon an instrument for the payment of money, which is now due and payable, and that there is no defense to the action, and for such other and further relief as the court deems proper.

The above-entitled action is for payment on promissory notes and guarantees.

Pursuant to CPLR § 3213, answering affidavits, if any, are required to be served upon the undersigned at least seven days before the return date of this motion.

1

Dated: October 19, 2007
      New York, New York

BAKER & HOSTETLER LLP

By: _____
    Douglas E. Spelfogel
    45 Rockefeller Plaza
    New York, New York 10111
    Phone: (212) 589-4200
    Fax: (212) 589-4201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Florida Retirement Plan Trust, and CORDELL FUNDING, LLLP, <br><br> Plaintiffs, <br><br> - against - <br><br> EDWARD H. OKUN; SAM TRUSTEE SERVICES, LLC; IPOFA 5201 LENDER, LLC; INVESTMENT PROPERTIES OF AMERICA, LLC; CROSSROADS TRANSPORTATION & LOGISTICS, INC.; SIMONE CONDO I, LLC; and SIMONE CONDO II, LLC, <br><br> Defendants. | Index No. _603472/07_ <br><br> **AFFIRMATION OF DOUGLAS E. SPELFOGEL, ESQ. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT** |

DOUGLAS E. SPELFOGEL, ESQ., an attorney duly admitted to the practice of law in the State of New York, hereby affirms under the penalties of perjury pursuant to Rule § 2106 of New York Civil Practice Law and Rules the following:

1.    I am a partner with the firm of Baker & Hostetler LLP, attorneys for Plaintiffs in this action. I submit this affirmation in support of Plaintiffs' motion for summary judgment in lieu of complaint pursuant to CPLR § 3213.

2.    Plaintiff instituted this action to recover $42,143,034, plus attorneys' fees and interest on four notes and related guarantees made by Defendants on various dates from May 3, 2006 to April 20, 2007 to Plaintiffs' order and delivered to Plaintiffs on such dates.[1]

---

[1] The Lenders are party to a fifth loan in the amount in excess of $13 million not subject to the instant motion.

101876086.2

1

## THE PARTIES

### Plaintiffs

3.    Plaintiff CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN ("Cordell Retirement"), a Qualified Florida Retirement Plan Trust, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

4.    Plaintiff CORDELL FUNDING, LLLP ("Cordell Funding"), a Florida limited liability limited partnership, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

5.    Cordell Retirement and Cordell Funding shall be referred to as the "Lenders."

### Defendants

6.    Defendant EDWARD H. OKUN ("Okun") is an individual who maintains his principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

7.    Defendant SAM TRUSTEE SERVICES, LLC ("Sam"), a Virginia limited liability company, as trustee of the Columbus Works Virginia Trust created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005, and as trustee of the Parkway Virginia Trust created pursuant to the Irrevocable Trust Agreement dated February 22, 2005, maintains its principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

8.    Defendant IPOFA 5201 LENDER, LLC ("IPofA 5201"), a Delaware limited liability company, maintains its principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

9.    Okun, Sam and IPofA 5201 shall collectively be referred to as the "Borrowers."

10.    Defendant INVESTMENT PROPERTIES OF AMERICA, LLC, a Virginia limited liability company, maintains its principal place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

11.    Defendant CROSSROADS TRANSPORTATION & LOGISTICS, INC. ("Crossroads"), a Delaware corporation, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

12.    Defendant SIMONE CONDO I, LLC ("Simone I"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

13.    Defendant SIMONE CONDO II, LLC ("Simone II"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

## THE CORDELL RETIREMENT LOANS

### The 5201 Loan

14.    Cordell Retirement loaned to IPofA 5201 the principal sum of $2,500,000.00, which loan is evidenced by that certain Promissory Note dated December 12, 2006 from IPofA 5201 payable to the order of Cordell Retirement (the "5201 Note," annexed hereto as Exhibit 1), repayment of which 5201 Note is secured by, among other things, a pledge to Cordell Retirement of IPofA 5201's interest in that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000.00 made by various non-parties (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), the Mortgage and Security Agreement dated February 2, 2005 made by Obligor and IPofA West 86th Street LeaseCo, LLC to Morgan Stanley, and the other Loan Documents described in the 5201 Note. See Ex. 1.

15.    Defendants Okun, IPofA and Crossroads (collectively, the "5201 Note Guarantors"), by and through those certain unconditional personal guarantees dated December 12, 2006, have guaranteed the performance of IPofA 5201 under the 5201 Note. The 5201 Note Guarantors' guarantees are annexed hereto as Exhibit 2.

### The $3mil Okun Loan

16.    Cordell Retirement loaned to Okun the principal sum of $3,000,000.00, which loan is evidenced by that certain Promissory Note dated December 19, 2006 from Edward H. Okun payable to the order of Cordell Retirement (the "$3mil Okun Note," annexed hereto as Exhibit 3), repayment of which $3mil Okun Note is secured by, among other things, (i) that certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Derive, Carmel, Indiana, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida, and (iv) the other Loan Documents described in the $3mil Okun Note. See Ex. 3.    Pursuant to agreement (the "Loan Modification Agreement"), as detailed below, Cordell Retirement received and recorded the deeds for the above-referenced collateral.

17.    Defendants Simone I and Simone II (collectively, the "$3mil Okun Note Guarantors"), by and through those certain unconditional personal guarantees dated December 19, 2006, have guaranteed the performance of Okun under the $3mil Okun Note. The $3mil Okun Note Guarantors' guarantees are annexed hereto as Exhibit 4.

### The $7mil Okun Loan

18.     Cordell Retirement loaned to Okun the principal sum of $7,000,000.00, which loan is evidenced by that certain Promissory Note dated April 20, 2007, from Edward H. Okun payable to the order of Cordell Retirement (the "$7mil Okun Note," annexed hereto as Exhibit 5), repayment of which $7mil Okun Note is secured by, among other things, (i) that certain third priority Mortgage Deed and Security Agreement dated April 20, 2007 encumbering the premises at 394 S. Hibiscus Drive, Miami Beach, Florida 33139, (ii) Collateral Assignment of Membership Interest dated April 20, 2007 by which the membership interest in IPofA Salina Central Mall Member, LLC was assigned to Cordell Retirement, and (iii) the other Loan Documents described in the $7mil Okun Note. *See* Ex. 5.

19.     Collectively, all above-described loans where Cordell Retirement is the payee shall be referred to as the "Cordell Retirement Loans."

### THE CORDELL FUNDING LOAN

### The Sam Loan

20.     Cordell Funding loaned to Sam the principal sum of $26,500,000.00, which loan is evidenced by that certain Promissory Note dated May 3, 2006, from Sam Trustee Services, LLC, as trustee of the Columbus Works Virginia Trust and of the Parkway Virginia Trust, payable to the order of Cordell Funding (the "Sam Note," annexed hereto as Exhibit 6), repayment of which Sam Note is secured by, among other things a Collateral Assignment, a Security Agreement, a Guaranty, a Stock Pledge Agreement, a Membership Interest Pledge and the other Loan Documents described in the Sam Note.

21.    Okun, by and through that certain unconditional personal guarantee dated May 3, 2006, has guaranteed the performance of Sam under the Sam Note. Okun's guarantee of the Sam Note is annexed hereto as Exhibit 7.

22.    The above-described loan where Cordell Funding is the payee shall be referred to as the "Cordell Funding Loan."

23.    The Cordell Retirement Loans and the Cordell Funding Loan shall be referred to as the "Loans," and the loan documents supporting the Loans shall be referred to, collectively, as the "Loan Documents."

## DEFAULTS

24.    Under the terms of the Loans, each of the borrowers is required to pay interest only installments based upon the principal amount of the Loans on a monthly basis, due on the first day of the month for the interest accruing the immediate prior month.

25.    On May 1, 2007, the applicable Borrowers, except in respect of the $7mil Okun Note, defaulted under the terms of the Loan Documents by failing timely to pay the May 1, 2007 interest installments due under each of the Loans.

26.    The IPofA 5021 Note and the $3mil Okun Note contain cross default provisions, so that a default under one of these notes constitutes a default under the other.

27.    On June 1, 2007, the applicable Borrowers defaulted under the terms of the Loans, including the $7mil Okun Note, by failing timely to pay the June 1, 2007 interest installments due. As to the $7mil Okun Note this was the first installment due.

28.    In June 2007, the applicable Borrower remitted a partial payment on account of the 5201 Note; however, such payment was delinquent and insufficient to cure the default under the IPofA Note. Regardless whether such payment was a cure of the 5201 Note defaults, such

note provides for a cross-default provision with the $3mil Okun Note and, thus, remains in default.

29.　　The Borrowers further defaulted under the terms of the Loans by failing timely to pay the July 1, 2007 interest installments due.

30.　　Notices of default and opportunity to cure on all Loans were provided to the Defendants. As a result of the default, all of the Loans have been accelerated.

## MODIFICATION/FORBEARANCE AND FURTHER DEFAULTS

31.　　In July 2007, in response to Plaintiffs' notices of default, Defendants contacted Plaintiffs to secure modifications and forbearances in respect of the Loans to provide Defendants with time to refinance and pay the Loans in full.[2]

32.　　Plaintiffs and Defendants entered into that certain Escrow Agreement (the "Escrow Agreement"), dated as of August 1, 2007, which, *inter alia*, requires the deposit of certain funds into escrow. A copy of the Escrow Agreement is annexed hereto as Exhibit 8.

33.　　On August 15, 2007, Plaintiffs and Defendants entered into the Loan Modification Agreement, which, *inter alia*, provides for certain deadlines and conditions for a refinancing, cross default and cross collateralizations for the Cordell Retirement Loans, the delivery of certain collateral to Plaintiff Cordell Retirement, and a reduction of the interest rate charged during the term of the Loan Modification Agreement. The Loan Modification Agreement is annexed hereby as Exhibit 9. The Loan Modification Agreement also provides that Plaintiffs' legal fees are not less than $250,000.00 and acknowledges without defense or offset the outstanding indebtedness on each Loan as of July 31, 2007 is as follows:

---

[2] UCC Article 9 sales have been noticed with respect to the $7.1 million note and the Columbus and Parkway notes.

| 5201 Note: | $2,618,351.05 |
| $3mil Okun Note: | $3,196,251.70 |
| $7mil Okun Note: | $7,609,700.00 |
| Sam Note: | $28,718,730.87 |

34.     On August 15, 2007, the Defendants executed and delivered to Plaintiffs a Confession of Judgment ("Confession") confessing judgment in the amount of $13,424,302.05 as of July 31, 2007 with respect to the 5201 Note, the $3mil Okun Note and the $7mil Okun Note. The Confession is annexed hereto as Exhibit 10.     Plaintiffs are filing the Confession simultaneously with this Motion.

35.     Thereafter, Plaintiffs and Defendants entered into that certain Supplement to Loan Modification Agreement (the "Supplement"), effective as of August 22, 2007.  Among other things, the Supplement terminated the Escrow Agreement and required Borrowers to pay a forbearance fee in the amount of $100,000.00.  A copy of the Supplement is annexed hereto as Exhibit 11.

36.     There have been one or more defaults under the Loan Modification Agreement and Supplement and, on October 12, 2007 and October 17, 2007 Plaintiffs sent Borrowers respectively, notification of such defaults and the immediate termination of the forbearance period provided in the Loan Modification Agreement and Supplement.  See the letters annexed hereto as Exhibit 12.

37.     As of August 1, 2007, there is due and owing to Plaintiffs for the aggregate amount under the Loans of $42,143,033.62, plus interest that has accrued and remains substantially unpaid between August 1, 2007 and October 17, 2007 and with interest at various default rates under the Loan Documents from and after October 17, 2007, plus attorneys' fees of

not less than $250,000.00 as provided for under the Loan Modification Agreement and costs of not less than $100,000.00.

WHEREFORE, it is respectfully requested that an order be entered granting summary judgment in favor of Plaintiffs and against Defendants (a) in the principal amount under the 5021 Note of $2,618,351.05, plus interest and default interest at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007, together with the costs and disbursements of this action; (b) in the principal amount under the $3mil Okun Note of $3,196,251.70, plus interest and default interest at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007, together with the costs and disbursements of this action; (c) in the principal amount under the $7mil Okun Note of $7,609,700.00, plus interest and default interest at the annual rate of 31% from August 1, 2007 through October 16, 2007 and 36% from and after October 17, 2007, together with the costs and disbursements of this action; (d) in the principal amount under the Sam Note of $28,718,730.87, plus interest and default interest at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007, together with the costs and disbursements of this action; (e) in the amount of $250,0000.00 for agreed attorneys' fees pursuant to the Loan Modification Agreement; (f) in the amount of $100,000.00 jointly and severally against each Defendant for the restructure fee under the Supplement and (g) such other and further relief as the Court deems proper.

Dated: October 19, 2007
      New York, New York

 

_____
DOUGLAS SPELVOGEL, ESQ.

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Cordell Consultants Inc, Money
Purchase Plan, a qualified Retirement
Plan Trust, and Cordell Funding, LLLP
Plaintiffs
-against-
Edward H. Okun. Sam Trustee Services, LLC,
Investment Properties of America, LLC,
Crossroads Transportation & Logistics, Inc.
Simone Condo I, LLC and Simone Condo II, LLC,
Defendants

INDIVIDUAL ASSIGNMENT PART 5~

~~STIPULATION~~  ORDER

INDEX NO.

MOTION CALENDAR NO.

DATE

IT IS HEREBY ~~STIPULATED AND AGREED by and between the below-named attorney(s) as follows:~~

Upon the ex parte motion for attachment and appointment
of receiver, and upon a finding of the existence of exigent circumstan
and potential for harm to plaintiffs the Court hereby orders
and adjudges that:

Pending further order of this Court, Defendants are hereby
restrained and enjoined from selling, gifting or otherwise
transferring any and all of the assets described on the
annexed Exhibit A, except with respect to real and personal
property having a fair value of less than $~~ ~~ $50,000.00 apiece
owned directly and indirectly by Edward H. Okun identified in
No. 5 of Exhibit A, including without limitation, Mr. Okun's direct and
indirect corporate ownership and stock interests. This Court shall
conduct a further hearing on this matter on October 30, 2007, 20
at 9:30 a.m./p.m. at courtroom 218.

Ordered that a copy of this order be personally served along
with a copy of the moving papers on or
before October 24, 2007

Date: 10/22/07

_____
Attorney for Plaintiff

_____
Attorney for Defendant

So Ordered.

_____
Attorney for Defendant

ENTER: _____
HON. EDWARD B. LOWE, III

J.S.C.

SC-8G (rev 2/86)

## EXHIBIT A

1.       IPofA 5201's interest in that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000 made by non-parties WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley").

2.       (i) That certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Derive, Carmel, Indiana, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida.

3.       That certain Collateral Assignment, Security Agreement, Guaranty, Stock Pledge Agreement, Membership Interest Pledge and the other Loan Documents described in the Sam Note, including without limitation that certain $27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus Works Trust and that certain $2 million Promissory Note and Mortgage dated March 1, 2005 to Parkway Trust.

4.       Certain notes receivable and mortgages encumbering Florida condos as collateral pledged by Simone I and Simone II.

5.       All real and personal property, tangible and intangible, owned by Edward H. Okun. Either directly or indirectly.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Retirement Plan
Trust, and CORDELL FUNDING, LLLP,

                    Plaintiffs,

  - against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER, LLC;
INVESTMENT PROPERTIES OF AMERICA,
LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC; and
SIMONE CONDO II, LLC,

                    Defendants.

Index No. __*603472/07*__

**AFFIRMATION OF DOUGLAS E.
SPELFOGEL, ESQ. IN SUPPORT
OF EX PARTE MOTION FOR
ATTACHMENT AND
<u>APPOINTMENT OF RECEIVER</u>**

---

      DOUGLAS E. SPELFOGEL, ESQ., an attorney duly admitted to the practice of law in the State of New York, hereby affirms under the penalties of perjury pursuant to Rule § 2106 of New York Civil Practice Law and Rules the following:

      1.    I am a partner with the firm of Baker & Hostetler LLP, attorneys for Plaintiffs in this action. I submit this Affirmation in support of Plaintiffs' Motion for Attachment and Appointment of Receiver.

      2.    Plaintiffs' Motion for Attachment and Appointment of Receiver is submitted along with a Motion for Summary Judgment in Lieu of Complaint (a copy of which without exhibits is annexed hereto as <u>Schedule A</u>), and is incorporated herein by reference.

## <u>PRELIMINARY STATEMENT</u>

      3.    Plaintiffs have made four separate secured loans to certain Defendants in the aggregate principal amount of approximately $42 million as of August 1, 2007, which loans have

been guaranteed by certain other Defendants.[1]  Defendants defaulted on these loans in May and June 2007 by failing to pay the monthly interest installments due.  At the same time, as detailed below, Defendant Edward H. Okun (who is also the principal of all other Defendants) was under investigation with respect of $130 million of other people's money diverted from non-defendant entities under Mr. Okun's control.  Clearly, Mr. Okun has demonstrated his propensity to divert significant assets through his myriad of companies.  In addition, despite Plaintiffs' demands on third parties, that are owned or controlled by Mr. Okun, to turn over and pay notes receivable and other cash receipts subject to Plaintiffs' liens and security interests, to date, nothing has been turned over or paid to Plaintiffs except for certain stipulated payments under a certain Escrow Agreement as detailed below, while Mr. Okun's entities continue to receive and retain cash receivables pledged to Plaintiffs.  Moreover, as detailed below, Mr. Okun has also taken steps to transfer and/or hypothecate the collateral pledged for Plaintiffs' loans to repay part of the $130 million of "missing" funds.  Mr. Okun's dealings are highly suspect and cause Plaintiffs great concern.  Mr. Okun and his entities continue to expend significant funds subject to Plaintiffs' liens and security interests without payment on their respective obligations to Plaintiffs on their notes and guarantees, which continue to accrue hundreds of thousand of dollars in interest per month.  Moreover, Mr. Okun and his entities have defaulted on an agreement to repay and/or bring all of the Loans current, and instead have entered into an agreement to transfer substantially all of his assets to certain non-Defendant affiliates in complete derogation of Plaintiffs rights and interests.[2]  Accordingly, Plaintiffs seek entry of an order of attachment of all

---

[1]  Cordell Funding is also the lender with respect to a fifth note in the amount of in excess of $13 million not subject to the instant motion or action.

[2]  Certain non-defendant affiliated companies under the umbrella case The 1031 Tax Group, Inc. are currently pending as Chapter 11 debtors in the United States Bankruptcy Court, Southern District of New York.  None of the borrowers or guarantors are debtors in such bankruptcy cases.

Defendants' assets and appointment of receiver to take control of its collateral before such assets and collateral are lost, diverted or dissipated.

## THE PARTIES

### Plaintiffs

4.     Plaintiff CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN ("Cordell Retirement"), a Qualified Retirement Plan Trust, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

5.     Plaintiff CORDELL FUNDING, LLLP ("Cordell Funding"), a Florida limited liability limited partnership, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

6.     Cordell Retirement and Cordell Funding shall be referred to as the "Lenders."

### Defendants

7.     Defendant EDWARD H. OKUN ("Okun") is an individual who maintains his principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

8.     Defendant SAM TRUSTEE SERVICES, LLC ("Sam"), a Virginia limited liability company, as trustee of the Columbus Works Virginia Trust created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005, and as trustee of the Parkway Virginia Trust created pursuant to the Irrevocable Trust Agreement dated February 22, 2005, maintains its principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

9.    Defendant IPOFA 5201 LENDER, LLC ("IPofA 5201"), a Delaware limited liability company, maintains its principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

10.    Okun, Sam and IPofA 5201 shall collectively be referred to as the "Borrowers."

11.    Defendant INVESTMENT PROPERTIES OF AMERICA, LLC, a Virginia limited liability company, maintains its principal place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

12.    Defendant CROSSROADS TRANSPORTATION & LOGISTICS, INC. ("Crossroads"), a Delaware corporation, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

13.    Defendant SIMONE CONDO I, LLC ("Simone I"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

14.    Defendant SIMONE CONDO II, LLC ("Simone II"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

## THE CORDELL RETIREMENT LOANS

### The 5021 Loan

15.    Cordell Retirement loaned to IPofA 5201 the principal sum of $2,500,000.00, which loan is evidenced by that certain Promissory Note dated December 12, 2006 from IPofA 5201 payable to the order of Cordell Retirement (the "5201 Note," annexed hereto as Exhibit 1), repayment of which 5201 Note is secured by, among other things, a pledge to Cordell Retirement of IPofA 5201's interest in that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000.00 made by various non-parties (collectively, "Obligor") to

Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), the Mortgage and Security Agreement dated February 2, 2005 made by Obligor and IPofA West 86th Street LeaseCo, LLC to Morgan Stanley, and the other Loan Documents described in the 5201 Note. *See* Ex. 1.

16.    Defendants Okun, IPofA and Crossroads (collectively, the "5201 Note Guarantors"), by and through those certain unconditional personal guarantees dated December 12 2006, have guaranteed the performance of IPofA 5201 under the 5201 Note. The 5201 Note Guarantors' guarantees are annexed hereto as Exhibit 2.

### The $3mil Okun Loan

17.    Cordell Retirement loaned to Okun the principal sum of $3,000,000.00, which loan is evidenced by that certain Promissory Note dated December 19, 2006 from Edward H. Okun payable to the order of Cordell Retirement (the "$3mil Okun Note," annexed hereto as Exhibit 3), repayment of which $3mil Okun Note is secured by, among other things, (i) that certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Derive, Carmel, Indiana, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida, and (iv) the other Loan Documents described in the $3mil Okun Note. *See* Ex. 3. Pursuant to agreement (the "Loan Modification Agreement"), as detailed below, Cordell Retirement received and recorded the deeds for the above referenced collateral.

18.    Defendants Simone I and Simone II (collectively, the "$3mil Okun Note Guarantors"), by and through those certain unconditional personal guarantees dated December

19, 2006, have guaranteed the performance of Okun under the $3mil Okun Note. The $3mil

Okun Note Guarantors' guarantees are annexed hereto as <u>Exhibit 4</u>.

## The $7mil Okun Loan

19.     Cordell Retirement loaned to Okun the principal sum of $7,000,000.00, which

loan is evidenced by that certain Promissory Note dated April 20, 2007, from Edward H. Okun

payable to the order of Cordell Retirement (the "$7mil Okun Note," annexed hereto as

<u>Exhibit 5</u>), repayment of which $7mil Okun Note is secured by, among other things, (i) that

certain third priority Mortgage Deed and Security Agreement dated April 20, 2007 encumbering

the premises at 394 S. Hibiscus Drive, Miami Beach, Florida 33139, (ii) Collateral Assignment

of Membership Interest dated April 20, 2007 by which the membership interest in IPofA Salina

Central Mall Member, LLC was assigned to Cordell Retirement, and (iii) the other Loan

Documents described in the $7mil Okun Note. *See* <u>Ex. 5</u>.

20.     Collectively, all above-described loans where Cordell Retirement is the payee

shall be referred to as the "Cordell Retirement Loans."

## THE CORDELL FUNDING LOAN

### The Sam Loan

21.     Cordell Funding loaned to Sam the principal sum of $26,500,000.00, which loan

is evidenced by that certain Promissory Note dated May 3, 2006, from Sam Trustee Services,

LLC, as trustee of the Columbus Works Virginia Trust and of the Parkway Virginia Trust,

payable to the order of Cordell Funding (the "Sam Note," annexed hereto as <u>Exhibit 6</u>),

repayment of which Sam Note is secured by, among other things a Collateral Assignment, a

Security Agreement, a Guaranty, a Stock Pledge Agreement, a Membership Interest Pledge and

the other Loan Documents described in the Sam Note, including without limitation that certain

$27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus Works Trust and that certain $2 million Promissory Note and Mortgage dated March 1, 2005 to Parkway Trust.

22.     Okun, by and through that certain unconditional personal guarantee dated May 3, 2006, has guaranteed the performance of Sam under the Sam Note. Okun's guarantee of the Sam Note is annexed hereto as Exhibit 7.

23.     The above-described loan where Cordell Funding is the payee shall be referred to as the "Cordell Funding Loan."

24.     The Cordell Retirement Loans and the Cordell Funding Loan shall be referred to as the "Loans," and the loan documents supporting the Loans shall be referred to, collectively, as the "Loan Documents."

## DEFAULTS

25.     Under the terms of the Loans, each of the borrowers is required to pay interest only installments based upon the principal amount of the Loans on a monthly basis, due on the first day of the month for the interest accruing the immediate prior month.

26.     On May 1, 2007, the applicable Borrowers, except in respect of the $7mil Okun Note, defaulted under the terms of the Loan Documents by failing timely to pay the May 1, 2007 interest installments due under each of the Loans.

27.     The IPofA 5021 Note and the $3mil Okun Note contain cross default provisions, so that a default under one of these notes constitutes a default under the other.

28.     On June 1, 2007, the applicable Borrowers defaulted under the terms of the Loans, including the $7mil Okun Note, by failing timely to pay the June 1, 2007 interest installments due. As to the $7mil Okun Note this was the first installment due.

29.    In June 2007, the applicable Borrower remitted a partial payment on account of the 5201 Note; however, such payment was delinquent and insufficient to cure the default under the 5201 Note. Regardless whether such payment was a cure of the 5201 Note defaults, such note provides for a cross-default provision with the $3mil Okun Note and, thus, remains in default.

30.    The Borrowers further defaulted under the terms of the Loans by failing timely to pay the July 1, 2007 interest installments due.

31.    Notices of default and opportunity to cure on all Loans were provided to the Defendants. As a result of the default, all of the Loans have been accelerated.

## MODIFICATION/FORBEARANCE AND FURTHER DEFAULTS

32.    In July 2007, in response to Plaintiffs' notices of default, Defendants contacted Plaintiffs to secure modifications and forbearances in respect of the Loans to provide Defendants with time to refinance and pay the Loans in full.

33.    Plaintiffs and Defendants entered into that certain Escrow Agreement (the "Escrow Agreement"), dated as of August 1, 2007, which, *inter alia*, requires the deposit of certain funds into escrow. A copy of the Escrow Agreement is annexed hereto as Exhibit 8.

34.    On August 15, 2007, Plaintiffs and Defendants entered into the Loan Modification Agreement, which, *inter alia*, provides for certain deadlines and conditions for a refinancing, cross default and cross collateralizations for the Cordell Retirement Loans, the delivery of certain collateral to Plaintiff Cordell Retirement, and a reduction of the interest rate charged during the term of the Loan Modification Agreement. The Loan Modification Agreement is annexed hereto as Exhibit 9. The Loan Modification Agreement also provides that

Plaintiffs' legal fees are not less than $250,000.00 and acknowledges without defense or offset the outstanding indebtedness on each Loan as of July 31, 2007 is as follows:

| | |
|---|---|
| 5201 Note: | $2,618,351.05 |
| $3mil Okun Note: | $3,196,251.70 |
| $7mil Okun Note: | $7,609,700.00 |
| Sam Note: | $28,718,730.87 |

35.    On August 15, 2007, the Defendants executed and delivered to Plaintiffs a Confession of Judgment ("Confession") confessing judgment in the amount of $13,424,302.05 as of July 31, 2007 with respect to the 5201 Note, the $3mil Okun Note and the $7mil Okun Note. The Confession is annexed hereto as <u>Exhibit 10</u>.    Plaintiffs are filing the Confession simultaneously with this Motion.

36.    Thereafter, Plaintiffs and Defendants entered into that certain Supplement to Loan Modification Agreement (the "Supplement"), effective as of August 22, 2007.   Among other things, the Supplement terminated the Escrow Agreement and required Borrowers to pay a forbearance fee in the amount of $100,000.00.   A copy of the Supplement is annexed hereto as <u>Exhibit 11</u>.

37.    There have been one or more defaults under the Loan Modification Agreement and Supplement and, on October 12, 2007 and October 17, 2007, Plaintiffs sent Borrowers respectively notification of such defaults and the immediate termination of the forbearance period provided in the Loan Modification Agreement and Supplement.   See letters annexed hereto as <u>Exhibit 12</u>.

38.    There is now due and owing to Plaintiffs for the aggregate amount under the Loans of $42,143,033.62, plus interest that has accrued and remains substantially unpaid between August 1, 2007 and October 17, 2007, with interest at various default rates under the Loan Documents from and after October 17, 2007, plus attorneys' fees of not less than

$250,000.00 as provided for under the Loan Modification Agreement and costs of not less than $100,000.00.[3]

## OKUN'S FRAUD

39.    Okun is currently in the center of a major fraud, exceeding $130 million, involving certain entities under his control and direct and indirect ownership.

40.    Okun is the sole member of The 1031 Tax Group, LLC, which is the direct and indirect parent of certain other entities (collectively the "1031 Entities"). Okun is or was a member, director and/or person in control of all of the 1031 Entities.

41.    The 1031 Entities operated as "qualified intermediaries" for tax-deferred like-kind exchanges consummated in accordance with section 1031 of the Internal Revenue Code. Okun acquired the 1031 Entities between August 2005 and December 2006. In a 1031 exchange the "exchanger" sells its property and deposits the proceeds with the qualified intermediary. The "exchanger" may not take title to the proceeds. The "exchanger" has 45 days to identify like-kind replacement property to purchase with its sale proceeds, which purchase must be consummated within 180 days from the sale closing with the sale proceeds. "Reverse exchanges" are also permitted, where the exchanger identifies and purchases the like-kind property before the sale of its property. The qualified intermediary may aggregate the "exchangers'" sale proceeds, but is not permitted to use such funds for its general purposes.

42.    According to public filings, starting in 2005, contrary to specific industry practice, Okun caused the 1031 Entities to loan more than $130 million (and likely close to $160 million) of the "exchangers'" funds to other entities owned and controlled by Okun on generous terms. To date, these inter-company loans have not been repaid. Okun authorized these loans despite

---

[3]   UCC Article 9 sales have been noticed with respect to the $7.1 million note and Columbus Works/Parkway notes.

his knowledge that (a) the funds belonged to the "exchangers" and were held by the 1031 Entities in escrow, (b) the funds would be required in the short term to close on the "exchangers'" qualified transactions and (c) the inter-company borrowers lacked the intent and/or ability to repay such notes from liquid assets.

43.    On April 26, 2007, in connection with a preliminary investigation of the 1031 Entities and Okun, the United States District Court for the Eastern District of Virginia issued a search warrant commanding the United States Postal Inspector to search and seize various communications, documents and records of the 1031 Entities and related entities. In the Matter of the Premises of 10800 Midlothian Turnpike, Case No. 3:07ms80 (E.D.V.A.), which search warrant was executed upon on April 27, 2007.

44.    In late April 2007, Investment Exchange Group, LLC, one of the 1031 Entities, refused to transfer "exchangers'" funds under its control to other 1031 Entities. Such demand was made by corporate representatives of the parent of the 1031 Entities because all of the funds of other "exchangers" had been depleted and the other 1031 Entities had no funds to close exchanges.

45.    On May 14, 2007, when the 1031 Entities had more than 300 open exchanges, requiring in excess of $150 million to close the exchanges, and lacked the ability to close the exchanges, the 1031 Entities filed their petitions for chapter 11 relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.[4]

46.    Since the commencement of the chapter 11 cases, Okun has entered into the Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates ("Asset Transfer Agreement"), by and through which he has agreed to pledge and transfer assets for the

---

[4] Motions to appoint a trustee are currently pending in the bankruptcy cases.

benefit of creditors of the bankruptcy estates in partial satisfaction of his alleged obligations to the creditors of the bankrupt entities.

47.    The Lenders (as well as Borrowers and Guarantors) are <u>not</u> parties to the Bankruptcy and are afforded <u>no</u> protection by and through Okun's pledge of assets.  To the contrary, Okun intends to pledge, sell hypothecate or transfer the very assets that constitute the Lenders' collateral and other assets subject to the Lenders' claims to avoid significant criminal sentencing for the fraud he masterminded with the 1031 Entities.[5]  In addition, there is nothing to protect the Lenders from the dissipation or disposal of assets subject to the Lenders' liens, claims and security interests that remain outside of Lenders' control.  This is particularly of grave concern, given the above and the continued defaults by the Defendants and related parties under Defendants' control.

## PRE-JUDGMENT ATTACHMENT

48.    Plaintiffs apply under CPLR § 6201(1) and (3) for an Order for Pre-Judgment Attachment of all personal property of Defendants.  Plaintiffs move *ex parte* under CPLR § 6211.  As demonstrated above, there will be significant prejudice to the Plaintiffs by giving notice of this Motion.

49.    This is the first time that Plaintiffs have moved for such relief.

50.    An Order for Pre-Judgment Attachment is proper in an action for a money judgment and where at least one of five other conditions is met, including where the defendant is a nondomiciliary residing outside the state (CPLR § 6201(1)); or where the defendant, with intent to defraud his creditors, is about to assign, dispose of, encumber or secret property (CPLR

---

[5]  Four other motions are currently pending in the bankruptcy case of The 1031 Tax Group with respect to the transfer of Okun's personal assets subject to Plaintiffs' claims and interests.

§ 6201(3)). In addition, a movant should show that there is a probability of success on the merits and that the amount demanded from the defendant exceeds all counterclaims known to plaintiff. CPLR 6212(a); *see also Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F.Supp.2d 341, 346 (N.D.N.Y. 2001).

51.    Here, the Motion for Summary Judgment in Lieu of Complaint seeks a money judgment in the aggregate principal amount of $42 million plus interest, late fees, and attorneys' fees and costs. Plaintiffs know of no counterclaims at all available to the Defendants, who have acknowledged the liabilities without defense pursuant to the Loan Modification Agreement.

52.    Concerning the statutory requirements, the Defendants meet not merely one – which alone would suffice – but two of the conditions for pre-judgment attachment, both a jurisdictional ground and a security ground.

53.    As to the jurisdictional ground, all of these defendants are nondomiciliaries, and none are registered to do business in New York. Okun is a resident of Florida with a principal place of business in Virginia; IPOFA 5201 is incorporated in Delaware and maintains its principal place of business in Virginia; Sam is incorporated in Virginia and maintains its principal place of business in Virginia; IPofA is incorporated in Virginia and maintains its principal place of business in Virginia; Crossroads is incorporated in Delaware and maintains a place of business in Virginia; Simone I is incorporated in Delaware and maintains a place of business in Virginia; and Simone II is incorporated in Delaware and maintains a place of business in Virginia.

54.    Moreover, while the jurisdictional grounds are sufficient to justify pre-judgment attachment, this action involves extraordinary security grounds. Okun is an alleged fraudster, whose method of operation is to move assets among organizations within his control. The 1031

Entities recently filed for bankruptcy protection after Okun allegedly defrauded its beneficiaries by diverting between $130-150 million of the beneficiaries' funds to other entities under Okun's control. Okun is currently under investigation in the Eastern District of Virginia. He has shown a propensity to treat monies in his supervision as his own funds, regardless of the true owner, to be moved, invested and spent as he wishes. Moreover, Okun has failed to turnover or pay cash and notes receivables subject to the Lenders liens in the face of numerous demands and defaults under the Loans and Loan Modification Agreement, while such sums are usurped for Okun's own purposes. In addition, pursuant to the Agreement, Okun has agreed to transfer substantially all of his assets, in affect, stripping himself of all property despite acknowledged liabilities to the Lenders in excess of $42 million, thus jeopardizing Plaintiffs' rights. In a motion pending before a bankruptcy court in the unrelated 1031 Tax Group matter, Okun is looking to give away all of his property to the creditors of such case, based in part upon the fact that no state court injunctions, attachment, or other outright prohibition is in place barring transfer of the Lenders' collateral and property subject to their claims herein.[6]    These threats to the assets securing Plaintiffs' Loans – both those assets for which Plaintiffs have liens outstanding and that personal property of Okun's by which he has personally guaranteed the debt – are precisely the type of threat that warrants an order of attachment. *See, e.g., Bank of China, New York Branch v. NMB L.L.C.*, 192 F.Supp.2d 183, 187 (S.D.N.Y. 2002) (upholding order of *ex parte* attachment for any assets of defendant that showed tendency to pay off loans with loans of related entities); *Davila Pena v. Morgan*, 149 F.Supp.2d 91, 95 (S.D.N.Y. 2001) (upholding prior order of *ex parte* attachment for unsecured personal property contractually promised to defendant to secure future judgment, where danger existed that defendant may secret assets).

---

[6] Okun is not in bankruptcy, nor is his property part of the unrelated bankruptcy case.

55.    Plaintiffs' success on the merits is virtually assured.  In order to succeed on the underlying action, Plaintiffs must show a loan instrument, failure to pay, default, acceleration and damages.  These elements are clearly documented in the papers for the Summary Judgment Motion in Lieu of Complaint, filed contemporaneously herewith, and Defendants acknowledgement and confession of liability and judgment under the Loan Modification Agreement and Confession of Judgment.

56.    Therefore, it is both proper and necessary for the protection of the Plaintiffs to attach all personal property of all Defendants valued collectively in an amount to be determined.

## APPOINTMENT OF RECEIVER AND DIRECTION TO PAY OVER THIRD PARTY RECEIVABLES

57.    Plaintiffs apply under CPLR § 6401 for the appointment of a temporary receiver to manage all assets of the Defendants that have been pledged as collateral to secure the Loans, safeguard the disposition of those assets, collect debts belonging to the Defendants, and manage ongoing transactions of the Defendants, including the assignments of rents and of promissory notes collateralizing the Loans at issue.

58.    This is the first time that Plaintiffs apply for such relief.

59.    A receiver may be appointed on motion by anyone having an apparent interest in the property to be received, before service of summons, where there is danger of the property being removed from the state, lost, injured or destroyed.  CPLR § 6401.  *See also LeFebvre v. Shea*, 212 A.D.2d 884, 885 (3d Dept. 1995).

60.    It is appropriate to appoint a receiver where there are specific moneys at issue. *See Meurer v. Meurer*, 21 A.D.2d 778 (1st Dept. 1964).  In particular, it is the correct remedy where a debtor is failing to collect rents.  *See Comcoach Corp. v. Roslyn Savings Bank*, 19 B.R. 231, 234-35 (Bankr. S.D.N.Y. 1982) ("[o]ne appropriate mortgagee remedy for loss occasioned

by nonpayment of rent to a delinquent lessor-mortgagor is to seek appointment of a receiver in state court.")

61.     Appointing a receiver is correct under CPLR § 6401 where the defendant "manifests a predisposition to take unilateral action in disregard of plaintiff's rights." *Chaline Estates, Inc. v. Furcraft Assoc.*, 278 A.D.2d 141, 142 (1st Dept. 2000).

62.     Here, all the elements are present. Plaintiffs have an interest in excess of $42 million in the properties and assets that have been pledged to secure the Loans. There are specific monies and assets at issue. In respect of the 5201 Note, IPofA collaterally assigned its interest in a $7.1 million note receivable to Cordell Retirement. In respect of the Sam Note, Sam assigned certain notes receivable as collateral, including without limitation that certain $27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus Works Trust and that certain $2 million Promissory Note and Mortgage dated March 1, 2005 to Parkway Trust. In addition, Okun has personally guaranteed the 5201 Note and the Sam Note, bringing directly into play all of his personal assets and investments. In the case of the real estate investments and notes receivable, including those explicitly securing the Loans, Okun may stop collecting payments or the account debtors may stop making payments, especially where the account debtors have been notified to pay Plaintiffs, and has failed to turn over the proceeds and payments, in particular as here, where Okun controls many of such entities.

63.     Most important, however, is Okun's proven track record of shifting assets among his companies, with no regard for the rights of others. This, as in *Chaline*, establishes the necessity of a receiver to protect the incomes and revenues that will ultimately belong to Plaintiffs. This relief is necessary to safeguard any assets attached by order of this Court.

64.     Appointing a receiver *ex parte*, while an unusual measure, is necessary in these circumstances, where Defendants have the means, the wherewithal, the motives and the historical proclivity to injure, divert and dissipate the property and income streams in question. Moreover, courts find this to be an acceptable and appropriate remedy where, as here, the receiver is under judicial supervision, affidavits are filed with the court, and the appointment is followed by an early opportunity for the debtor to "put the creditor to his test." *See Friedman v. Gerax Realty Assoc.*, 100 Misc.2d 820, 821 (Nassau Co. 1979).

65.     Plaintiffs therefore request that a receiver be appointed to take hold of the real and personal property securing the Loans and subject to Lender's claims, and sue for, collect, and sell debts, as allowed explicitly by CPLR § 6401(b). Plaintiffs also request that the receiver comply with the requirements of UCC 9-607 and turn over the collections on Plaintiffs' collateral to Plaintiffs.

66.     Plaintiffs seek entry of a Court order directing third party account debtors to pay Plaintiffs and/or the receiver directly all notes receivable and other receivables, including without limitation amounts due under that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000 made by the Obligor to Morgan Stanley, that certain $27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus Works Trust and that certain $2 million Promissory Note and Mortgage dated March 1, 2005 to Parkway Trust in accordance with UCC 9-607.

67.     For attachment and appointment of a receiver, Plaintiffs agree to post a bond to the extent required and in an amount to be set by the Court.

WHEREFORE, it is respectfully requested that an order be entered directing attachment, appointing a receiver, payment of collateral assignments of notes, rents and other receivables directly to Plaintiffs, and granting such other and further relief as the Court deems proper.

Dated:  October 19, 2007
      New York, New York

_____
DOUGLAS SPELFOGEL, ESQ.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Florida
Retirement Plan Trust, and CORDELL
FUNDING, LLLP,

                        Plaintiffs,

    - against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER, LLC;
INVESTMENT PROPERTIES OF AMERICA,
LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC;
and SIMONE CONDO II, LLC,

                        Defendants.

Index No. _____

**NOTICE OF MOTION FOR
SUMMARY JUDGMENT IN
LIEU OF COMPLAINT**

       Upon the summons dated October 19, 2007, and the Affirmation of Douglas E. Spelfogel, dated October 19, 2007, Plaintiffs will move this Court, at the Courthouse located at 60 Centre Street, New York, New York, Motion Submission Part – Room 130, on November 20, 2007, at 9:30 a.m., for summary judgment in lieu of complaint, pursuant to CPLR § 3213, in favor of Plaintiffs and against Defendants, for $42,143,034.00 with interest thereon from August 1, 2007, together with attorneys' fees, and costs and disbursements of this action, upon the ground that this action is based upon an instrument for the payment of money, which is now due and payable, and that there is no defense to the action, and for such other and further relief as the court deems proper.

       The above-entitled action is for payment on promissory notes and guarantees.

       Pursuant to CPLR § 3213, answering affidavits, if any, are required to be served upon the undersigned at least seven days before the return date of this motion.

1

Dated: October 19, 2007
      New York, New York

                                             BAKER & HOSTETLER LLP

By: _____
         Douglas E. Spelfogel
         45 Rockefeller Plaza
         New York, New York 10111
         Phone: (212) 589-4200
         Fax: (212) 589-4201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Florida Retirement Plan Trust, and CORDELL FUNDING, LLLP,<br><br>                                  Plaintiffs,<br><br>        - against -<br><br>EDWARD H. OKUN; SAM TRUSTEE SERVICES, LLC; IPOFA 5201 LENDER, LLC; INVESTMENT PROPERTIES OF AMERICA, LLC; CROSSROADS TRANSPORTATION & LOGISTICS, INC.; SIMONE CONDO I, LLC; and SIMONE CONDO II, LLC,<br><br>                                  Defendants. | Index No. _____<br><br>**AFFIRMATION OF DOUGLAS E. SPELFOGEL, ESQ. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT** |

DOUGLAS E. SPELFOGEL, ESQ., an attorney duly admitted to the practice of law in the State of New York, hereby affirms under the penalties of perjury pursuant to Rule § 2106 of New York Civil Practice Law and Rules the following:

1.      I am a partner with the firm of Baker & Hostetler LLP, attorneys for Plaintiffs in this action. I submit this affirmation in support of Plaintiffs' motion for summary judgment in lieu of complaint pursuant to CPLR § 3213.

2.      Plaintiff instituted this action to recover $42,143,034, plus attorneys' fees and interest on four notes and related guarantees made by Defendants on various dates from May 3, 2006 to April 20, 2007 to Plaintiffs' order and delivered to Plaintiffs on such dates.[1]

---

[1] The Lenders are party to a fifth loan in the amount in excess of $13 million not subject to the instant motion.

## THE PARTIES

### Plaintiffs

3.    Plaintiff CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN ("Cordell Retirement"), a Qualified Florida Retirement Plan Trust, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

4.    Plaintiff CORDELL FUNDING, LLLP ("Cordell Funding"), a Florida limited liability limited partnership, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

5.    Cordell Retirement and Cordell Funding shall be referred to as the "Lenders."

### Defendants

6.    Defendant EDWARD H. OKUN ("Okun") is an individual who maintains his principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

7.    Defendant SAM TRUSTEE SERVICES, LLC ("Sam"), a Virginia limited liability company, as trustee of the Columbus Works Virginia Trust created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005, and as trustee of the Parkway Virginia Trust created pursuant to the Irrevocable Trust Agreement dated February 22, 2005, maintains its principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

8.    Defendant IPOFA 5201 LENDER, LLC ("IPofA 5201"), a Delaware limited liability company, maintains its principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

9.    Okun, Sam and IPofA 5201 shall collectively be referred to as the "Borrowers."

10.    Defendant INVESTMENT PROPERTIES OF AMERICA, LLC, a Virginia limited liability company, maintains its principal place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

11.    Defendant CROSSROADS TRANSPORTATION & LOGISTICS, INC. ("Crossroads"), a Delaware corporation, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

12.    Defendant SIMONE CONDO I, LLC ("Simone I"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

13.    Defendant SIMONE CONDO II, LLC ("Simone II"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

## THE CORDELL RETIREMENT LOANS

### The 5201 Loan

14.    Cordell Retirement loaned to IPofA 5201 the principal sum of $2,500,000.00, which loan is evidenced by that certain Promissory Note dated December 12, 2006 from IPofA 5201 payable to the order of Cordell Retirement (the "5201 Note," annexed hereto as Exhibit 1), repayment of which 5201 Note is secured by, among other things, a pledge to Cordell Retirement of IPofA 5201's interest in that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000.00 made by various non-parties (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), the Mortgage and Security Agreement dated February 2, 2005 made by Obligor and IPofA West 86th Street LeaseCo, LLC to Morgan Stanley, and the other Loan Documents described in the 5201 Note. *See* Ex. 1.

15.    Defendants Okun, IPofA and Crossroads (collectively, the "5201 Note Guarantors"), by and through those certain unconditional personal guarantees dated December 12, 2006, have guaranteed the performance of IPofA 5201 under the 5201 Note. The 5201 Note Guarantors' guarantees are annexed hereto as <u>Exhibit 2</u>.

### The $3mil Okun Loan

16.    Cordell Retirement loaned to Okun the principal sum of $3,000,000.00, which loan is evidenced by that certain Promissory Note dated December 19, 2006 from Edward H. Okun payable to the order of Cordell Retirement (the "$3mil Okun Note," annexed hereto as <u>Exhibit 3</u>), repayment of which $3mil Okun Note is secured by, among other things, (i) that certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Derive, Carmel, Indiana, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida, and (iv) the other Loan Documents described in the $3mil Okun Note. *See* <u>Ex. 3</u>.  Pursuant to agreement (the "Loan Modification Agreement"), as detailed below, Cordell Retirement received and recorded the deeds for the above-referenced collateral.

17.    Defendants Simone I and Simone II (collectively, the "$3mil Okun Note Guarantors"), by and through those certain unconditional personal guarantees dated  December 19, 2006, have guaranteed the performance of Okun under the $3mil Okun Note. The $3mil Okun Note Guarantors' guarantees are annexed hereto as <u>Exhibit 4</u>.

### The $7mil Okun Loan

18.    Cordell Retirement loaned to Okun the principal sum of $7,000,000.00, which loan is evidenced by that certain Promissory Note dated April 20, 2007, from Edward H. Okun payable to the order of Cordell Retirement (the "$7mil Okun Note," annexed hereto as Exhibit 5), repayment of which $7mil Okun Note is secured by, among other things, (i) that certain third priority Mortgage Deed and Security Agreement dated April 20, 2007 encumbering the premises at 394 S. Hibiscus Drive, Miami Beach, Florida 33139, (ii) Collateral Assignment of Membership Interest dated April 20, 2007 by which the membership interest in IPofA Salina Central Mall Member, LLC was assigned to Cordell Retirement, and (iii) the other Loan Documents described in the $7mil Okun Note. *See* Ex. 5.

19.    Collectively, all above-described loans where Cordell Retirement is the payee shall be referred to as the "Cordell Retirement Loans."

### THE CORDELL FUNDING LOAN

### The Sam Loan

20.    Cordell Funding loaned to Sam the principal sum of $26,500,000.00, which loan is evidenced by that certain Promissory Note dated May 3, 2006, from Sam Trustee Services, LLC, as trustee of the Columbus Works Virginia Trust and of the Parkway Virginia Trust, payable to the order of Cordell Funding (the "Sam Note," annexed hereto as Exhibit 6), repayment of which Sam Note is secured by, among other things a Collateral Assignment, a Security Agreement, a Guaranty, a Stock Pledge Agreement, a Membership Interest Pledge and the other Loan Documents described in the Sam Note.

21.    Okun, by and through that certain unconditional personal guarantee dated May 3, 2006, has guaranteed the performance of Sam under the Sam Note. Okun's guarantee of the Sam Note is annexed hereto as <u>Exhibit 7</u>.

22.    The above-described loan where Cordell Funding is the payee shall be referred to as the "Cordell Funding Loan."

23.    The Cordell Retirement Loans and the Cordell Funding Loan shall be referred to as the "Loans," and the loan documents supporting the Loans shall be referred to, collectively, as the "Loan Documents."

## DEFAULTS

24.    Under the terms of the Loans, each of the borrowers is required to pay interest only installments based upon the principal amount of the Loans on a monthly basis, due on the first day of the month for the interest accruing the immediate prior month.

25.    On May 1, 2007, the applicable Borrowers, except in respect of the $7mil Okun Note, defaulted under the terms of the Loan Documents by failing timely to pay the May 1, 2007 interest installments due under each of the Loans.

26.    The IPofA 5021 Note and the $3mil Okun Note contain cross default provisions, so that a default under one of these notes constitutes a default under the other.

27.    On June 1, 2007, the applicable Borrowers defaulted under the terms of the Loans, including the $7mil Okun Note, by failing timely to pay the June 1, 2007 interest installments due. As to the $7mil Okun Note this was the first installment due.

28.    In June 2007, the applicable Borrower remitted a partial payment on account of the 5201 Note; however, such payment was delinquent and insufficient to cure the default under the IPofA Note. Regardless whether such payment was a cure of the 5201 Note defaults, such

note provides for a cross-default provision with the $3mil Okun Note and, thus, remains in default.

29.     The Borrowers further defaulted under the terms of the Loans by failing timely to pay the July 1, 2007 interest installments due.

30.     Notices of default and opportunity to cure on all Loans were provided to the Defendants.  As a result of the default, all of the Loans have been accelerated.

## MODIFICATION/FORBEARANCE AND FURTHER DEFAULTS

31.     In July 2007, in response to Plaintiffs' notices of default, Defendants contacted Plaintiffs to secure modifications and forbearances in respect of the Loans to provide Defendants with time to refinance and pay the Loans in full.[2]

32.     Plaintiffs and Defendants entered into that certain Escrow Agreement (the "Escrow Agreement"), dated as of August 1, 2007, which, *inter alia*, requires the deposit of certain funds into escrow.  A copy of the Escrow Agreement is annexed hereto as Exhibit 8.

33.     On August 15, 2007, Plaintiffs and Defendants entered into the Loan Modification Agreement, which, *inter alia*, provides for certain deadlines and conditions for a refinancing, cross default and cross collateralizations for the Cordell Retirement Loans, the delivery of certain collateral to Plaintiff Cordell Retirement, and a reduction of the interest rate charged during the term of the Loan Modification Agreement.  The Loan Modification Agreement is annexed hereby as Exhibit 9.  The Loan Modification Agreement also provides that Plaintiffs' legal fees are not less than $250,000.00 and acknowledges without defense or offset the outstanding indebtedness on each Loan as of July 31, 2007 is as follows:

---

[2] UCC Article 9 sales have been noticed with respect to the $7.1 million note and the Columbus and Parkway notes.

| | |
|---|---|
| 5201 Note: | $2,618,351.05 |
| $3mil Okun Note: | $3,196,251.70 |
| $7mil Okun Note: | $7,609,700.00 |
| Sam Note: | $28,718,730.87 |

34.    On August 15, 2007, the Defendants executed and delivered to Plaintiffs a Confession of Judgment ("Confession") confessing judgment in the amount of $13,424,302.05 as of July 31, 2007 with respect to the 5201 Note, the $3mil Okun Note and the $7mil Okun Note. The Confession is annexed hereto as Exhibit 10.    Plaintiffs are filing the Confession simultaneously with this Motion.

35.    Thereafter, Plaintiffs and Defendants entered into that certain Supplement to Loan Modification Agreement (the "Supplement"), effective as of August 22, 2007.    Among other things, the Supplement terminated the Escrow Agreement and required Borrowers to pay a forbearance fee in the amount of $100,000.00.    A copy of the Supplement is annexed hereto as Exhibit 11.

36.    There have been one or more defaults under the Loan Modification Agreement and Supplement and, on October 12, 2007 and October 17, 2007 Plaintiffs sent Borrowers respectively, notification of such defaults and the immediate termination of the forbearance period provided in the Loan Modification Agreement and Supplement.    See the letters annexed hereto as Exhibit 12.

37.    As of August 1, 2007, there is due and owing to Plaintiffs for the aggregate amount under the Loans of $42,143,033.62, plus interest that has accrued and remains substantially unpaid between August 1, 2007 and October 17, 2007 and with interest at various default rates under the Loan Documents from and after October 17, 2007, plus attorneys' fees of

not less than $250,000.00 as provided for under the Loan Modification Agreement and costs of not less than $100,000.00.

WHEREFORE, it is respectfully requested that an order be entered granting summary judgment in favor of Plaintiffs and against Defendants (a) in the principal amount under the 5021 Note of $2,618,351.05, plus interest and default interest at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007, together with the costs and disbursements of this action; (b) in the principal amount under the $3mil Okun Note of $3,196,251.70, plus interest and default interest at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007, together with the costs and disbursements of this action; (c) in the principal amount under the $7mil Okun Note of $7,609,700.00, plus interest and default interest at the annual rate of 31% from August 1, 2007 through October 16, 2007 and 36% from and after October 17, 2007, together with the costs and disbursements of this action; (d) in the principal amount under the Sam Note of $28,718,730.87, plus interest and default interest at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007, together with the costs and disbursements of this action; (e) in the amount of $250,0000.00 for agreed attorneys' fees pursuant to the Loan Modification Agreement; (f) in the amount of $100,000.00 jointly and severally against each Defendant for the restructure fee under the Supplement and (g) such other and further relief as the Court deems proper.

Dated: October 19, 2007
          New York, New York

_____
DOUGLAS SPELFOGEL, ESQ.

At IAS Part ___ of the Supreme Court
of the State of New York, County of
New York, at the Courthouse, __ Centre
Street, New York, New York on the __
day of November, 2007

Present: Hon.

|  |  |
|---|---|
| CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Florida Retirement Plan Trust, and CORDELL FUNDING, LLLP, | Index No. _____ |

<div style="margin-left:2em;">

Plaintiffs,

**ORDER**

- against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER, LLC;
INVESTMENT PROPERTIES OF AMERICA,
LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC;
and SIMONE CONDO II, LLC,

Defendants.

</div>

Plaintiffs have moved for summary judgment pursuant to CPLR § 3213 based upon instruments for the payment of money, which is now due and payable.

In support of the motion, Plaintiffs have submitted a notice of motion dated October 19, 2007 and the affirmation of Douglas E. Spelfogel, dated October 19, 2007, with attached exhibits.

In opposition to the motion, Defendants have submitted the affidavit of _____, sworn to on _____, 2007, with attached exhibits.

A hearing was held on _____, 2007.

Upon the foregoing papers, and the summons in this action, and upon hearing Baker &

Hostetler LLP, attorneys for Plaintiffs, in support of the motion, and _____,

attorneys for Defendants, in opposition, and the decision of the court having been filed, and on

motion of Baker & Hostetler LLP, attorneys for Plaintiffs,

IT IS NOW THEREFORE ORDERED, that:

1.      The motion is granted.

2.      Plaintiff, CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN, a

Qualified Florida Retirement Plan Trust, is granted judgment against Defendants, IPOFA 5201

LENDER, LLC, EDWARD H. OKUN, INVESTMENT PROPERTIES OF AMERICA, LLC,

and CROSSROADS TRANSPORTATION & LOGISTICS, INC., in the principal amount under

the IPofA 5021 Note of $2,618,351.05, and interest and default interest thereon at the annual rate

of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17,

2007.

3.      Plaintiff, CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN, a

Qualified Florida Retirement Plan Trust, is granted judgment against Defendants, EDWARD H.

OKUN, SIMONE CONDO I, LLC, and SIMONE CONDO II, LLC, in the principal amount

under the $3mil Okun Note of $3,196,251.70, and interest and default interest thereon at the

annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after

October 17, 2007.

4.      Plaintiff, CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN, a

Qualified Florida Retirement Plan Trust, is granted judgment against Defendant, EDWARD H.

OKUN, in the principal amount under the $7mil Okun Note of $7,609,700.00, and interest and

default interest thereon at the annual rate of 31% from August 1, 2007 through October 16, 2007

and 36% from and after October 17, 2007.

5.    Plaintiff, CORDELL FUNDING, LLLP, is granted judgment against Defendants, SAM TRUSTEE SERVICES, LLC and EDWARD H. OKUN, in the principal amount under the Sam Note of $28,718,370.87, and interest and default interest thereon at the annual rate of 20% from August 1, 2007 through October 16, 2007 and 25% from and after October 17, 2007.

6.    Plaintiffs are granted judgment against Defendants, jointly and severally, in the amount of $250,000.00 for legal fees and costs provided for in the Loans, incurred by Plaintiffs through August 1, 2007, plus judgment interest from and after the date hereof.

7.    Plaintiffs are granted judgment against Defendants, jointly and severally, in the amount of $100,000.00 as a forbearance fee under the Supplement, plus judgment interest from and after the date hereof.

8.    Plaintiffs are granted judgment against Defendants, jointly and severally, in the amount of $_____ for legal fees and costs provided for in the Loans, incurred by Plaintiffs from and after August 1, 2007, plus judgment interest from and after the date hereof.

Dated: _____, 2007

_____
                                    J.S.C.

3

# EXHIBIT C

## AGREEMENT TO TRANSFER INTERESTS AND ASSETS FOR THE BENEFIT OF BANKRUPTCY ESTATES

**THIS AGREEMENT** (the "**Agreement**"), made and entered into as of October 11, 2007, by and among: Edward H. Okun ("**Okun**"), Simone Bolani ("**Bolani**" and together with Okun, the "**Grantors**"), on the one hand, and the debtors in cases under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Code**"), jointly administered in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under case no. 07-11448 (MG) (the "**Debtors**"), acting by and through Huron Consulting Services LLC ("**Huron**") in its capacity as Chief Restructuring Officer for the Debtors ("**CRO**"), on the other hand.

### WITNESSETH:

**WHEREAS,** following negotiations among the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**") and Okun, the parties entered into that certain Plan Funding Agreement, dated July 18, 2007 (the "**Plan Funding Agreement**"); and

**WHEREAS,** to effectuate the Plan Funding Agreement, the parties entered into that certain Master Agreement Effectuating Alternative Funding Structure Pursuant to the Joint Plan of Reorganization and Plan Funding Agreement dated as of September 24, 2007 (the "**Master Agreement**"); and

**WHEREAS,** the Grantors subsequently agreed, pursuant to that certain Trust Agreement dated as of October 8, 2007 (the "**Trust Agreement**"), to convey certain items of personal property to a trust for the benefit of the Debtors; and

**WHEREAS,** following further negotiations among the Debtors and the Grantors, the Grantors elected to enter into this Agreement to supersede the Master Agreement and the Trust Agreement and to convey immediately (rather than to an escrow agent or to a trust for later release) for the benefit of the Debtors all of the Grantors' respective right, title and interest in all of their respective assets, including real property, personal property, tangible and intangible assets, as more particularly described herein in partial satisfaction of the Grantors' obligations to the creditors of the Debtors (collectively, the "**Assets**");

**NOW, THEREFORE,** in consideration of the covenants and agreements hereinabove and hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which being hereby acknowledged, the parties hereto agree as follows:

1.    **Conveyance.**  Subject to Section 7.2 hereof, the Grantors convey to Debtors all right, title and interest, direct and indirect, in and to the Assets more particularly described in Section 2 below.

2.    **Description of the Assets.**  (a) The Assets comprise all of the real property, tangible and intangible personal property owned by the Grantors, directly or indirectly, or acquired by the Grantors during the term of this Agreement, including but not limited to: (i) all of the Grantors' respective ownership interests in the entities identified in **Schedule A** hereto, and all associated rights and benefits flowing from such ownership interests, including without limitation, the right to receive distributions of money or anything else of value from such entities, the right to participate in the management of such entities and the right to vote or consent with respect to any action taken by such entities; (ii) all of the Grantors' respective ownership interests in the personal property identified in **Schedule B** hereto (any information missing as of the execution of this Agreement, including with respect to the location of any Assets listed thereon, shall be promptly provided to the Asset Manager); and (iii) all intangible property rights owned by the Grantors, including without limitation, their respective rights to receive refunds of federal, state or local income taxes or any other taxes, for any and all tax periods ending prior to the termination of this Agreement and any choses in action or claims of the Grantors arising prior to the termination of this Agreement (reduced by tax obligations incurred by the Grantors directly attributable to effectuation of this Agreement).

(b)    Notwithstanding the foregoing, the Assets shall not include (i) the two automobiles retained for the Grantors' personal use as agreed by the parties to the Trust Agreement; (ii) the Grantors' residence at 394 South Hibiscus Drive, Miami, Florida; (iii) the Grantors' residence at 39 and 49 Aaron Road, Wolfeboro, New Hampshire, or (iv) customary and usual contents of the Grantors' residences identified in (ii) and (iii), above, such as furnishings, appliances, clothing and other items of a personal nature (but excluding any property not of a personal nature, such as but not limited to artwork purchased by Grantors for investment purposes, cash, stock certificates, securities or other monetary or financial instruments). In addition, the Asset Manager (as defined in Section 3 below) and Grantors shall negotiate in good faith to arrive at a budget that permits the Grantors to utilize their income from employment to pay their and their dependents' living expenses such as (but not limited to) food, clothing and shelter.

(c)    It is the intent of the parties that, by granting Debtors ownership of and/or management control over the various entities that own the tangible assets (i.e., the real estate and personal property) that were subject to the Plan Funding Agreement and the Master Agreement, the parties will in essence give Debtors the same ownership and control that they would have had if title to the Assets, including equity, had been conveyed to them pursuant to the terms of the Master Agreement. This Agreement shall supersede the Master Agreement and the Trust Agreement; provided, however, that if this Agreement does not become effective with respect to

2

the Debtors, the CRO or the Asset Manager pursuant to Section 7.2 of this Agreement, then the Master Agreement and the Trust Agreement shall remain in full force and effect.

3.    **Control and Management of the Assets.** (a) Subject to the provisions of this Agreement, including, without limitation, Sections 1 and 2(c), the Debtors, through the CRO, shall receive and hold the Assets either as CRO or through a nominee entity controlled by the CRO as permitted by the Code or by order of the Bankruptcy Court. The CRO shall have no liability to any party to this Agreement or to any agent, representative, owner, employee, officer or director of any party to this Agreement, except as may be provided by the CRO Order.

(b)    The CRO shall have the right to exercise all management and voting rights conveyed by the Grantors through a designee (the "**Asset Manager**"). Subject to the consent and approval of the Bankruptcy Court and pursuant to the appointment annexed hereto as **Exhibit E**, Abacus Advisors LLC is duly appointed as Asset Manager with respect to all Assets conveyed pursuant to this Agreement.

(c)    Asset Manager shall exercise such management and voting rights as are conveyed to it and shall otherwise deal with respect to the entities over which it exercises management control as its deems appropriate in its absolute and sole discretion, including without limitation, the right to cause the entities to borrow funds, and to sell, encumber, lease or pledge their assets, and to file voluntary petitions for bankruptcy.

(d)    Asset Manager shall be employed on such terms and shall be compensated in such amounts as may be approved by the Bankruptcy Court. Any such compensation shall be an expense of the transferee and not the Grantors.

4.    **Cooperation; Further Assurances.** Grantors covenant and agree to cooperate fully in regard to the transfer of the Assets pursuant to this Agreement. Grantors jointly and severally (i) consent to the personal jurisdiction of the Bankruptcy Court solely for purposes of effectuating and enforcing the terms and conditions of this Agreement, (ii) agree to execute and deliver such other and further documents and do such further acts as may be required or reasonably requested by the Asset Manager to effectuate the intent and purposes of this Agreement and carry out the terms hereof, and (iii) covenant that they will not in any way interfere with and will cooperate in all respects with the Asset Managers' exercise of management authority conveyed pursuant to this Agreement.

4.1    **Delivery of Conveyance and Title Instruments.** Subject to the provisions of Section 7.2 of this Agreement, simultaneously with the execution of this Agreement or as soon thereafter as practicable, the Grantors will deliver to Asset Manager such instruments as are necessary to effectuate a conveyance of all of their respective right, title and interest in and to the Assets and to permit the Asset Manager to exercise such rights regarding the management and control of the Assets as were

3

held by the Grantors prior to the conveyance (collectively, the "**Conveyance Instruments**").

4.2    **Delivery of Additional or Amended Conveyance and Title Instruments**.    Subject to the provisions of Section 7.2 of this Agreement, the Grantors shall, upon the Asset Manager's written request, execute and deliver amended or additional Conveyance Instruments, certificates of title and shall provide such other information or documentation as may be reasonably necessary to effectuate a conveyance of each Asset or to permit the Asset Manager to exercise the management or voting rights conveyed pursuant to this Agreement.

4.3    **Asset Manager Appointed Attorney-in-Fact**.    The Grantors hereby irrevocably appoint Asset Manager as their duly authorized attorney-in-fact, coupled with an interest for such purpose, in connection with effectuation of this Agreement, to execute on their behalf any additional or amended Conveyance Instruments or certificates of title or any other documents necessary to effectuate a conveyance of the Assets, in the event that any Grantor shall refuse or unreasonably delay in doing so. In addition, Asset Manager is irrevocably appointed as attorney-in-fact for the purpose of filling in any information reasonably necessary to complete a Conveyance Instrument or title certificate previously delivered by a Grantor.

5.    **Representations and Warranties**.    Each of the Grantors jointly and severally represents and warrants to the Debtors as follows:

5.1    The entities identified on Schedule A hereto under the section entitled "Direct Ownership Interests" are all of the entities in which Grantors hold a direct ownership interest (e.g., shares of stock or membership interests) (the "**First Tier Entities**").    The entities identified on Schedule A hereto under the section entitled "Indirect Ownership Interests" are all of the entities in which the First Tier Entities hold direct ownership interests (the "**Second Tier Entities**").

5.2    The automobiles, aircraft and watercraft identified on Schedule B hereto are all of the automobiles, aircraft and watercraft collectively owned by Grantors, the First Tier Entities and the Second Tier Entities. In the event Grantors or the First Tier Entities now hold or subsequently acquire any interests in entities not included on Schedule A hereto, such ownership interests shall be subject to this Agreement and Grantors shall cooperate with Asset Manager to effectuate a conveyance of such interests to or for the benefit of the Debtors. In the event Grantors, the First Tier Entities or the Second Tier Entities now hold or subsequently acquire automobiles, aircraft or watercraft not listed on Schedule B hereto, Grantors shall cooperate with Asset Manager to effectuate a conveyance of such assets to or for the benefit of the Debtors and the creditors of their estates.

5.3    Subject to the injunction issued in connection with the Massachusetts action identified on Schedule D hereto (the "**Massachusetts**

4

**Injunction**"), and subject to any existing liens and encumbrances on the Assets, Grantors or the First Tier Entities or the Second Tier Entities, as applicable, hold good and marketable title to the Assets as described hereinabove and/or within schedules hereto. Except as set forth on **Schedule C** hereto, no person has any lien upon or record or beneficial interest in the Assets other than the Grantors.

5.4    Except as identified on **Schedule D** hereto, no Grantor has been served in any action or proceeding and, to the best of each Grantor's knowledge, there are no actions or proceedings pending or threatened against the Assets or any Grantor or its respective assets. The Grantors shall promptly notify the CRO and/or the Asset Manager of the commencement of any action or proceeding or the threatened commencement of any action or proceeding against any Asset or Grantor.

6.    **Waiver of Confidentiality**. To the extent that Grantors, on behalf of themselves and the entities under their control, Debtors and the Committee are parties to any confidentiality agreements, Grantors, on behalf of themselves and the entities under their control, hereby intentionally and knowingly, for themselves and on behalf of all entities under their control, including without limitation the First Tier Entities and the Second Tier Entities listed on Schedule A hereto, waive their rights thereunder and authorize Debtors and the Committee to disclose any information previously subject to said confidentiality agreement(s) to the extent Debtors or the Committee, in their sole and exclusive discretion, deem such disclosure necessary or appropriate (i) to effectuate the terms of this Agreement or (ii) in connection with repayment of the Debtors' creditors. Notwithstanding the foregoing, nothing in this Agreement shall constitute a waiver by the Grantors of any applicable attorney/client or work product privilege.

7.    **General Provisions**.

7.1    **Notices**. Except as specifically provided elsewhere in this Agreement, all notices, requests or consents to any party hereunder shall be in writing (including facsimile) and shall be given:

(a)    if to either of the Grantors, to

Edward H. Okun and Simone Bolani
384 South Hibiscus Drive
Miami, Florida 33139

(b)    if to the Debtors, to

James M. Lukenda, CRO
Huron Consulting Group LLC
1120 Avenue of the Americas
New York, New York 10036

Facsimile: 212-785-1313

with a copy to

Dreier LLP
499 Park Avenue
New York, New York 10022
Attn: Paul Traub, Esq.

(c) if to Asset Manager, to

Abacus Advisors LLC
10 Reuten Drive
Closter, New Jersey 07624
Attn: Alan Cohen

(d) and in all events to the Committee:

c/o Greenberg Traurig, LLP
200 Park Avenue
MetLife Building
New York, New York 10166
Facsimile: 212-801-6400
Attn: Thomas J. Weber, Esq.

or such other address or facsimile number as such party may hereafter specify by written (including facsimile) notice.

7.2 **Term of Agreement; Effective Date.** Grantors' obligations under this Agreement shall be irrevocable upon execution of this Agreement. The Debtors', the CRO's and the Asset Manager's obligations and rights hereunder shall commence and shall be contingent upon approval of this Agreement by the Bankruptcy Court. The Debtors shall promptly seek Bankruptcy Court approval of this Agreement and an injunction under section 105 of the Bankruptcy Code enjoining the enforcement of the Massachusetts Injunction. This Agreement shall be fully effective upon such Bankruptcy Court approval and upon a failure to obtain such approval, the Assets shall be returned to the Grantors. Unless terminated sooner by consent of the parties or by order of the Bankruptcy Court, once effective, this Agreement shall not terminate until all allowed claims in the Debtors' Chapter 11 cases are paid in full, with applicable interest. If all allowed claims have been paid in full at the time this Agreement is terminated, then all Assets then owned by the Debtors or proceeds from the sale of Assets in the Debtors' possession shall be conveyed to the Grantors. As an inducement to the Grantors entering into this Agreement, the Debtors shall include in any proposed liquidating plan of reorganization a provision including a channeling injunction in order to protect the

6

Assets and the Grantors with respect to their obligations to the creditors of the Debtors and use their best efforts in pursuing confirmation of such a plan.

7.3    **Venue Transfer**. The Grantors shall use their best efforts to promptly cause the transfer of venue to the Southern District of New York of the chapter 11 proceedings of IPofA West Oaks Mall, LP, IPofA Columbus Works LeaseCo, LLC and IPofA WOM Master LeaseCo, LP currently pending before the United States Bankruptcy Court for the Eastern District of Virginia. Failure to obtain a transfer of venue shall not constitute a default or breach of this Agreement.

7.4    **Successors and Assigns**. This Agreement and all of the terms and provisions hereof shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective legal representatives, heirs, successors and permitted assigns, except that Grantors may not assign their rights or obligations under this Agreement in any manner.

7.5    **Governing Law**. This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed in accordance with the laws of the State of New York.

7.6    **Joint and Several**. The obligations and liabilities of the Grantors hereunder shall be joint and several.

7.7    **Legal Representation**. All parties hereto have been represented by legal counsel in connection with the negotiation of this Agreement and the transactions herein contemplated. Each party and its counsel have had an opportunity to review and suggest revisions to the language of this Agreement. Accordingly, no provision of this Agreement shall be construed for or against or interpreted to the benefit or disadvantage of any party by reason of any party having or being deemed to have structured or drafted such provision.

7.8    **Waiver of Right to Jury Trial**. THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING OUT OF THE THIS AGREEMENT OR THE OTHER DOCUMENTS AND INSTRUMENTS EXECUTED AND DELIVERED IN CONNECTION HEREWITH.

7.9    **Venue**. ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND THE PARTIES WAIVE ANY OBJECTION WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING.

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement as of the date first set forth above.

**GRANTORS:**

Edward H. Okun, Individually

Simone Belani, Individually

**THE 1031 TAX GROUP, LLC, *ET AL.*, DEBTORS**

By: HURON CONSULTING GROUP LLC, as Chief Restructuring Officer

By: _____
James M. Lukenda

6'd

**SCHEDULE A**
**GRANTORS' ENTITY OWNERSHIP INTERESTS**

Direct Ownership Interests

| | Business Entity | Grantor |
|---|---|---|
| 1. | Crossroads Transportation and Logistics, Inc. | Okun |
| 2. | Investment Properties of America, LLC | Okun |
| 3. | Okun Air, LLC | Okun |
| 4. | Okun Air 2, LLC | Okun |
| 5. | Okun Air 3, LLC | Okun |
| 6. | Okun Air 4, LLC | Okun |
| 7. | Okun Holdings, Inc. | Okun |
| 8. | FMFG Ownership, Inc. | Okun |
| 9. | Columbus Works Virginia Trust | Okun, as Beneficiary |
| 10. | Okun Water, LLC | Okun |
| 11. | Simone Bentley, LLC | Okun |

Indirect Ownership Interests

| | Business Entity | Direct Owner |
|---|---|---|
| 1. | Simone Salon, LLC | IPofA |
| 2. | Montauk Financial Corp. | FMFG Ownership, Inc. |
| 3 | IPofA Shreveport Industrial Park, LLC | IPofA |
| 4. | 8810 Jewella, LLC | IPofA |
| 5 | 100 Corporate Drive, LLC | IPofA |

9

| | | |
|---|---|---|
| 6. | IPofA Salina Central Mall, LLC | IPofA |
| 7. | IPofA West Oaks Mall, LP | IPofA |
| 8. | IPofA WOM JCP, LP | IPofA |
| 9. | IPofA Water View, LLC | IPofA |
| 10. | IPofA Columbus Works LeaseCo, LLC | IPofA |
| 11. | IPofA Fund Manager, Inc. | IPofA |
| 12. | CW Acquisition, LLC | IPofA |
| 13. | IPofA Miami Logistics Center, LLC | IPofA |
| 14. | IPofA Racing, LLC | IPofA |
| 15. | IPofA W. 86th Street LeaseCo, LLC | IPofA |
| 16. | IPofA WOM Master LeaseCo, LP | IPofA WOM MLC GP, LLC |
| 17. | Okun Water Ltd | Okun |
| 18. | FMFG Acquisition, Inc. | Okun Holding, Inc. |

10

**SCHEDULE B**

| **Direct Owner and Asset** | **Location of Asset** |
|---|---|

**Okun**

| | |
|---|---|
| 37' Heim Wooden Replica | _____ [Name of shop] |
| | _____ [Address of shop] |
| | _____, MI ____ [Zip Code] |
| | |
| Ski Nautique | _____ [Name of marina] |
| | _____ [Address of marina] |
| | Wolfeboro, NH ____ [Zip Code] |
| | |
| Four Jet Skis | _____ [Name of marina] |
| | _____ [Address of marina] |
| | Miami, FL _____ [Zip Code] |
| | |
| 26' 1979 Replica Dodge Gold Cup Racer | _____ [Name of shop] |
| | _____ [Address of shop] |
| | _____, MI ____ [Zip Code] |
| | |
| 2001 Ferrari Barchetta | _____ [Name of facility] |
| | _____ [Address of facility] |
| | Wolfeboro, NH ____ [Zip Code] |
| | |
| 2002 Dodge Caravan | _____ [Name of facility] |
| | _____ [Address of facility] |
| | Wolfeboro, NH ____ [Zip Code] |
| | |
| 1979 Ferrari 400 GT | DBR Motorsports |
| | _____ [Address] |
| | Brownsburg, IN ____ [Zip Code] |
| | |
| 1999 AC Cobra Replica 428, 2-door | _____ [Name of facility] |
| | _____ [Address of facility] |
| | Wolfeboro, NH ____ [Zip Code] |
| | |
| 1967 Sunbeam Alpine | _____ [Name of facility] |
| | _____ [Address of facility] |
| | Wolfeboro, NH ____ [Zip Code] |
| | |
| 2003 Aston Martin Convertible | _____ [Name of facility] |
| | _____ [Address of facility] |
| | Wolfeboro, NH ____ [Zip Code] |

11

| | |
|---|---|
| 1982 Manta | DBR Motorsports<br>_____ [Address]<br>Brownsburg, IN _____ [Zip Code] |
| Three Indy Cars | DBR Motorsports<br>_____ [Address]<br>Brownsburg, IN _____ [Zip Code] |
| One Indy Car | _____ [Name of facility]<br>_____ [Address of facility]<br>Wolfeboro, NH _____ [Zip Code] |
| 2005 Harley Davidson | _____ [Name of facility]<br>_____ [Address of facility]<br>Wolfeboro, NH _____ [Zip Code] |
| 2006 Harley Davidson | _____ [Name of facility]<br>_____ [Address of facility]<br>Wolfeboro, NH _____ [Zip Code] |
| Silverstar Trailer | DBR Motorsports<br>_____ [Address]<br>Brownsburg, IN _____ [Zip Code] |
| Chevrolet Silverado | _____ [Name of facility]<br>_____ [Address of facility]<br>Wolfeboro, NH _____ [Zip Code] |
| Ford F250 Superduty Pickup Truck | _____ [Name of facility]<br>_____ [Address of facility]<br>Miami, FL _____ [Zip Code] |
| 2003 Porsche | _____ [Name of facility]<br>_____ [Address of facility]<br>_____, __ ___ [City, State Zip] |
| 2007 GMC Pickup Truck | _____ [Name of facility]<br>_____ [Address of facility]<br>_____, __ ___ [City, State Zip] |

**Bolani**

| | |
|---|---|
| 16' Morin Gentleman's Racer | _____ [Name of marina]<br>_____ [Address of marina]<br>Wolfeboro, NH _____ [Zip Code] |

12

2005 Lamborghini Gallardo

_____ [Name of facility]
_____ [Address of facility]
Wolfeboro, NH _____ [Zip Code]

2006 Land Rover Supercharged

_____ [Name of facility]
_____ [Address of facility]
Wolfeboro, NH _____ [Zip Code]

1962 GTO (Ferrari Grand) Replica

_____ [Name of facility]
_____ [Address of facility]
_____ [City, State, Zip]

**Okun Air, LLC**

Bell Helicopter

_____ [Name of facility]
_____ [Address of facility]
Manchester, NH _____ [Zip Code]

**Okun Air 2, LLC**

70 Gulfstream G2B N982B

_____ [Name of facility]
_____ [Address of facility]
Fort Myers, FL _____ [Zip Code]

**Okun Air 3, LLC**

78 Lear Jet 25D

_____ [Name of facility]
_____ [Address of facility]
Manchester, NH _____ [Zip Code]

**Okun Air 4, LLC**

69 Gulfstream G2 N511BA

_____ [Name of facility]
_____ [Address of facility]
Manchester, NH _____ [Zip Code]

**Okun Water, LLC**

Motor Yacht *Simone*

_____ [Name of marina]
_____ [Address of marina]
Norfolk, VA _____ [Zip Code]

38'Cigarette

_____ [Name of marina]
_____ [Address of marina]
Wolfeboro, NH _____ [Zip Code]

13

**Simone Bentley, LLC**

2005 Bentley Continental GT

_____ [Name of facility]
_____ [Address of facility]
Wolfeboro, NH _____ [Zip Code]

14

**SCHEDULE C**

List of lienors or other persons with beneficial interests in the Assets other than the Grantors.

**SCHEDULE D**

List of actions or proceedings threatened or pending against Assets or Grantors.

1. *The 1031 Tax Group, LLC, et al., Debtors*, consolidated case no. 07-11448 (MG), United States Bankruptcy Court for the Southern District of New York

2. *Newton Bayard Ltd. v. Okun et al.*, Index No. 07-2263, Superior Court of the Commonwealth of Massachusetts.

3. *Hunter v. Okun et al.*, Index No. 5:2007cv02795, United States District Court for the Northern District of California.

4. Chapter 11 proceedings of IPofA West Oaks Mall, LP, IPofA Columbus Works LeaseCo, LLC and IPofA WOM Master LeaseCo, LP.

16

10/15/2007  11:04    2123712768              ABACUS                      PAGE 02/02

**EXHIBIT E**

**APPOINTMENT OF ASSET MANAGER**

Pursuant to the authority granted to Huron as CRO pursuant to the order of the United States Bankruptcy Court for the Southern District of New York, dated July 3 2007 and the Agreement to Transfer Assets and Interests for the Benefit of Bankruptcy Estates, dated as of October 8 , 2007 (the "Agreement"), CRO hereby appoints Abacus Advisors, LLC, 10 Reuten Drive, Closter, New Jersey 07624, as "Asset Manager" as that term is defined in the Agreement of all of the assets conveyed to or for the benefit of Debtors pursuant to the Agreement, and Abacus Advisors hereby accepts such appointment.

Dated: October 12 2007

**THE 1031 TAX GROUP, LLC, *ET. AL.*, DEBTORS**

By: HURON CONSULTING GROUP LLC, as Chief Restructuring Officer

By: _____
        James M. Lukenda

**ACCEPTED BY:**

**ABACUS ADVISORS, LLC**

By: _____
        Alan Cohen

**CONSENT TO APPOINTMENT BY**
**COMMITTEE OF UNSECURED CREDITORS**

By: GREENBERG TRAURIG, LLP, Counsel to the Committee

By: _____
        Thomas J. Weber, Esq.

17

# <u>EXHIBIT D</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11
                                                    :        Case No. 07-11448 (MG)
1031 TAX GROUP, LLC, *et al.,*                      :
                                                    :
                                                    :
                        Debtors.                    :
                                                    :
------------------------------------------------------------------x

### ORDER APPROVING AGREEMENT TO
### TRANSFER INTERESTS AND ASSETS FOR
### <u>THE BENEFIT OF BANKRUPTCY ESTATES</u>

Upon the Motion (the "<u>Motion</u>") of the OFFICIAL COMMITTEE

of UNSECURED CREDITORS appointed in the above-captioned cases (the

"<u>Committee</u>"), and of the above-captioned DEBTORS (the "<u>Debtors</u>"), for an

Order approving and authorizing the Debtors to enter into, and effectuate, the

*Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates,* dated

as of October 11, 2007 (the "<u>Agreement</u>"), between (i) Edward H. Okun ("<u>Okun</u>")

and Simone Bolani ("<u>Bolani</u>," and together with Okun, the "<u>Grantors</u>"), and (ii) the

Debtors, acting by and through Huron Consulting Services, LLC ("<u>Huron</u>"), in its

capacity as Chief Restructuring Officer for the Debtors (the "<u>CRO</u>"), and for

related relief; and upon the Affidavit of James Feltman, sworn to October 16, 2007

(the "<u>Feltman Affidavit</u>") filed in support thereof; and upon the evidentiary

record presented in hearing held on October 23, 2007 and the oral argument of

the parties at that hearing; and this Court having found and concluded that:

1.      On May 14, 2007 (the "<u>Petition Date</u>"), The 1031 Tax Group, LLC

and various affiliated Debtor entities filed voluntary petition for relief under Chapter

402958.4

11 of the Bankruptcy Code in this Court. On June 11, 2007 AEC Exchange Company, LLC, a Debtor, filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtor's cases are jointly administered pursuant to Orders of this Court dated May 22, 2007, and June 13, 2007.

2.      By Order of this Court dated July 3, 2007, Huron was retained as CRO and in other capacities on behalf of the Debtors.

3.      The United States Trustee appointed the Committee effective May 30, 2007.

4.      The Debtors and the Committee have presented the Agreement[1] under which assets of the Grantors are conveyed for the benefit of the estates (the "Assets").

---

[1] A true and correct copy of the Agreement is attached as Exhibit A to the Feltman Affidavit.

5.     By motion dated October 15, 2007, the United States Trustee, pursuant to section 1104(a) of the Bankruptcy Code, seeks, *inter alia*, the appointment of a trustee. Several other creditors filed motions seeking similar relief (collectively, the "Trustee Motion").

6.     An evidentiary hearing came on before this Court on October 23, 2007 to consider the relief sought in the Motion, and the Trustee Motion. By amended memorandum decision and order entered October 23, 2007, the Court granted the Trustee Motion, and directed the United States Trustee to appoint a trustee pursuant to Section 1104 of the Bankruptcy Code. On October 24, 2007, the United States Trustee appointed Gerard A. McHale, Jr. (the "Trustee") as trustee, and by Order dated October 25, 2007, the Court approved the appointment.

7.     Pursuant to paragraph 7.4 of the Agreement, the Trustee is the successor to the Debtors and the CRO.

8.     Pursuant to paragraph 3(b) of the Agreement, the Trustee may, but is not obligated to, designate an agent (the "Asset Manager") to exercise, on behalf of the Trustee, the management and voting rights conveyed by the Grantors. Paragraph 3(b) of the Agreement provides that, subject to the consent and approval of this Court, Abacus Advisors LLC ("AAL") is appointed as Asset Manager.

9.     Should the Trustee determine to designate an Asset Manager, he is not obligated to select AAL.

10.     Should the Trustee determine not to designate an Asset Manager, then the references in the Agreement to "Asset Manager" would refer to the Trustee.

11. Conveyance of the Assets for the benefit of the estates as set forth in the Agreement is in the best interests of the creditors of the Debtors' estates.

12. Due and sufficient notice of the hearing to consider the Agreement was provided to parties-in-interest, including the Grantors.

13. The Trustee has advised the Court that he supports granting of the Motion in accordance with this Order.

THEREFORE, IT IS:

ORDERED that the relief sought in the Motion be, and hereby is, granted as set forth herein; and it is further

ORDERED, that the Trustee is the successor to the Debtors and the CRO; and it is further

ORDERED that the Agreement is binding upon the Grantors, notwithstanding the appointment of the Trustee; and it is further

ORDERED that the Trustee, be, and hereby is, authorized to enter into, and effectuate the terms of the Agreement, provided, however, that to the extent that the Motion seeks the consent and approval of this Court regarding appointment of AAL as Asset Manager, the Motion is adjourned without date; and it is further

ORDERED, that the Trustee is not required to designate an Asset Manager, and in the event that the Trustee does not designate an Asset Manager, then the rights, powers, role, duties and obligations of the Asset Manager shall vest in the Trustee; and it is further

ORDERED, that in the event that the Trustee wishes to designate an Asset

Manager, he, subject to approval of this Court, may select an Asset Manager other

than AAL; and it is further

ORDERED that, except as otherwise set forth herein, all parties to the

Agreement be, and hereby are, directed to effectuate the Agreement; and it is further

ORDERED that this Court shall retain jurisdiction and authority to

enforce, determine disputes under, and compel compliance with, the Agreement.

Dated: New York, New York
      October 26, 2007

                               /s/ Martin Glenn
                            MARTIN GLENN
                            UNITED STATES BANKRUPTCY JUDGE

*402958.4*