UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

CORDELL CONSULTANTS, INC., MONEY      :      Civil Action No. 07-10541
PURCHASE PLAN, a Qualified Florida Retirement      :
Plan Trust, and CORDELL FUNDING, LLLP      :
     :
              Plaintiffs,      :
     :
       - against -      :
     :
EDWARD H. OKUN; SAM TRUSTEE SERVICES,      :
LLC; IPOFA 5201 LENDER, LLC; INVESTMENT      :
PROPERTIES OF AMERICA, LLC; CROSSROADS      :
TRANSPORTATION & LOGISTICS, INC.; SIMONE      :
CONDO I, LLC; and SIMONE CONDO II, LLC,      :
     :
              Defendants.      :

--------------------------------------------------------------------x

**DECLARATION OF STACY H. SCHNEIDER, ESQ.
ATTACHING ADDITIONAL RECORDS OF NEW YORK SUPREME
<u>COURT IN CONNECTION WITH NOTICE OF REMOVAL OF ACTION</u>**

       STACY H. SCHNEIDER, ESQ., pursuant to 28 U.S.C. § 1746, declares, under

penalty of perjury, as follows:

       1.        I am associated with the law firm of Golenbock Eiseman Assor Bell &

Peskoe LLP, counsel to defendants IPofA 5201 Lender, LLC; Investment Properties of America,

LLC; Crossroads Transportation & Logistics, Inc.; Simone Condo I, LLC; and Simone Condo II,

LLC (the "Defendants").

       2.        On November 21, 2007, Defendants filed a Notice of Removal of this

action, pursuant to 28 U.S.C. §§ 1446 and 1452(a), to remove this action from the Supreme

Court for the State of New York, County of New York, to this Court.

       3.        Pursuant to Rule 81.1(b) of the Local Civil Rules governing the Southern

and Eastern Districts of New York, I submit this declaration to bring before this Court all records

filed in the state court action prior to removal that were not attached to the Notice of Removal.

*408218.1*

4.    The records are attached as Exhibits hereto as follows:

| Exh. A | Plaintiffs' Request for Judicial Intervention, dated October 19, 2007 |
| Exh. B | Plaintiffs' Statement in Support of Request for Assignment to Commercial Division, dated October 19, 2007 |
| Exh. C | Affidavit [of Douglas E. Spelfogel, Esq.] of Emergency and for Expedited Relief, dated October 19, 2007 |
| Exh. D | [Proposed] Order of Attachment and Appointing Temporary Receiver |
| Exh. E | Index of Exhibits attached to Affirmation of Douglas E. Spelfogel, Esq. in Support of Ex Parte Motion for Attachment and Appointment of Receiver, dated October 19, 2007 |

Dated: New York, New York
           December 5, 2007

                                        /s/ Stacy H. Schneider
                                        Stacy H. Schneider (SS-7604)

UCS-840(REV 1/2000)
# REQUEST FOR JUDICIAL INTERVENTION

**Supreme Court of the State of New York**

INDEX NO. *603472/07*

CORDELL CONSULTANTS INC.,
MONEY PURCHASE PLAN, a
Qualified Florida Retirement Plan
Trust, and CORDELL FUNDING,
LLLP,

Plaintiffs,

-against-

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201
LENDER, LLC; INVESTMENT
PROPERTIES OF AMERICA, LLC;
CROSSROADS TRANSPORTATION
& LOGISTICS, INC.; SIMONE
CONDO I, LLC; and SIMONE
CONDO II, LLC,

Defendants.

NEW YORK COUNTY

DATE PURCHASED: 10/19/07

For Clerk Only

IAS entry date

RECEIVED

OCT 19 2007

NEW YORK
COUNTY CLERK'S OFFICE

Judge Assigned

RJI Date

Date issue joined: _____ Bill of particulars served (Y/N): [ ] Yes     [X] No

**NATURE OF JUDICIAL INTERVENTION** (check **ONE** box only **AND** enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of readiness

[ ] Notice of motion (return date:_____)
   Relief sought _____

[] Order to show cause
   (clerk enter return date:_____)
   Relief sought-_____

[X] Other ex parte application (specify:
Attachment and Appointment of Receiver
_____)

[ ] Notice of petition (return date:_____)
   Relief sought _____

[ ] Notice of medical or dental malpractice     action
(specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____

_____)

**NATURE OF ACTION OR PROCEEDING** (Check **ONE** box only)
**MATRIMONIAL**
[ ] Contested                    -CM
[ ] Uncontested               -UM
**COMMERCIAL**
[ ] Contract                       -CONT

[ ] Corporate                         -CORP
[ ] Insurance (where insurer is a
   party, except arbitration)     -INS
[ ] UCC (including sales, negotiable    -UCC
   instruments)

[X] *Other Commercial          -OC
    Payment of promissory notes and guarantees.

**REAL PROPERTY**
[ ] Tax Certiorari              -TAX
[ ] Foreclosure                 -FOR
[ ] Condemnation                -COND
[ ] Landlord/Tenant             -LT
[ ] *Other Real Property        -ORP

**OTHER MATTERS**
[ ] *_____  -OTH

* If asterisk used, please specify.
**TORTS**
Malpractice
[ ] Medical/Podiatric           -MM
[ ] Dental                      -DM
[ ] *Other Professional         -OPM

[ ] Motor Vehicle               -MV
[ ] *Products Liability         -PL

[ ] Environmental               -EN
[ ] Asbestos                    -ASB
[ ] Breast Implant              -BI
[ ] *Other Negligence           -OTN

[ ] *Other Tort (including
    intentional)                -OT

**SPECIAL PROCEEDINGS**
[ ] Art. 75 (Arbitration)       -ART75
[ ] Art. 77 (Trusts)            -ART77
[ ] Art. 78                     -ART78
[ ] Election Law                -ELEC
[ ] Guardianship (MHL Art. 81)  -GUARD81
[ ] *Other Mental Hygiene       -MHYG

[X] *Other Special Proceeding   -OSP

**Check "YES" or "NO" for each of the following questions:**

Is this action/proceeding against a

YES  NO                                    YES  NO
[ ]  [X] Municipality:                     [ ]  [X] Public Authority:
 (Specify_____)        (Specify_____)

YES  NO
[X]  [ ] Does this action/proceeding seek equitable relief?
[ ]  [X] Does this action/proceeding seek recovery for personal injury?
[ ]  [X] Does this action/proceeding seek recovery for property damage?

**Pre-Note Time Frames:**
**(This applies to all cases except contested matrimonial and tax certiorari cases)**

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):

⊠ **Expedited: 0-8 months**          ☐ **Standard: 9-12 months**          ☐ **Complex: 13-15 months**

**Contested Matrimonial Cases Only:** (Check and give date)

    Has summons been served?          ☐ No          ☐ Yes, Date_____

    Was a Notice of No Necessity filed? ☐ No          ☐ Yes, Date_____
**ATTORNEY(S) FOR PLAINTIFF(S):**

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | Douglas E. Spelfogel<br>Baker & Hostetler LLP | 45 Rockefeller Plaza<br>New York, New York 10111 | 212 589-4200<br>212 589-4201-Fax |
| ☐ | | | |

**ATTORNEY(S) FOR DEFENDANT(S):**

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | | | |
| ☐ | | | |

*Self Represented: parties representing themselves, without an attorney, should check the "Self Rep." box and enter their

name, address, and phone # in the space provided above for attorneys.
**INSURANCE CARRIERS:**

**RELATED CASES: (IF NONE, write "NONE" below)**

| Title | Index # | Court | Nature of Relationship |
|-------|---------|-------|------------------------|

**I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION**

**PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.**

Dated: 10/18/07

_____

(SIGNATURE)
Douglas E. Spelfoger, Esq.

_____
(PRINT OR TYPE NAME)

ATTORNEY FOR PLAINTIFFS

**ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION**

\forms\rji2000.wpd

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

------------------------------------------------------------------ x

CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a
Qualified Florida Retirement Plan Trust, and CORDELL FUNDING,
LLLP,

<div style="margin-left:2em">Plaintiff/Petitioner,</div>

<div style="margin-left:2em">- against -</div>

EDWARD H. OKUN; SAM TRUSTEE SERVICES, LLC;
IPOFA 5201 LENDER, LLC; INVESTMENT PROPERTIES
OF AMERICA, LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC; and SIMONE
CONDO II, LLC,
<div style="margin-left:4em">Defendant/Respondent.</div>

------------------------------------------------------------------ x

Index No. _____ 603472/07

STATEMENT IN SUPPORT OF
REQUEST FOR ASSIGNMENT
TO COMMERCIAL DIVISION

____Douglas E. Spelfogel_____, counsel for CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Florida Retirement Plan Trust, and CORDELL FUNDING, LLLP, the

_____Plaintiffs_____in this matter, submits this Statement and the accompanying copy of the pleadings, pursuant to Section 202.70 (d) (2) of the Uniform Rules for the Trial Courts, in support of the request of said party for the assignment of this matter to the Commercial Division of this court.

(1)  I have reviewed the standards for assignment of cases to the Commercial Division set forth in Section 202.70. This case meets those standards. I therefore request that this case be assigned to the Division.

(2)  The sums at issue in this case (exclusive of punitive damages, interest, costs, disbursements, and counsel fees claimed) are equal to or in excess of the monetary threshold of the Division in this county as set out in Subdivision (a) of said Section, or equitable or declaratory relief is sought, in that ___the sums at issue in this case are in excess of $42,000,000.00._____

(3)  This case falls within the standards set out in Subdivision (b) of the Section and does not come within the groups of cases set out in Subdivision (c) that will not be heard in the Division, in that ____the issues in the case stem from breaches of promissory notes and guarantees._____

Dated: ____October 19, 2007_____

_____ (Signature)
Douglas E. Spelfogel , Esq.

Baker & Hostetler LLP_____ (Firm)
45 Rockefeller Plaza_____ (Address)

____212 589 4200_____ (Phone)
____212 589 4201_____ (Fax)
____dspelfogel@bakerlaw.com__ (E-Mail)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

*Index No : 603472/07*

Affidavit of Emergency and for
Expedited Relief

---

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Retirement Plan
Trust, and CORDELL FUNDING, LLLP,

                    Plaintiffs,

    - against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER, LLC;
INVESTMENT PROPERTIES OF AMERICA,
LLC; CROSSROADS TRANSPORTATION &
LOGISTICS, INC.; SIMONE CONDO I, LLC;
and SIMONE CONDO II, LLC,

                    Defendants.

---

       DOUGLAS E. SPELFOGEL, ESQ., an attorney duly admitted to the practice of

law in the State of New York, hereby swears under the penalties of perjury to the best of

his knowledge, information, and belief as follows:

       1.    I am a partner with the firm of Baker & Hostetler LLP, attorneys for

Plaintiffs in this action.  I submit this Affidavit for Emergency and Expedited Relief in

further support of Plaintiffs' Motion for Attachment and Appointment of Receiver.

       2.    Plaintiffs' Motion for Attachment and Appointment of Receiver is

submitted along with a Motion for Summary Judgment in Lieu of Complaint.  The

amount in controversy has been acknowledged by Defendants without defense or offset

based upon various notes and guarantees all of which are in default. The total amount

due under the subject loans and guarantees is in excess of $42 million as of August 1,

2007, which loans continue to accrue interest, fees, and costs in the amounts of hundreds of thousands of dollars per month.

3.      As provided in the annexed moving papers, Defendant Edward H. Okun (the principal of all other Defendants) is an alleged fraudster, whose method of operation is to move assets among organizations within his control. One of his unrelated entities recently filed for bankruptcy protection after Okun allegedly defrauded its beneficiaries by diverting between $130-150 million of the beneficiaries funds to other entities under Okun's control. Okun is currently under investigation in the Eastern District of Virginia. He has shown a propensity to treat monies in his supervision as his own funds, regardless of the true owner, to be moved, invested and spent as he wishes. Moreover, Okun has failed to turnover or pay cash and notes receivables subject to the Lenders liens in the face of numerous demands and defaults under the Loans and the Loan Modification Agreement, while such sums are usurped for Okun's own purposes. In addition, pursuant to the Agreement, Okun has agreed to transfer substantially all of his assets, in affect, stripping himself of all property despite acknowledged liabilities to Lenders in excess of $42 million, thus jeopardizing Plaintiffs' rights. In a motion pending before a bankruptcy court in the unrelated 1031 Tax Group matter, Okun is looking to give away all of his property to the creditors of such case, based in part upon the fact that no state court injunctions, attachment, or other outright prohibition is in place barring transfer of Lenders collateral and property subject to its claims herein.[1]    These threats to the assets securing Plaintiffs' Loans – both those assets for which Plaintiffs have liens outstanding

---

[1] Okun is not in bankruptcy, nor is his property part of the unrelated bankruptcy case.

and that personal property of Okun's by which he has personally guaranteed the debt –
are imminent and irreparable.

4.       Based upon the foregoing, and as detailed more fully in the attached,
Plaintiffs respectfully request the instant application be granted in all respects and that the
prefixed proposed order granting orders of attachment and the appointment of receiver be
granted in all respects.

Dated: New York, New York
       October 19, 2007

_____
Douglas E. Spelfoge

Notary Public
Sworn this 19 day of October
2007

_____

Theresa Blaber
Notary Public, State of New York
No. 01BL6122229
Qualified in Queens County
Commission Expires _____

At IAS Part ___ of the Supreme Court of
the State of New York, County of New
York, at the Courthouse, __ Centre
Street, New York, New York on the __
day of October, 2007

Present: Hon.

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Retirement
Plan Trust, and CORDELL FUNDING, LLLP,

INDEX NO. _603472/07_

                        Plaintiffs,

        - against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER,
LLC; INVESTMENT PROPERTIES OF
AMERICA, LLC; CROSSROADS
TRANSPORTATION & LOGISTICS, INC.;
SIMONE CONDO I, LLC; and SIMONE
CONDO II, LLC,
Defendants.

## ORDER OF ATTACHMENT AND
## APPOINTING TEMPORARY RECEIVER

CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified

Retirement Plan Trust, and CORDELL FUNDING, LLLP, by their attorneys, Baker & Hostetler

LLP, having duly moved for an order (a) pursuant to CPLR § 6201 for a warrant of attachment

on the basis that one of the grounds for attachment set forth in CPLR § 6201 exists in favor of

Plaintiffs and against Defendants to recover a sum of money only, in an amount not less than

$42,000,000.00, as damages for the failure to make payments on loan instruments, which

damages are over and above all counterclaims known to Plaintiffs, and Defendants are not

domiciled in New York and are security risks, and Plaintiffs have agreed to provide an

undertaking determined by this Court and (b) pursuant to CPLR § 6401 appointing a temporary

receiver of certain property described in Exhibit A annexed hereto, upon the ground that they have an apparent interest in such property, which is the subject of the above entitled action now pending in this court, and that there is danger that the property will be removed, lost, materially injured or destroyed, and the motion having regularly come on to be heard,

Now, upon reading and filing the notice of motion dated October 19, 2007, the affirmation of Douglas E. Spelfogel, Esq. dated October 19, 2007, the Motion for Summary Judgment in Lieu of Complaint heretofore served herein, and after due deliberation having been held thereon,

Now, upon motion of Douglas E. Spelfogel, attorney for CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Retirement Plan Trust, and CORDELL FUNDING, LLLP (together, "Plaintiffs"), it is

ORDERED that Plaintiffs' motion for an order of attachment is granted, and it is further

ORDERED that the amount to be secured by this order of attachment, inclusive of probable interest, costs and Sheriff's fees and expenses, shall be $_____ [up to $47,880,400.00], and it is further

ORDERED that Plaintiffs' undertaking be and the same hereby is fixed in the sum of $_____ [$500.00 through $12,020,100.00] conditioned that Plaintiffs shall pay to Defendants an amount not exceeding $_____ [up to $11,970.100.00] for legal costs and damages which may be sustained by reason of the attachment, and up to and not exceeding $50,000.00 to the Sheriff for allowable fees, if Defendants recover judgment or it is decided that Plaintiffs are not entitled to an attachment of the property of Defendants, and it is further

ORDERED that the Sheriff of the City of New York, or the, Sheriff of any County of the State of New York, levy within his jurisdiction on the amount held by the law firm of

_____, New York, New York, in an interest bearing account of the _____ Bank, New York, New York, Account Number _____ entitled _____ for the purpose of securing and satisfying any judgment recovered by Plaintiffs herein, together with interest from _____, 2007, and it is further

ORDERED, that _____ of _____, be and is hereby appointed temporary receiver of the property described in Exhibit A annexed hereto with the usual powers and duties according to the laws of this State, and the practice of this court, upon his executing and acknowledging, in the usual form, and filing with the Clerk of this Court, for the County of New York, an undertaking in the sum of _____ [$_____] Dollars, with a duly authorized Surety Company as surety, to be approved by a justice of this court, conditioned for the faithful discharge of [his or her] duties and the duty of accounting for all moneys and property received by [him or her] as such receiver, and it is further

ORDERED, that the receiver take possession of the aforesaid property and that the receiver may incur at the expense of such property, such costs and charges, and make such disbursements as may be actually necessary for obtaining possession thereof, preserving the same and executing the duties imposed by this order, and that the receiver is authorized to institute and carry on all legal proceedings necessary for the protection of the property or to recover possession thereof, and to employ counsel in connection with any matters involving the property, and it is further

ORDERED, that all third party account debtors to the above-captioned Defendants shall pay directly to the receiver or Plaintiffs the amounts due under their obligations, including without limitation amounts due under that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000.00 made by the Obligor to Morgan Stanley, that certain

$27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus Works Trust and that certain $2 million Promissory Note and Mortgage dated March 1, 2005 to Parkway Trust; and it is further

ORDERED, that the receiver forthwith deposit all moneys received by [him or her] at the time [he or she] receives them in [his or her] own name as receiver in [a checking or interest-bearing account], showing the name of the case, in [list the name of the bank or trust company], and that no funds be withdrawn from the account, and no check thereon be honored, unless directed by court order or the check is countersigned by the receiver's surety on [his or her] undertaking; provided, however, and to turn over to Plaintiffs funds collected pursuant to applicable collateral assignments of rents, notes and other receivables and shall pay Plaintiffs such funds as collected pursuant to the Escrow Agreement as defined in the moving papers in accordance with UCC 9-607; and it is further

ORDERED, that the depository furnish monthly statements to the receiver and to the attorney for the receiver; and it is further

ORDERED, that any and all persons now or at any time in the possession of the property, upon demand of the receiver, surrender the same to [him or her], and it is further

ORDERED, that EDWARD H. OKUN, SAM TRUSTEE SERVICES, LLC, IPOFA 5201 LENDER, LLC, INVESTMENT PROPERTIES OF AMERICA, LLC, CROSSROADS TRANSPORTATION & LOGISTICS, INC., SIMONE CONDO I, LLC and SIMONE CONDO II, LLC, be and are hereby directed and enjoined from interfering with the possession of the receiver in regard to the property, and it is further

ORDERED, that the receiver may at any time apply to this court for an order or other instructions or powers necessary to enable the receiver properly to fulfill [his or her] duties.

So Ordered,

_____

J.S.C.

## EXHIBIT A

1.    IPofA 5201's interest in that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000 made by non-parties WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley").

2.    (i) That certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Derive, Carmel, Indiana, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida.

3.    That certain Collateral Assignment, Security Agreement, Guaranty, Stock Pledge Agreement, Membership Interest Pledge and the other Loan Documents described in the Sam Note, including without limitation that certain $27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus Works Trust and that certain $2 million Promissory Note and Mortgage dated March 1, 2005 to Parkway Trust.

4.    Certain notes receivable and mortgages encumbering Florida condos as collateral pledged by Simone I and Simone II.

5.    All real and personal property, tangible and intangible, owned by Edward H. Okun. Either directly or indirectly.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Florida
Retirement Plan Trust, and CORDELL
FUNDING, LLLP,

Index No. _603472/07_

**INDEX OF EXHIBITS**

                                  Plaintiffs,

  - against -

EDWARD H. OKUN; SAM TRUSTEE
SERVICES, LLC; IPOFA 5201 LENDER,
LLC; INVESTMENT PROPERTIES OF
AMERICA, LLC; CROSSROADS
TRANSPORTATION & LOGISTICS, INC.;
SIMONE CONDO I, LLC; and SIMONE
CONDO II, LLC,

                            Defendants.

| Exhibit | Description |
|---|---|
| 1 | Secured Promissory Note dated December 12, 2006 ($2,500,000) |
| 2 | Guaranty ($2,500,000)<br>Key Principal Guaranty<br>Project Guaranty |
| 3 | Secured Promissory Note dated December 19, 2006 ($3,000,000) |
| 4 | Guaranty (Simone I)<br>Guaranty (Simone II) |
| 5 | Promissory Note dated April 20, 2007 ($7,000,000) |
| 6 | Secured Promissory Note dated May 3, 2006 ($26,500,000) |
| 7 | Key Principal Guaranty |
| 8 | Escrow Agreement |
| 9 | Loan Modification Agreement |
| 10 | Affidavit of Confession of Judgment |
| 11 | Supplement to Loan Modification Agreement |
| 12 | Notice of Modification Default Letters |

101876052.2

<u>**SECURED PROMISSORY NOTE**</u>

$2,500,000

New York, New York
December 12, 2006

1.    FUNDAMENTAL PROVISIONS.

The following terms are used as defined terms in this Secured Promissory Note (as it may be amended, modified, extended and renewed from time to time, the "Note" or "Agreement"):

Lender:    Cordell Consultants Inc., Money Purchase Plan, a Florida Qualified Retirement Plan Trust.

Borrower:    IPofA 5201 Lender, LLC, a Delaware limited liability company ("Borrower") having an address c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

Principal Amount:    Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00).

Interest Rate:    (i) The greater of thirteen percent (13%) per annum or five percent (5%) per annum in excess of the Prime Rate (defined below) in effect on the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the Prime Rate so published on the first Business Day (defined below) of each succeeding month for the period commencing on the date hereof through and including the calendar day immediately preceding the first anniversary of the date hereof; (ii) the greater of fifteen percent (15%) per annum or seven percent (7%) per annum in excess of the Prime Rate in effect on the first anniversary of the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the first Business Day of each succeeding month, for the period commencing on the first anniversary of the date hereof through and including the calendar day immediately preceding the second anniversary of the date hereof; and (iii) the greater of seventeen percent (17%) per annum or nine percent (9%) per annum in excess of the Prime Rate in effect on the second anniversary of the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the first Business Day of each succeeding month, for the period commencing on the second anniversary of the date hereof through and including the Maturity Date, except as otherwise provided herein; notwithstanding the foregoing, the Interest Rate shall not exceed twenty-five percent (25%) per annum.

Default Interest Rate: Twenty-five percent (25%).

| | |
|---|---|
| Maturity Date: | December 11, 2009. |
| Business Day: | Any day of the year other than Saturdays, Sundays and legal holidays on which Lender is obligated or permitted to be closed. |
| Collateral Assignment: | That certain Collateral Assignment from Borrower to Lender, dated the date of this Note. |
| Collateral Documents: | The documents set forth on Exhibit A. |
| Governmental Authority: | Any court, government or governmental authority (federal, state, local, foreign). |
| Guarantor: | Edward H. Okun. |
| Guaranty: | That certain Guaranty from Guarantor to Lender dated the date of this Note. |
| Interest Period: | Each consecutive one calendar month period (the first of which shall commence January, 2007). |
| Key Principal Guarantor: | Investment Properties of America, LLC |
| Key Principal Guaranty: | That certain Key Principal Guaranty from Key Principal Guarantor to Lender dated the date of this Note. |
| Loan: | The loan from Lender to Borrower in the Principal Amount and evidenced by this Note. |
| Loan Documents: | This Note, the Collateral Assignment, the Security Agreement, the Guaranty, the Key Principal Guaranty, the Project Guaranty, the Membership Interest Pledge Agreement and such other documents and agreements entered into by Borrower and Lender in connection with the Loan. |
| Membership Interest Pledge Agreement: | That certain Membership Interest Pledge Agreement from Key Principal Guarantor to Lender dated the date of this Note. |

| Prime Rate: | The daily average prime rate for corporate loans at large United States money center commercial banks published in The Wall Street Journal. If a prime rate is no longer generally published, or is limited, regulated or administered by a governmental or quasi-governmental body, then Lender shall select a comparable interest rate index that is readily available to Borrower and verifiable by Borrower but is beyond Lender's control. |
| --- | --- |
| Project: | The real property and improvements constituting the "Property" (as defined in the "Collateral Mortgage" [as defined on Exhibit A]). |
| Project Guarantor: | Crossroads Transportation & Logistics, Inc. |
| Project Guaranty: | That certain Project Guaranty from Project Guarantor to Lender, dated the date of this Note. |
| Security Agreement: | That certain Security Agreement from Borrower to Lender dated the date of this Note. |

2.    PROMISE TO PAY.

For value received, Borrower promises to pay to the order of Lender, at 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez, or at such other place as Lender may from time to time designate in writing, the Principal Amount, together with accrued interest from the date of disbursement on the unpaid principal balance of this Note at the Interest Rate, as set forth below.

3.    INTEREST; PAYMENTS.

(a)    Absent an Event of Default under this Note or under any of the other Loan Documents from the date hereof, interest will accrue on the unpaid principal balance of this Note at the Interest Rate. Interest at the Interest Rate shall be computed on the basis of the actual number of days elapsed over a 360-day year.

(b)    All payments of principal and interest due under this Note must be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts Borrower shall pay, and (ii) without any other set off. Borrower shall pay such amounts as are necessary to ensure that the gross amount of the principal and interest received by the holder hereof is not less than that required by this Note.

(c)    Prior to Lender making any advances under this Note, Borrower shall have paid to Lender (a) a commitment fee in an aggregate amount equal to $165,000 (which Lender acknowledges having received prior to the date hereof) and (b) a funding fee in an amount equal to $150,000.

3

(d)    Beginning February 1, 2007, and continuing on the first day of each month thereafter until the Maturity Date, Borrower shall make consecutive monthly installments of interest only, in arrears, at the Interest Rate on the then-outstanding Principal Amount.  A prorated, stub interest payment shall be collected on the date hereof for the initial partial month.

(e)    Borrower shall make one (1) final "balloon" payment, payable on the Maturity Date, of all unpaid principal, interest and all other amounts due under the Loan Documents.  Borrower acknowledges and agrees that the entire principal balance evidenced by this Note shall be due and payable on the Maturity Date.

(f)    If any payment of principal and interest to be made by Borrower hereunder shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time will be included in computing the interest in such payment.

4.    PREPAYMENT.

(a)    Optional Prepayment.  Borrower may prepay the unpaid principal balance of this Note, in whole or in part without penalty or premium, at any time.  Any such principal prepayment shall be accompanied by all accrued and unpaid interest on the principal being prepaid and all other amounts due under the Loan Documents. Any prepayment shall be in denominations of $10,000 and shall be no less than $100,000.

(b)    Mandatory Prepayment.  Borrower shall immediately pay to Lender as a prepayment on the unpaid principal balance of this Note, accrued but unpaid interest and all other amounts due under the Loan Documents, any amounts received by Borrower that constitutes a prepayment of the obligations evidenced and secured by the Collateral Documents.

5.    LAWFUL MONEY.

Principal, interest and all other amounts due to Lender must be paid in lawful money of the United States of America.

6.    APPLICATION OF PAYMENTS/LATE CHARGE.

(a)    Absent the occurrence of an Event of Default under this Note or any of the other Loan Documents, any payments received by the holder hereof pursuant to the terms of this Note will be applied first to payment of sums other than principal and interest to be paid by Borrower under this Note or any of the other Loan Documents, then to the payment of all interest accrued to the date of such payment, and the balance, if any, to the payment of principal.  Any payments received by the holder of this Note after the occurrence of an Event of Default under this Note or any of the other Loan Documents will be applied to the amounts specified in this Section 6(a) in such order as the holder may elect in its sole discretion.

4

(b)    If any payment of interest or principal is not received by the holder of this Note when it is due, then in addition to the remedies conferred upon the holder of this Note pursuant to Section 11 and the other Loan Documents, (i) subject to the provisions of this Note limiting interest to the maximum lawful amount, a late charge of 10% of the amount of the installment due and unpaid will be added to the delinquent amount to compensate the holder of this Note for the expense of handling the delinquency for any payment past due in excess of five (5) days after when scheduled to be due and payable, and (ii) the amount due and unpaid (including but not limited to the late charge) will bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid.

7.    SECURITY AND GUARANTY.

This Note is secured by, inter alia, (a) the Collateral Assignment, (b) the Security Agreement, (c) the Guaranty, (d) the Stock Pledge Agreement, (e) the Key Principal Guaranty, (f) the Project Guaranty, (g) the Membership Interest Pledge Agreement and (h) the other Loan Documents.

8.    REPRESENTATIONS AND WARRANTIES.

(a)    Organization and Powers.    Borrower is a limited liability company, duly organized and validly existing under the laws of the State of Delaware. Borrower has full power and authority or capacity to own and operate its properties, to carry on its businesses as now conducted and as proposed to be conducted, and to execute and deliver this Note and the other Loan Documents and to perform its obligations hereunder and thereunder. The address of Borrower's chief executive office and principal place of business is: 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

(b)    Good Standing.    Borrower has made all filings and is in good standing as a domestic limited liability company in the jurisdiction in which the character of the property it owns or the nature of the business it transacts makes such filings necessary or where the failure to make such filings could have a materially adverse effect on the business, operations, assets or condition of Borrower.

(c)    Non-Foreign Status.    Borrower is not a "foreign corporation," "foreign partnership," "foreign trust," or "foreign estate," as those terms are defined in the Internal Revenue Code and the regulations promulgated thereunder.

(d)    Authorization.    The execution, delivery and performance of the Loan Documents by Borrower are within Borrower's limited liability company powers and have been duly authorized by all necessary action required under Borrower's Operating Agreement.

(e)    No Conflict.    The execution, delivery and performance of the Loan Documents by Borrower will not violate (i) the organizational documents of Borrower; or (ii) any legal requirement affecting Borrower or any or its properties; or (iii) any

5

agreement to which Borrower is bound or to which it is a party and will not result in or require the creation (except as provided in or contemplated by this Agreement) of any lien upon any of such properties.

(f) <u>Governmental and Private Approvals</u>. To the best of Borrower's knowledge after due inquiry, all governmental or regulatory orders, consents, permits, authorizations and approvals required for the use, occupancy and operation of the Project have been obtained and are in full force and effect. No additional governmental or regulatory actions, filings or registrations, and no approvals, authorizations or consents of Borrower or any holder of any indebtedness or obligation of Borrower are required for the due execution, delivery and performance by Borrower of the Loan Documents.

(g) <u>Binding Obligations</u>. This Note and the other Loan Documents have been duly executed by Borrower, and are legally valid and binding obligations of Borrower, enforceable against Borrower in accordance with their terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

(h) <u>No Material Defaults</u>. There exists no material violation of or material default by Borrower and, to the best knowledge of Borrower, no event has occurred which, upon the giving of notice or the passage of time, or both, would constitute a material default with respect to (a) the Collateral Documents, (b) any lease or other agreement affecting the Project, (c) any license, permit, statute, ordinance, law, judgment, order, writ, injunction, decree, rule or regulation of any Governmental Authority, or any determination or award of any arbitrator or other private adjudicator to which Borrower or the Project may be bound, or (d) any mortgage, instrument, agreement or document by which Borrower, any owner or any of their respective properties is bound: (i) which involves any Loan Document, (ii) which involves the Project or any owner and is not adequately covered by insurance, (iii) which might materially and adversely affect the ability of Borrower to perform its obligations under any of the Loan Documents or any other material instrument, agreement or document to which it is a party, or (iv) which might adversely affect the priority of the liens created by the Collateral Documents, this Agreement or any of the Loan Documents.

(i) <u>Litigation; Adverse Facts</u>. There is no action, suit, investigation, proceeding or arbitration at law or in equity or before or by any foreign or domestic court or other governmental entity (a "Legal Action"), pending or, to the knowledge of Borrower, threatened against or affecting Borrower, Key Principal Guarantor, Project Guarantor, or Guarantor, or any of its respective assets which could reasonably be expected to result in any material adverse change in the business, operations, assets (including the Project) or condition (financial or otherwise) of Borrower, Project Guarantor, Key Principal Guarantor or Guarantor, or would materially and adversely affect Borrower's, Key Principal Guarantor's, Project Guarantor's or Guarantor's ability to perform its obligations under the Loan

6

Documents. Borrower is not (a) in violation of any applicable law which violation materially and adversely affects or may materially and adversely affect the business, operations, assets or condition (financial or otherwise) of Borrower, (b) subject to, or in default with respect to any other legal requirement that would have a materially adverse effect on the business, operations, assets or condition (financial or otherwise) of Borrower, or (c) in default with respect to any material agreement to which Borrower is a party or to which it is bound. There is no action, suit or proceeding pending or, to the knowledge of Borrower, Key Principal Guarantor, Project Guarantor, or Guarantor, threatened against or affecting Borrower, Key Principal Guarantor, Project Guarantor or Guarantor which, if adversely decided would materially impair the ability of Borrower, Key Principal Guarantor, Project Guarantor or Guarantor to perform its obligations under the Loan Documents.

(j)  _Title to Collateral; Liens._  Borrower is the sole owner of, and has good and indefeasible title to the Collateral Documents, free from any adverse lien, security interest or encumbrance of any kind whatsoever.

(k)  _Disclosure._  There is no fact known to Borrower that materially and adversely affects the business, operations, assets or condition (financial or otherwise) of Borrower, Key Principal Guarantor, Project Guarantor or Guarantor which has not been disclosed in this Agreement or in other documents, certificates and written statements furnished to Lender in connection herewith.

(l)  _Payment of Taxes._  All tax returns of Borrower required to be filed have been timely filed (subject to rights of extension), and all taxes, assessments, fees and other governmental charges upon Borrower and upon its properties, assets, income and franchises which are due and payable have been paid in a manner so as to not give rise to a lien upon the Collateral Documents. Borrower knows of no proposed tax assessment against it that would be material to the condition (financial or otherwise) of Borrower, and Borrower has not contracted with any government entity in connection with such taxes.

(m)  _Anti-terrorism Laws._

(i) _General._ Neither Borrower nor any affiliate of Borrower is in violation of any Anti-Terrorism Law or engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law. "Anti-Terrorism Law" shall mean any statutes, regulations, ordinances and orders ("Laws") relating to terrorism or money laundering, including Executive Order No. 13224, the USA Patriot Act, the Laws comprising or implementing the Bank Secrecy Act, and the Laws administered by the United States Treasury Department's Office of Foreign Asset Control (as any of the foregoing Laws may from time to time be amended, renewed, extended, or replaced).

7

(ii)   _Executive Order No. 13224._   Neither Borrower, nor its agents acting or benefiting in any capacity in connection with the Loan or other transactions hereunder, is any of the following (each a "Blocked Person"):

> (A)   a person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

> (B)   a person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

> (C)   a person or entity with which any Bank is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law;

> (D)   a person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order No. 13224;

> (E)   a person or entity that is named as a "specially designated national" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list, or

> (F)   a person or entity who is affiliated or associated with a person or entity listed above.

Neither Borrower nor, to the knowledge of Borrower, any of its agents acting in any capacity in connection with the Loan or other transactions hereunder (i) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, or (ii) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224.

(n)   _Government Regulations._   Borrower is not subject to any federal or state statute or regulation limiting its ability to incur indebtedness for money borrowed.

(o)   _Outstanding Balance._   The current outstanding principal balance due pursuant to the Collateral Promissory Note (as defined in Exhibit A attached hereto) is $6,873,952.81;

(p)   _Lien Priority._   The Collateral Mortgage constitutes a first priority mortgage lien against the Project and is in full force and effect;

(q)   _Title to Project._   Fee title to the Project is held of record and beneficially by the obligor under the Collateral Promissory Note ("Project Owner").

(r)   _No Material Defaults._   There exists no material violation of or material default by Project Owner and, to the best knowledge of Borrower, no event has occurred which, upon the giving of notice or the passage of time, or both, would constitute a material default by Project Owner under the Collateral Documents.

8

9.    COVENANTS.

(a)    <u>Compliance with Laws</u>.  Borrower will comply in all material respects with all applicable laws and requirements of any applicable Governmental Authority.

(b)    <u>Lender Inspections</u>.  Throughout the term of the Loan upon reasonable advance written notice to Borrower and during normal business hours, Borrower will permit, to the extent it has the right to pursuant to the Collateral Documents, Lender and Lender's representatives, inspectors and consultants to enter upon the Borrower's premises or the Project, to examine the books and records (including, but not limited to, financial and accounting records pertaining to the Loan or the Project), and to discuss the affairs, finances and accounts of Borrower (or any affiliate of Borrower which provides goods or services to Borrower) with representatives of Borrower.

(c)    <u>Financial Statements and Reports</u>.

(i)     As soon as available, and in any event within one hundred twenty (120) days of the end of each fiscal year of Borrower, Borrower shall furnish to Lender, certified as true and correct, a copy of (i) the annual operating statement of the Project, (ii) the unaudited financial statements of Borrower for such year, in form and substance reasonably satisfactory to Lender, and (iii) annual cash flow projections of Borrower, and shall also provide Lender with such other information respecting the condition of Borrower, Guarantor, Key Principal Guarantor, Project Guarantor and the Project as Lender may from time to time reasonably request in writing.

(ii)    Within forty-five (45) days following the end of the applicable quarter, Borrower shall furnish to Lender a quarterly operating statement for the Project covering the prior calendar quarter and cash flow reports of Borrower.

(iii)   Within twenty (20) days after filing, Borrower shall provide to Lender copies of tax returns of Borrower, Key Principal Guarantor, Project Guarantor and Guarantor.

(d)    <u>Further Assurances</u>.  Borrower shall execute and deliver from time to time, promptly after any reasonable request therefor by Lender, any and all instruments, agreements and documents and shall take such other action as may be necessary or desirable in the reasonable opinion of Lender to maintain, perfect or insure Lender's security provided for herein and in the other Loan Documents, including, without limitation, the execution of such amendments to the Loan Documents and the delivery of such available endorsements to the Lender's applicable title insurance policy, all as Lender shall reasonably require, and Borrower shall pay all reasonable out-of-pocket third party fees and expenses (including reasonable attorneys' fees) related thereto.

9

(e) <u>Notice of Litigation</u>.  Borrower will give, or cause to be given, prompt written notice to Lender of (a) any action or proceeding which is instituted by or against it in any Federal or state court or before any commission or other regulatory body, Federal, state or local, foreign or domestic, or any such proceedings which are threatened against it which, if adversely determined, is reasonably likely to have a material and adverse effect upon its ability to repay the Loan, (b) any other action, event or condition of any nature which is reasonably likely to have a material and adverse effect upon its business, operations, management, assets, properties, ownership or condition (financial or otherwise), or which, with notice or lapse of time or both, would constitute an Event of Default or a default under any other material contract, instrument or agreement to which it is a party or to which it or any of its properties or assets may be bound or subject, and (c) any actions, proceedings or notices materially adversely affecting the Project by any zoning, building or other municipal officers, offices or departments having jurisdiction with respect to the Project.

(f) <u>Anti-Terrorism Laws</u>.  Borrower and its respective affiliates and agents shall not (i) conduct any business or engage in any transaction or dealing with any Blocked Person, including the making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, (ii) deal in, or otherwise engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224; or (iii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order No. 13224, the USA Patriot Act or any other Anti-Terrorism Law. Borrower shall deliver to Lender any certification or other evidence requested from time to time by Lender in its sole discretion, confirming Borrower's compliance with this Section.

(g) <u>Amendments to Borrower's Organizational Documents</u>.  Borrower shall not allow any amendments to be made in the terms of its organizational documents, including its Operating Agreement, without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

10.   EVENTS OF DEFAULT.

The occurrence of any one or more of the following will constitute an event of default ("Event of Default") under this Note:

(a)   Failure by Borrower to pay any monetary amount when due under this Note or any other Loan Document which failure has not been cured within five (5) days after notice from Lender that the same is due;

(b)   Failure by Borrower, Key Principal Guarantor, Project Guarantor or Guarantor to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to Borrower, Key Principal Guarantor, Project Guarantor or Guarantor under any Loan Document which failure has not

10

been cured upon the expiration of thirty (30) days after written notice of such failure by Lender to Borrower, or such additional period of time as is reasonably required (not to exceed 90 days), provided Borrower has commenced and is diligently prosecuting such cure;

(c) Any representation or warranty by Borrower, Key Principal Guarantor, Project Guarantor or Guarantor in any Loan Document is materially false, incorrect, or misleading as of the date made;

(d) The occurrence of any event (including, without limitation, a change in the financial condition, business or operations of Borrower, Key Principal Guarantor, Project Guarantor or Guarantor for any reason whatsoever or any changes to the governing documents of Key Principal Guarantor, Project Guarantor or Borrower) that materially and adversely affects the ability of Borrower, Project Guarantor or Key Principal Guarantor to perform any of their respective obligations under the Loan Documents;

(e) Borrower, Key Principal Guarantor, Project Guarantor or Guarantor (i) admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors, or (iii) applies for, consents to, or acquiesces in, the appointment of a trustee, receiver, or other custodian for Borrower, Key Principal Guarantor, Project Guarantor or Guarantor or the property of Borrower, Key Principal Guarantor, Project Guarantor or Guarantor or any part thereof, or in the absence of such application, consent, or acquiescence, a trustee, receiver, or other custodian is appointed for Borrower, Key Principal Guarantor, Project Guarantor or Guarantor or the property of Borrower, Key Principal Guarantor, Project Guarantor or Guarantor or any part thereof, and such appointment is not discharged within ninety (90) days;

(f) Commencement of any case under the Bankruptcy Code, Title 11 of the United State Code, or commencement of any other bankruptcy arrangement, reorganization, receivership, custodianship, or similar proceeding under any federal, state, or foreign law by or against Borrower, Key Principal Guarantor, Project Guarantor or Guarantor and with respect to any such case or proceeding that is involuntary, such case or proceeding is not dismissed with prejudice within ninety (90) days of the filing thereof;

(g) Any litigation or proceeding is commenced before any Governmental Authority against or affecting Borrower or the property of Borrower or any part thereof and such litigation or proceeding is not defended diligently and in good faith by Borrower;

(h) A final judgment or decree for monetary damages or a monetary fine or penalty (not subject to appeal or as to which the time for appeal has expired) in excess of $50,000 in the aggregate is entered against Borrower by any Government Authority, which together with the aggregate amount of all other such judgments and decrees against Borrower that remain unpaid or that have not been

11

discharged, bonded off or stayed, is not paid and discharged, bonded off or stayed within thirty (30) days after the entry thereof;

(i)    Commencement of any action or proceeding which seeks as one of its remedies the dissolution of Borrower;

(j)    All or any material part of the property of Borrower is attached, levied upon, or otherwise seized by legal process, and such attachment, levy, or seizure is not quashed, stayed, or released within forty-five (45) days of the date thereof;

(k)    The existence of any lien or encumbrance on the Project that has not been approved in advance by Lender in writing;

(l)    The failure to close and fund that certain $3,000,000 loan to be made by Lender to Guarantor secured by the properties located at 901 Brickell Key Boulevard #1808, Miami, Florida, 901 Brickell Key Boulevard #3404, Miami, Florida and 10548 Coppergate Drive, Carmel, Indiana 46032 (the "Second Loan") on or before December 15, 2006;

(m)    There exists any "Event of Default" (as defined in the loan documents evidencing and securing the Second Loan) pursuant to the loan documents evidencing and securing the Second Loan;

(n)    There exists any Event of Default (as defined in the Collateral Mortgage) under the Collateral Mortgage, the Collateral Promissory Note or any other loan document given in connection with the Collateral Mortgage;

(o)    Fee title to the Project is transferred, either directly or indirectly, without Lender's written consent;

(p)    There is any modification to, termination of, or default under, that certain lease dated December 31, 2004 between IpofAWest 86th StreetLLC, as tenant, and the entities listed on Exhibit B annexed hereto ("Property Owner"), as landlord, as amended by First Amendment to Master Lease Agreement dated January ___, 2005;

(q)    The occurrence of any Event of Default, as such term is defined in any other Loan Document; or

(r)    Any default under the Collateral Documents.

11.    REMEDIES.

Upon the occurrence and during the continuance of any Event of Default under this Agreement, or upon the occurrence and during the continuance of an Event of Default under any of the other Loan Documents, then at the option of the holder of this Note, the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Borrower under this Note and the other Loan Documents will,

without presentment, demand, protest or notice of any kind, immediately become due and payable. Upon the occurrence of an Event of Default (and so long as such Event of Default continues), the entire balance of principal of this Note, together with all accrued interest thereon, all other amounts due under this Note or any of the other Loan Documents, and any judgment for such principal, interest and other amounts will bear interest at the Default Interest Rate, subject to the limitations contained in Section 17. No delay or omission on the part of the holder of this Note in exercising any right under this Note or under any of the other Loan Documents will operate as a waiver of such right.

12.    WAIVER.

Borrower, endorsers, guarantors and sureties of this Note hereby waive diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of nonpayment and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents or required by law) and expressly agree that, without in any way affecting the liability of Borrower, endorsers, guarantors, or sureties, the holder of this Note may extend any maturity date or the time for payment of any installment due under this Note, may otherwise modify the Loan Documents, may accept additional security, may release any person liable, and may release any security or guaranty. Borrower, endorsers, guarantors, and sureties waive, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

13.    CHANGE, DISCHARGE, TERMINATION, OR WAIVER.

No provision of this Note may be changed, discharged, terminated, or waived except in a writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought. No failure on the part of the holder of this Note to exercise and no delay by the holder of this Note in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

14.    INDEMNIFICATION.

TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AGREES TO PROTECT, INDEMNIFY, DEFEND AND SAVE HARMLESS LENDER AND ITS PARTNERS, MANAGERS, DIRECTORS, OFFICERS, AGENTS AND EMPLOYEES (EACH AN "INDEMNIFIED PARTY") FOR, FROM AND AGAINST ANY AND ALL LIABILITY, EXPENSE OR DAMAGE OF ANY KIND OR NATURE AND FOR, FROM AND AGAINST ANY SUITS, CLAIMS OR DEMANDS, INCLUDING REASONABLE LEGAL FEES AND EXPENSES ON ACCOUNT OF ANY MATTER OR THING OR ACTION OR FAILURE TO ACT BY LENDER, WHETHER IN SUIT OR NOT, ARISING OUT OF THIS AGREEMENT OR IN CONNECTION HEREWITH, EXCLUDING, HOWEVER, ANY MATTERS ARISING OUT OF INDEMNIFIED PARTY'S NEGLIGENCE OR WILLFUL MISCONDUCT. Upon receiving knowledge of any suit, claim or demand asserted by a third party that Lender believes is covered by this indemnity, Lender shall give Borrower notice of the matter and an opportunity to defend it, at Borrower's sole cost and expense, with legal counsel

13

selected by Borrower and reasonably satisfactory to Lender. Lender may also require Borrower to so defend the matter. The foregoing indemnity shall not terminate upon the repayment of the Loan, but will survive the repayment of the obligations and the termination of the Loan Documents.

In addition to the foregoing, Borrower shall protect, indemnify, defend and hold Lender and any successors to Lender's interests in the Collateral Documents, and any other person or entity who acquires the Collateral Documents or the Project at a foreclosure sale or otherwise through the exercise of Lender's rights and remedies under the Loan Documents, and all directors, officers, employees and agents of all of the aforementioned indemnified parties, harmless from and against any and all actual or potential claims, liabilities, damages (direct or indirect), losses, fines, penalties, judgments, awards, costs and expenses (including, without limitation, reasonable attorneys' fees and costs and expenses of investigation) (collectively, "Expenses") which arise out of or relate in any way to any use, handling, production, transportation, disposal, release or storage of any Hazardous Material in, under or on the Project, whether by Borrower, Project Guarantor, Project Owner, any tenant of the Project or any other person, including, without limitation:

(a)     all foreseeable and all unforeseeable Expenses arising out of:

    (i)     any and all environmental proceedings, whether civil (including actions by private parties), criminal, or administrative proceedings, relating to the Project ("Environmental Proceedings") or the use, generation, storage, discharge or disposal of Hazardous Material by Borrower, the current or any prior owner or operator of the Project or any person on or about the Project;

    (ii)     any residual contamination affecting any natural resource or the environment; or

    (iii)     any exercise by Lender of any of its rights and remedies hereunder; and

(b)     the costs of any required or necessary investigation, assessment, testing, remediation, repair, cleanup, or detoxification of the Project and the preparation of any closure or other required plans.

Borrower's liability to the aforementioned indemnified parties shall arise upon the earlier to occur of (1) discovery of any Hazardous Material on, under or about the Project, or (2) the institution of any Environmental Proceedings, and not upon the realization of loss or damage, and Borrower shall pay to Lender from time to time, immediately upon request, an amount equal to such Expenses, as reasonably determined by Lender. In addition, in the event any Hazardous Material is removed, or caused to be removed from the Project, by Borrower, Lender or any other person, the number assigned by the U.S. Environmental Protection Agency to such Environmental Proceedings or any similar identification shall in no event be in the name of the Lender or identify the Lender as a generator, arranger or other designation.

14

For purposes of this Agreement, "Hazardous Material" shall mean and include gasoline, petroleum, asbestos containing materials, explosives, radioactive materials or any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any law of any Governmental Authority having jurisdiction over the Project or any portion thereof or its use, including: (i) any "hazardous substance" defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9601(14) as may be amended from time to time, or any so-called "superfund" or "superlien" Law, including the judicial interpretation thereof; (ii) any "pollutant or contaminant" as defined in 42 U.S.C.A. § 9601(33); (iii) any material now defined as "hazardous waste" pursuant to 40 C.F.R. Part 260; (iv) any petroleum, including crude oil or any fraction thereof; (v) natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel; (vi) any "hazardous chemical" as defined pursuant to 29 C.F.R. Part 1910; and (vii) any other toxic substance or contaminant that is subject to any other law or other past or present requirement of any Governmental Authority having jurisdiction over the Projects or any portion thereof or its use.

The obligations set forth herein, including, without limitation, Borrower's obligation to pay Expenses hereunder, are collectively referred to as, the "Environmental Obligations". Notwithstanding any term or provision contained herein or in the other Loan Documents, the Environmental Obligations are unconditional. Borrower shall be jointly and severally and fully and personally liable for the Environmental Obligations hereunder, and such liability shall not be limited to the Principal Amount. The Environmental Obligations shall survive the repayment of the other obligations under this Note and any foreclosure, deed-in-lieu of foreclosure or similar proceedings by or through which Lender or any of their affiliates, nominees, successors or assigns or any other person bidding at a foreclosure sale may obtain title to the Collateral Documents, the Project or any portion thereof.

15.    PAYMENT OF EXPENSES.

Borrower shall pay all taxes and assessments and all reasonable expenses, charges, costs and fees provided for in this Agreement or relating to the Loan, including, without limitation, any fees incurred for recording or filing any of the Loan Documents, title insurance premiums and charges, reasonable fees and expenses of Lender's outside counsel, documentation and processing fees, printing, photostatting and duplicating expenses, air freight charges, escrow fees, costs of surveys, premiums of hazard insurance policies and surety bonds and fees for any appraisal and appraisal review, environmental, seismic studies, market or feasibility study required by Lender. Borrower hereby authorizes Lender to make additional loan advances to pay such expenses, charges, costs and fees notwithstanding that Borrower may not have requested an increase in the amount of the Loan. Such disbursement shall be added to the outstanding principal balance of the Note. The authorization hereby granted shall be irrevocable, and no further direction or authorization from Borrower shall be necessary for Lender to make such disbursements. However, the provision of this Section 15 shall not prevent Borrower from paying such expense, charges, costs and fees from its own funds. All such expenses, charges, costs and fees shall be Borrower's obligation.

If this Note is not paid when due or if any Event of Default occurs, Borrower promises to pay all costs of enforcement and collection and preparation therefor, including but not limited to, reasonable attorneys' fees, whether or not any action or proceeding is brought to enforce the provisions of this Note (including but not limited to all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)).

16.    SEVERABILITY.

If any provision of this Note is unenforceable, the enforceability of the other provisions will not be affected and they will remain in full force and effect.

17.    INTEREST RATE LIMITATION.

Borrower hereby agrees to pay an effective rate of interest that is the sum of the interest rate provided for in this Note, together with any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan, including but not limited to any fees to be paid by Borrower pursuant to the provisions of the Loan Documents. Lender and Borrower agree that none of the terms and provisions contained in this Note or in any of the other Loan Documents is to be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by applicable laws. ALL AGREEMENTS BETWEEN BORROWER AND LENDER, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER WRITTEN OR ORAL, ARE HEREBY LIMITED SO THAT UNDER NO CIRCUMSTANCE, WHETHER BY REASON OF ACCELERATION OF THE MATURITY OF ANY INDEBTEDNESS GOVERNED HEREBY OR OTHERWISE, WILL THE INTEREST CONTRACTED FOR, CHARGED OR RECEIVED BY LENDER EXCEED THE MAXIMUM AMOUNT PERMISSIBLE UNDER APPLICABLE LAW. IF, UNDER ANY CIRCUMSTANCE WHATSOEVER, INTEREST WOULD OTHERWISE BE PAYABLE TO LENDER IN EXCESS OF THE MAXIMUM LAWFUL AMOUNT, THE INTEREST PAYABLE TO LENDER WILL BE REDUCED TO THE MAXIMUM AMOUNT PERMITTED UNDER APPLICABLE LAW; AND, IF UNDER ANY CIRCUMSTANCE LENDER EVER RECEIVES ANYTHING OF VALUE DEEMED INTEREST BY APPLICABLE LAW IN EXCESS OF THE MAXIMUM LAWFUL AMOUNT, AN AMOUNT EQUAL TO ANY EXCESSIVE INTEREST WILL BE APPLIED FIRST TO PAYMENT OF SUMS OTHER THAN PRINCIPAL AND INTEREST PAYABLE BY BORROWER UNDER THIS NOTE OR THE OTHER LOAN DOCUMENTS, THEN TO REDUCE THE PRINCIPAL OF THE LOAN AND NOT TO PAY INTEREST, AND THEN TO THE EXTENT THAT SUCH EXCESSIVE INTEREST EXCEEDS THE UNPAID PRINCIPAL BALANCE OF THE LOAN, THE EXCESS WILL BE REFUNDED TO BORROWER. ALL INTEREST PAID OR AGREED TO BE PAID TO LENDER WILL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, BE AMORTIZED, PRORATED, ALLOCATED AND SPREAD THROUGHOUT THE FULL PERIOD UNTIL PAYMENT IN FULL OF THE PRINCIPAL OF THE

LOAN (INCLUDING THE PERIOD OF ANY RENEWAL OR EXTENSION THEREOF) SO THAT INTEREST THEREON FOR SUCH FULL PERIOD DOES NOT EXCEED THE MAXIMUM AMOUNT PERMITTED BY APPLICABLE LAW. THIS SECTION CONTROLS ALL AGREEMENTS BETWEEN BORROWER AND LENDER.

18.    NUMBER AND GENDER.

In this Note the singular includes the plural and the masculine includes the feminine and neuter genders, and vice versa.

19.    HEADINGS; SECTION REFERENCES.

Headings at the beginning of each numbered section of this Note are intended solely for convenience and are not part of this Note. Section references appearing in this Note refer to the Sections of this Note unless otherwise stated.

20.    APPLICABLE LAW.

This Note and the rights and obligations of the parties under this Note are governed by and are to be construed in accordance with the laws of the State of New York (without giving effect to principles of conflicts of law).

21.    INTEGRATION.

The Loan Documents contain the complete understanding and agreement of the holder hereof and Borrower and supersede all prior representations, warranties, agreements, arrangements, understandings and negotiations between the parties to the Loan Documents with respect to the Loan.

22.    BINDING EFFECT.

The Loan Documents are binding upon, and inure to the benefit of, the holder of this Note, Borrower and their respective successors and permitted assigns. Borrower may not assign or delegate its obligations under this Note or any of the other Loan Documents.

23.    TIME OF THE ESSENCE.

Time is of the essence with regard to each provision of the Loan Documents as to which time is a factor.

24.    SURVIVAL.

The representations, warranties and covenants of Borrower in the Loan Documents will survive the execution and delivery of the Loan Documents and the making of the Loan.

17

25. WAIVER OF JURY TRIAL; CONSENT TO VENUE.

BORROWER AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS NOTE, ANY RELATED INSTRUMENT OR AGREEMENT, ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS NOTE, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY OF THEM. NEITHER BORROWER NOR LENDER MAY SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IF A DISPUTE ARISES UNDER THIS NOTE, THE PARTIES HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A STATE OR FEDERAL COURT IN NEW YORK COUNTY, NEW YORK. THE PARTIES HEREBY WAIVE ANY OBJECTION AS TO THE VENUE OF ANY SUCH ACTION BROUGHT IN ANY SUCH COURT OR THAT ANY SUCH COURT IS AN INCONVENIENT FORUM. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER BORROWER OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY EACH OF THEM.

26. NOTICES.

All notices, consents and other communications given under this Agreement shall be in writing and shall be deemed to have been duly given (a) when delivered by hand or by FEDEX or a similar overnight courier to, (b) three days after being deposited in any United States post office enclosed in an airmail postage prepaid registered or certified envelope addressed to, or (c) when successfully transmitted by facsimile (with a confirming copy of such communication to be sent as provided in (a) or (b) above) to, the party for whom intended, at the address or facsimile number for such party set forth below, or to such other address or facsimile number as may be furnished by such party by notice in the manner provided herein; provided, however, that any notice of change of address or facsimile number shall be effective only on receipt.

If to Lender at 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez (fax 305-4434282)

If to Borrower c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235 Attention: Edward H. Okun (fax 804-419-2190)

[Remainder of page intentionally left blank. Signature page follows.]

IN WITNESS WHEREOF, Borrower has executed and delivered this Note as of the day, month and year first-above written.

IPofA 5201 Lender, LLC

By: IPofA Fund Manager, LLC, a Virginia limited liability company, its Manager

By: _Lara D. Coleman_

Name: _Lara Coleman_

Its: _Manager_

## EXHIBIT A

1.  The Promissory Note dated February 2, 2005 (the "Collateral Promissory Note") in the original principal amount of $7,100,000 payable by IPofA WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley").

2.  The Mortgage and Security Agreement dated February 2, 2005 made by Obligor and IpofA West 86th Street LeaseCo, LLC to Morgan Stanley (the "Collateral Mortgage").

3.  Assignment of Leases dated December 2, 2005 from the entities listed on Exhibit B to Morgan Stanley

4.  Mortgagee Title Insurance Policy issued to Morgan Stanley by Chicago Title Insurance Company dated February 8, 2005 as policy no. 000363054

## EXHIBIT B

IPofA WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC and IPofA WEST 86TH STREET LEASECO, LLC.

STATE OF Virginia )
COUNTY OF Chesterfield } ss.:

On the 7th day of December, 2006, before me, the undersigned, personally appeared Lara B. Coleman , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

N. Hope Elkins
County of Residence:
New Kent

N. Hope Elkins
Notary Public
My Commission Expires:
4/30/2007

22

23

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**

## GUARANTY ($2,500,000)

This Guaranty ("**Guaranty**") is made and entered into effective the 12th day of December, 2006, by **EDWARD H. OKUN**, a Florida resident ("Guarantor"), for the benefit of **CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, A FLORIDA QUALIFIED RETIREMENT PLAN TRUST** ("Lender").

### BACKGROUND

A.     This Guaranty is being given in connection with the Secured Promissory Note of even date herewith made by IPofA 5201 Lender, LLC, as maker (the "Borrower"), in favor of Lender (as amended from time to time, the "Note") evidencing that certain loan in the principal amount of $2,500,000 from Lender to Borrower (the "Loan"). Guarantor will derive substantial financial benefit from the making of the Loan.

B.     Capitalized terms used in this Guaranty and not otherwise specifically defined shall have the same meaning in this Guaranty as in the Note.

FOR VALUE RECEIVED, and to induce Lender to extend credit to Borrower as provided for in the Note and the other Loan Documents, Guarantor, having an address as indicated below his name on the signature page of this Guaranty, hereby unconditionally agrees as follows:

1.     _Guaranty._ Guarantor, as a primary party and not merely as a surety, jointly and severally, unconditionally and irrevocably guarantees the following (collectively, the "Guaranteed Obligations"):

    1.1     The full, prompt and complete payment of all of Borrower' obligations under the Note, including but not limited to the Environmental Obligations;

    1.2     The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Borrower and/or Guarantor under the Note and/or the other Loan Documents.

    1.3     The full, prompt and complete reimbursement of all costs, losses, expenses and damages exclusive of consequential damages (including reasonable attorneys' fees) sustained or incurred by Lender in enforcing the provisions of the Loan Documents and/or this Guaranty, including costs of collection described in Section 16.

Guarantor hereby acknowledges and agrees that Lender may at its option proceed directly and at once, without further notice, against Guarantor hereunder without proceeding against Borrower, or any other person or other collateral for the obligations secured by this Guaranty. Any sums payable by Guarantor under this Guaranty shall bear interest at the Default Interest Rate from the date of demand until the date paid.

This Guaranty shall survive and continue in full force and effect beyond and after the payment, performance and satisfaction of the Guaranteed Obligations in the event Lender is required to disgorge or return any payment or property received as a result of any laws pertaining to preferences, fraudulent transfers or fraudulent conveyances.

This Guaranty is a guaranty of payment and performance and not of collection.

2.    Waivers.  Guarantor hereby waives and relinquishes to the fullest extent now or hereafter not prohibited by applicable law:

2.1    All suretyship defenses and defenses in the nature thereof;

2.2    Any right or claim of right to cause a marshalling of the assets of Borrower or of the collateral or, except as otherwise expressly provided herein, to cause Lender to proceed against any of the other security for the Guaranteed Obligations before proceeding under this Guaranty against Guarantor;

2.3    Until the payment and satisfaction of the Guaranteed Obligations, any rights against Borrower in respect of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to indemnitors, guarantors, sureties or accommodation parties.  Provided, however, unless Lender otherwise expressly agrees in writing, such waiver by Guarantor shall not be effective to the extent that by virtue thereof Guarantor's liability under this Guaranty or under any other Loan Document is rendered invalid, voidable, or unenforceable under any applicable state or federal law dealing with the recovery or avoidance of so-called preferences or fraudulent transfers or conveyances or otherwise;

2.4    Notice of the acceptance hereof and, except for notices and demands specifically required under this Guaranty, presentment, demand for payment, protest, notice of protest, or any and all notice of nonpayment, nonperformance, nonobservance or default, or other proof or notice of demand whereby to charge Guarantor under this Guaranty; and

2.5    The pleading of any statute of limitations as a defense to Guarantor's Obligations under this Guaranty.

Any and all payments made by Borrower, or any person other than Guarantor, and any and all payments, proceeds, credits or other sums received by Lender on account of the Loan Documents whether arising from the disposition of collateral, or otherwise, shall be applied first, without modifying, releasing or reducing the Guaranteed Obligations, to reduce that portion of the obligations not guaranteed by Guarantors under this Guaranty, and only thereafter to the Guaranteed Obligations.

3.    Cumulative Rights.  Lender's rights under this Guaranty shall be in addition to and not in limitation of all of the rights and remedies of Lender under the other Loan Documents. All rights and remedies of Lender shall be cumulative and may be exercised in such manner and combination as Lender may determine.  Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty covering all or any part of the

Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party.

4.    No Impairment. The liability of Guarantor under this Guaranty shall in no way be limited or impaired by any amendment or modification of the provisions of the other Loan Documents to or with Lender by Borrower or any person who succeeds Borrower, but no such amendment or modification shall operate so as to increase the scope of any Guarantor's liability under this Guaranty unless such amendment or modification is assented to by Guarantor. In addition, the liability of Guarantor under this Guaranty and the other Loan Documents shall in no way be limited or impaired by:

4.1    Any extensions of time for performance required by any of the Loan Documents;

4.2    Any sale or assignment of the Loan or any sale, assignment, transfer or exchange of all or part of the property of Borrower;

4.3    Any exculpatory, or nonrecourse, or limited recourse provision in any of the Loan Documents limiting Lender's recourse to the collateral encumbered by the Loan Documents or to any other property or limiting Lender's rights to a deficiency judgment against any person or entity, if any;

4.4    The accuracy or inaccuracy of any of the representations or warranties made by or on behalf of Borrower, any principal or agent of Borrower or Guarantor, under any Loan Document or otherwise;

4.5    The release of Borrower or any other person or entity, from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act, or otherwise;

4.6    The filing of any bankruptcy or reorganization proceeding by or against either Borrower or any subsequent owner of the property of Borrower;

4.7    The release or substitution in whole or part of any collateral or security for the Guaranteed Obligations;

4.8    Lender's failure to file any UCC financing statements, or Lender's improper filing thereof, or Lender's failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Guaranteed Obligations;

4.9    The release of any other party now or hereafter liable upon or in respect of this Guaranty or any of the other Loan Documents; or

4.10    The invalidity or unenforceability of all or any portion of any of the Loan Documents as to Borrower or any other person or entity.

Any of the foregoing may be accomplished with or without notice to Borrower or Guarantor and with or without consideration.

3

5.    <u>Delay Not Waiver</u>.  No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right.  No waiver by Lender in any instance shall constitute a waiver in any other instance.

6.    <u>Warranties and Representations</u>.  Guarantor warrants and represents to Lender for the express purpose of inducing Lender to accept this Guaranty, to otherwise complete the transactions contemplated by the Loan Documents, and to induce Lender to make the Loan, that, as to such Guarantor:

6.1    <u>Financial Information</u>.  All financial information heretofore furnished to Lender by Guarantor does, and all financial information hereafter furnished to Lender by Guarantor will, to the best of Guarantor's knowledge and belief, set forth a reasonably accurate statement of the information contained therein as of the date thereof.

6.2    <u>Bankruptcy</u>.  Guarantor shall not permit Borrower to file a voluntary petition in bankruptcy without the consent of Lender and shall use its best efforts to contest any involuntary petition filed against Borrower.

6.3    <u>No Violation</u>.  The payment and performance by Guarantor of the Guaranteed Obligations do not and shall not constitute a violation of any law, order, regulation, or any material contract or agreement to which Guarantor is a party or by which Guarantor or Guarantor's property may be bound.

6.4    <u>No Litigation</u>.  There is no litigation now pending or, to the best of Guarantor's knowledge threatened in writing, against Guarantor which, if adversely decided would materially impair the ability of Guarantor to pay and perform the Guaranteed Obligations.

6.5    <u>Valid and Binding</u>. This Guaranty constitutes Guarantor's legal, valid and binding obligation in accordance with the terms thereof, subject to bankruptcy, insolvency and similar laws of general application affecting the rights and remedies of creditors and, with respect to the availability of remedies of specific enforcement, subject to the discretion of the court before which proceedings therefor may be brought.

6.6    <u>Solvency</u>.  Guarantor is solvent and is not rendered insolvent by the obligations undertaken in this Guaranty.  Guarantor is not contemplating either the filing of a petition or proceeding under any state or federal bankruptcy or insolvency or reorganization laws or the liquidating of all or a major portion of Guarantor's property, and Guarantor has no knowledge of any such petition or proceeding being filed against Guarantor.

6.7    <u>Material Economic Benefit</u>.  The granting of the Loan to Borrower will constitute a material economic benefit to Guarantor.

7.    <u>Notices</u>.  Any notice or other communication in connection with this Guaranty shall be in writing and (i) deposited in the United States mail, postage prepaid by registered or certified mail, or (ii) hand delivered by any commercially recognized courier service or overnight delivery service such as Federal Express, or (iii) sent by facsimile transmission if a FAX number is designated below, provided a copy is also sent by first-class mail, addressed as follows:

4

If to Guarantor:

To the address set forth below its signature on the signature page(s) of this Guaranty.

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

All periods of notice shall be measured from the deemed date of delivery. A notice shall be deemed to have been given, delivered and received upon the earliest of: (i) if sent by such certified or registered mail, on the third Business Day following the date of post-mark, or (ii) if hand delivered by such courier or overnight delivery service, when so delivered or tendered for delivery during customary business hours on a Business Day at the specified address, or (iii) if facsimile transmission is a permitted means of giving notice, upon receipt as evidenced by confirmation.

8.      No Oral Change. No provision of this Guaranty may be changed, waived, discharged, or terminated orally (in person or by telephone) or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge or termination is sought.

9.      Parties Bound; Benefit. This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators and personal representatives, successors and assigns and shall be for the benefit of Lender, and any subsequent holder of any Lender's interest in the Loan and any owner of a participation interest therein. In the event the interest of Lender under the Loan Documents is sold or transferred, then the liability of Guarantor to such Lender shall then be in favor of both such Lender and each subsequent holder of such Lender's interest therein, to the extent of their respective interests.

10.     Partial Invalidity. Each of the provisions of this Guaranty shall be enforceable against Guarantor to the fullest extent now or hereafter not prohibited by applicable law. The invalidity or unenforceability of any provision of this Guaranty shall not limit the validity or enforceability of each other provision of this Guaranty.

11.     Governing Law. This Guaranty and the rights and obligations of the parties under this Guaranty shall in all respects be governed by and construed and enforced in accordance with the internal laws of the State of New York, without giving effect to principles of conflicts of law. Lender may enforce its rights under this Guaranty and under the other Loan Documents, including, but not limited to, its rights to sue Guarantor or to collect any outstanding indebtedness in accordance with applicable law. It is understood and agreed that this Guaranty was drafted, negotiated and delivered in the State of New York which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by the Loan Documents.

12.     CONSENT TO JURISDICTION. GUARANTOR AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING

OUT OF THIS GUARANTY OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER. GUARANTOR AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IN THE EVENT OF A DISPUTE UNDER THIS GUARANTY, GUARANTOR AND LENDER HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN NEW YORK COUNTY, NEW YORK. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY GUARANTOR OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY SAME.

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY AT ANY TIME AFTER THE SAME BECOMES DUE, WHETHER BY ACCELERATION OR OTHERWISE, IN THE SUPREME COURT OF NEW YORK COUNTY, NEW YORK OR ANY OTHER COURT OF RECORD IN OR OF THE STATE OF NEW YORK OR ELSEWHERE, AND TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST THE GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF THE LENDER AGAINST GUARANTOR FOR THE AMOUNT THAT MAY BE DUE, WITH INTEREST AT THE RATE HEREIN MENTIONED AND COST OF SUIT, AND TO WAIVE AND RELEASE ALL ERRORS IN SUCH PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR AND RIGHTS OF APPEAL FROM THE JUDGMENT RENDERED. THE FOREGOING WARRANT OF ATTORNEY SHALL SURVIVE ANY JUDGMENT, AND, IF ANY JUDGMENT BE VACATED FOR ANY REASON, THE LENDER NEVERTHELESS MAY THEREAFTER USE THE FOREGOING WARRANTS OF ATTORNEY TO OBTAIN AN ADDITIONAL JUDGMENT OR JUDGMENTS AGAINST THE UNDERSIGNED.

13.    Financial Statements. Guarantor shall furnish or cause to be furnished to Lender when due all of the information with respect to the Guarantor required pursuant to Section 9.c. of the Note.

14.    Covenant of Guarantor. Guarantor shall pay, perform, observe and comply with all of the obligations, terms, covenants and conditions set forth in this Guaranty.

15.    Subordination. Guarantor hereby subordinates any and all claims which it now has, or in the future may acquire, as a creditor of Borrower, to the prior payment and satisfaction in full of this Guaranty. If, prior to the payment and satisfaction of this Guaranty, Guarantor would, without reference to the provisions of this Section 15, be entitled to receive any payment on account of any claim of Guarantor against the Borrower, all such payments shall be made instead to Lender until the Guaranteed Obligations have been paid and satisfied in full, and each Guarantor hereby so directs. If any Guarantor receives any payment on account of any claim of each Guarantor against the Borrower, such Guarantor shall immediately pay the same over to Lender to be applied to the payment or satisfaction of the Guaranteed Obligations, if any.

6

Notwithstanding the foregoing, unless an Event of Default has occurred, and any such Event of Default has not been either waived or acknowledged to have been cured in writing by Lender, such Guarantor may receive and retain payments from the Borrower.

16. **Legal Fees, Costs and Expenses.** Guarantor further agrees to pay upon demand all costs and expenses reasonably incurred by Lender or its successors or assigns in connection with enforcing any of the rights or remedies of Lender, or such successors or assigns, under or with respect to this Guaranty including, but not limited to, reasonable attorneys' fees and the out-of-pocket expenses and disbursements of such attorneys. Any such amounts which are not paid within 15 days of demand therefor shall bear interest at the Default Interest Rate from the date of demand until paid.

17. **Setoff, etc.** All accounts, deposits, securities, instruments and other property of Guarantor in the possession of Lender or any of its affiliates, whether for safekeeping or otherwise, may be applied or set-off against the Guaranteed Obligations, whether or not other collateral is then available to Lender.

18. **Time of Essence.** Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations under this Guaranty.

19. **Entire Agreement.** This Guaranty and the Pledge Agreement embody the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations.

20. **Incorporation by Reference.** The Preamble and the Recitals to this Guaranty are incorporated into this Guaranty as if the same were fully set forth in this Guaranty.

[Remainder of page intentionally left blank. Signature page follows.]

WITNESS the execution and delivery of this Guaranty as an instrument under seal as of the _12_ day of December, 2006.

---

WARNING — BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

---

GUARANTOR:

EDWARD H. OKUN

Address: _3945 S. Hibucus Dr._
_Miami Beach Fl._
_33139._
FAX: 804-419-2190

STATE OF _Florida_ )
COUNTY OF _Miami-Dade_ ss.:

On the _7_ day of _December_ 2006, before me, the undersigned, personally

appeared _Edward Hugh Okun_, personally known to me or proved to me on the

basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their

capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the

person upon behalf of which the individual(s) acted, executed the instrument.

_Mario Chavarri_

Notary Public

COUNTY OF RESIDENCE: MIAMI-DADE

Mario Chavani
MY COMMISSION # DD177741 EXPIRES
April 22, 2007
BONDED THRU TROY FAIN INSURANCE, INC

2

<u>KEY PRINCIPAL GUARANTY</u>

This Key Principal Guaranty ("**Guaranty**") is made and entered into effective the 12th day of December, 2006, by INVESTMENT PROPERTIES OF AMERICA, LLC, a ~~Delaware~~ *Virginia* limited liability company ("**Guarantor**"), for the benefit of CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Florida Qualified Retirement Plan Trust ("**Lender**").

## BACKGROUND

A.      This Guaranty is being given in connection with the Secured Promissory Note of even date herewith made by IPofA 5201 Lender, LLC, as maker (the "**Borrower**"), in favor of Lender (as amended from time to time, the "**Note**") evidencing that certain loan in the principal amount of $2,500,000 from Lender to Borrower (the "**Loan**"). Guarantor will derive substantial financial benefit from the making of the Loan.

B.      Capitalized terms used in this Guaranty and not otherwise specifically defined shall have the same meaning in this Guaranty as in the Note.

FOR VALUE RECEIVED,  and to induce Lender to extend credit to Borrower as provided for in the Note and the other Loan Documents, Guarantor, having an address as indicated below its name on the signature page of this Guaranty, hereby unconditionally agrees as follows:

1.      <u>Guaranty</u>. Guarantor, as a primary party and not merely as a surety, jointly and severally, unconditionally and irrevocably guarantees the following (collectively, the "**Guaranteed Obligations**"):

1.1     The full, prompt and complete payment of all of Borrower's obligations under the Note, including but not limited to the Environmental Obligations;

1.2     The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Borrower and/or Guarantor under the Note and/or the other Loan Documents.

1.3     The full, prompt and complete reimbursement of all costs, losses, expenses and damages exclusive of consequential damages (including reasonable attorneys' fees) sustained or incurred by Lender in enforcing the provisions of the Loan Documents and/or this Guaranty, including costs of collection described in Section 16.

Guarantor's obligations under this Guaranty are secured pursuant to the Membership Interest Pledge Agreement dated as of even date herewith and made by Guarantor for the benefit of Lender as the same may be amended from time to time (the "**Pledge Agreement**"). Guarantor hereby acknowledges and agrees that Lender may at its option proceed directly and at once, without further notice, against Guarantor hereunder and under the Pledge Agreement, without proceeding against Borrower, or any other person or other collateral for the obligations secured

by this Guaranty. Any sums payable by Guarantor under this Guaranty shall bear interest at the Default Interest Rate from the date of demand until the date paid.

This Guaranty shall survive and continue in full force and effect beyond and after the payment, performance and satisfaction of the Guaranteed Obligations in the event Lender is required to disgorge or return any payment or property received as a result of any laws pertaining to preferences, fraudulent transfers or fraudulent conveyances.

This Guaranty is a guaranty of payment and performance and not of collection.

2.    <u>Waivers</u>. Guarantor hereby waives and relinquishes to the fullest extent now or hereafter not prohibited by applicable law:

2.1    All suretyship defenses and defenses in the nature thereof;

2.2    Any right or claim of right to cause a marshalling of the assets of Borrower or of the collateral or, except as otherwise expressly provided herein, to cause Lender to proceed against any of the other security for the Guaranteed Obligations before proceeding under this Guaranty against Guarantor;

2.3    Until the payment and satisfaction of the Guaranteed Obligations, any rights against Borrower in respect of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to indemnitors, guarantors, sureties or accommodation parties. <u>Provided, however</u>, unless Lender otherwise expressly agrees in writing, such waiver by Guarantor shall not be effective to the extent that by virtue thereof Guarantor's liability under this Guaranty or under any other Loan Document is rendered invalid, voidable, or unenforceable under any applicable state or federal law dealing with the recovery or avoidance of so-called preferences or fraudulent transfers or conveyances or otherwise;

2.4    Notice of the acceptance hereof and, except for notices and demands specifically required under this Guaranty, presentment, demand for payment, protest, notice of protest, or any and all notice of nonpayment, nonperformance, nonobservance or default, or other proof or notice of demand whereby to charge Guarantor under this Guaranty; and

2.5    The pleading of any statute of limitations as a defense to Guarantor's Obligations under this Guaranty.

Any and all payments made by Borrower, or any person other than Guarantor, and any and all payments, proceeds, credits or other sums received by Lender on account of the Loan Documents whether arising from the disposition of collateral, or otherwise, shall be applied first, without modifying, releasing or reducing the Guaranteed Obligations, to reduce that portion of the obligations not guaranteed by Guarantors under this Guaranty, and only thereafter to the Guaranteed Obligations.

3.    <u>Cumulative Rights</u>. Lender's rights under this Guaranty shall be in addition to and not in limitation of all of the rights and remedies of Lender under the other Loan Documents. All rights and remedies of Lender shall be cumulative and may be exercised in such manner and

combination as Lender may determine. Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party.

4.    No Impairment.  The liability of Guarantor under this Guaranty shall in no way be limited or impaired by any amendment or modification of the provisions of the other Loan Documents to or with Lender by Borrower or any person who succeeds Borrower, but no such amendment or modification shall operate so as to increase the scope of any Guarantor's liability under this Guaranty unless such amendment or modification is assented to by Guarantor.  In addition, the liability of Guarantor under this Guaranty and the other Loan Documents shall in no way be limited or impaired by:

4.1    Any extensions of time for performance required by any of the Loan Documents;

4.2    Any sale or assignment of the Loan or any sale, assignment, transfer or exchange of all or part of the property of Borrower;

4.3    Any exculpatory, or nonrecourse, or limited recourse provision in any of the Loan Documents limiting Lender's recourse to the collateral encumbered by the Loan Documents or to any other property or limiting Lender's rights to a deficiency judgment against any person or entity, if any;

4.4    The accuracy or inaccuracy of any of the representations or warranties made by or on behalf of Borrower, any principal or agent of Borrower or Guarantor, under any Loan Document or otherwise;

4.5    The release of Borrower or any other person or entity, from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act, or otherwise;

4.6    The filing of any bankruptcy or reorganization proceeding by or against either Borrower or any subsequent owner of the property of Borrower;

4.7    The release or substitution in whole or part of any collateral or security for the Guaranteed Obligations;

4.8    Lender's failure to file any UCC financing statements, or Lender's improper filing thereof, or Lender's failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Guaranteed Obligations;

4.9    The release of any other party now or hereafter liable upon or in respect of this Guaranty or any of the other Loan Documents; or

4.10    The invalidity or unenforceability of all or any portion of any of the Loan Documents as to Borrower or any other person or entity.

3

Any of the foregoing may be accomplished with or without notice to Borrower or Guarantor and with or without consideration.

5.    Delay Not Waiver.  No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right.  No waiver by Lender in any instance shall constitute a waiver in any other instance.

6.    Warranties and Representations.  Guarantor warrants and represents to Lender for the express purpose of inducing Lender to accept this Guaranty, to otherwise complete the transactions contemplated by the Loan Documents, and to induce Lender to make the Loan, that, as to such Guarantor:

6.1    Financial Information.  All financial information heretofore furnished to Lender by Guarantor does, and all financial information hereafter furnished to Lender by Guarantor will, to the best of Guarantor's knowledge and belief, set forth a reasonably accurate statement of the information contained therein as of the date thereof.

6.2    Bankruptcy.  Guarantor shall not permit either Borrower to file a voluntary petition in bankruptcy without the consent of Lender and shall use its best efforts to contest any involuntary petition filed against either Borrower.

6.3    No Violation.  The payment and performance by Guarantor of the Guaranteed Obligations do not and shall not constitute a violation of any law, order, regulation, or any material contract or agreement to which Guarantor is a party or by which Guarantor or Guarantor's property may be bound.

6.4    No Litigation.  There is no litigation now pending or, to the best of Guarantor's knowledge threatened in writing, against Guarantor which, if adversely decided would materially impair the ability of Guarantor to pay and perform the Guaranteed Obligations.

6.5    Valid and Binding.  This Guaranty constitutes Guarantor's legal, valid and binding obligation in accordance with the terms thereof, subject to bankruptcy, insolvency and similar laws of general application affecting the rights and remedies of creditors and, with respect to the availability of remedies of specific enforcement, subject to the discretion of the court before which proceedings therefor may be brought.

6.6    Solvency.  Guarantor is solvent and is not rendered insolvent by the obligations undertaken in this Guaranty.  Guarantor is not contemplating either the filing of a petition or proceeding under any state or federal bankruptcy or insolvency or reorganization laws or the liquidating of all or a major portion of Guarantor's property, and Guarantor has no knowledge of any such petition or proceeding being filed against Guarantor.

6.7    Material Economic Benefit.  The granting of the Loan to Borrower will constitute a material economic benefit to Guarantor.

7.    Notices.  Any notice or other communication in connection with this Guaranty shall be in writing and (i) deposited in the United States mail, postage prepaid by registered or

4

certified mail, or (ii) hand delivered by any commercially recognized courier service or overnight delivery service such as Federal Express, or (iii) sent by facsimile transmission if a FAX number is designated below, provided a copy is also sent by first-class mail, addressed as follows:

If to Guarantor:

To the address set forth below its signature on the signature page(s) of this Guaranty.

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

All periods of notice shall be measured from the deemed date of delivery. A notice shall be deemed to have been given, delivered and received upon the earliest of: (i) if sent by such certified or registered mail, on the third Business Day following the date of post-mark, or (ii) if hand delivered by such courier or overnight delivery service, when so delivered or tendered for delivery during customary business hours on a Business Day at the specified address, or (iii) if facsimile transmission is a permitted means of giving notice, upon receipt as evidenced by confirmation.

8.    No Oral Change.  No provision of this Guaranty may be changed, waived, discharged, or terminated orally (in person or by telephone) or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge or termination is sought.

9.    Parties Bound; Benefit.  This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators and personal representatives, successors and assigns and shall be for the benefit of Lender, and any subsequent holder of any Lender's interest in the Loan and any owner of a participation interest therein. In the event the interest of Lender under the Loan Documents is sold or transferred, then the liability of Guarantor to such Lender shall then be in favor of both such Lender and each subsequent holder of such Lender's interest therein, to the extent of their respective interests.

10.    Partial Invalidity.  Each of the provisions of this Guaranty shall be enforceable against Guarantor to the fullest extent now or hereafter not prohibited by applicable law.  The invalidity or unenforceability of any provision of this Guaranty shall not limit the validity or enforceability of each other provision of this Guaranty.

11.    Governing Law.  This Guaranty and the rights and obligations of the parties under this Guaranty shall in all respects be governed and construed and enforced in accordance with the internal laws of the State of New York, without giving effect to principles of conflicts of law. Lender may enforce its rights under this Guaranty and under the other Loan Documents, including, but not limited to, its rights to sue Guarantor or to collect any outstanding indebtedness in accordance with applicable law. It is understood and agreed that this Guaranty was drafted, negotiated and delivered in the State of New York which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by the Loan Documents.

12.    CONSENT TO JURISDICTION. GUARANTOR AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER. GUARANTOR AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IN THE EVENT OF A DISPUTE UNDER THIS GUARANTY, GUARANTOR AND LENDER HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN NEW YORK COUNTY, NEW YORK. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY GUARANTOR OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY SAME.

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY AT ANY TIME AFTER THE SAME BECOMES DUE, WHETHER BY ACCELERATION OR OTHERWISE, IN THE SUPREME COURT OF NEW YORK COUNTY, NEW YORK OR ANY OTHER COURT OF RECORD IN OR OF THE STATE OF NEW YORK OR ELSEWHERE, AND TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST THE GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF THE LENDER AGAINST GUARANTOR FOR THE AMOUNT THAT MAY BE DUE, WITH INTEREST AT THE RATE HEREIN MENTIONED AND COST OF SUIT, AND TO WAIVE AND RELEASE ALL ERRORS IN SUCH PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR AND RIGHTS OF APPEAL FROM THE JUDGMENT RENDERED. THE FOREGOING WARRANT OF ATTORNEY SHALL SURVIVE ANY JUDGMENT, AND, IF ANY JUDGMENT BE VACATED FOR ANY REASON, THE LENDER NEVERTHELESS MAY THEREAFTER USE THE FOREGOING WARRANTS OF ATTORNEY TO OBTAIN AN ADDITIONAL JUDGMENT OR JUDGMENTS AGAINST THE UNDERSIGNED.

13.    Financial Statements. Guarantor shall furnish or cause to be furnished to Lender when due all of the information with respect to the Guarantor required pursuant to Section 9.c. of the Note.

14.    Covenant of Guarantor. Guarantor shall pay, perform, observe and comply with all of the obligations, terms, covenants and conditions set forth in this Guaranty.

15.    Subordination. Guarantor hereby subordinates any and all claims which it now has, or in the future may acquire, as a creditor of Borrower, to the prior payment and satisfaction in full of this Guaranty. If, prior to the payment and satisfaction of this Guaranty, Guarantor would, without reference to the provisions of this Section 15, be entitled to receive any payment on account of any claim of Guarantor against the Borrower, all such payments shall be made

6

instead to Lender until the Guaranteed Obligations have been paid and satisfied in full, and each Guarantor hereby so directs. If any Guarantor receives any payment on account of any claim of each Guarantor against the Borrower, such Guarantor shall immediately pay the same over to Lender to be applied to the payment or satisfaction of the Guaranteed Obligations, if any. Notwithstanding the foregoing, unless an Event of Default has occurred, and any such Event of Default has not been either waived or acknowledged to have been cured in writing by Lender, such Guarantor may receive and retain payments from the Borrower.

16.    Legal Fees, Costs and Expenses. Guarantor further agrees to pay upon demand all costs and expenses reasonably incurred by Lender or its successors or assigns in connection with enforcing any of the rights or remedies of Lender, or such successors or assigns, under or with respect to this Guaranty including, but not limited to, reasonable attorneys' fees and the out-of-pocket expenses and disbursements of such attorneys. Any such amounts which are not paid within 15 days of demand therefor shall bear interest at the Default Interest Rate from the date of demand until paid.

17.    Setoff, etc. All accounts, deposits, securities, instruments and other property of Guarantor in the possession of Lender or any of its affiliates, whether for safekeeping or otherwise, may be applied or set-off against the Guaranteed Obligations, whether or not other collateral is then available to Lender.

18.    Time of Essence. Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations under this Guaranty.

19.    Entire Agreement. This Guaranty and the Pledge Agreement embody the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations.

20.    Incorporation by Reference. The Preamble and the Recitals to this Guaranty are incorporated into this Guaranty as if the same were fully set forth in this Guaranty.

[Remainder of page intentionally left blank. Signature page follows.]

7

WITNESS the execution and delivery of this Guaranty as an instrument under seal as of the 12th day of December, 2006.

WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

GUARANTOR:

INVESTMENT PROPERTIES OF AMERICA, LLC

By: _Tira D Coleman_
Name: _Tira D Coleman_
Title: _Manager_

Address: _10800 Midlothian Tnpk._
_Suite 309_
_Richmond, VA 23235_
FAX: 804-419-2190

STATE OF _Virginia_ )
COUNTY OF _Chesterfield_ } ss.:

On the _7th_ day of _December_, 2006, before me, the undersigned, personally

appeared _Lara D. Coleman_ , personally known to me or proved to me on the

basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their

capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the

person upon behalf of which the individual(s) acted, executed the instrument.


N. Hope Elkins
County of Residence:
New Kent

_N. Hope Elkins_
Notary Public

My Commission Expires:
4/30/2007

2

## PROJECT GUARANTY

This Project Guaranty ("**Guaranty**") is made and entered into effective the 12th day of December, 2006, by CROSSROADS TRANSPORTATION & LOGISTICS, INC., a Delaware corporation ("**Guarantor**"), for the benefit of CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Florida Qualified Retirement Plan Trust ("**Lender**").

### BACKGROUND

A.      This Guaranty is being given in connection with the Secured Promissory Note of even date herewith made by IPofA 5201 Lender, LLC, as maker (the "**Borrower**"), in favor of Lender (as amended from time to time, the "**Note**") evidencing that certain loan in the principal amount of $2,500,000 from Lender to Borrower (the "**Loan**"). Guarantor will derive substantial financial benefit from the making of the Loan.

B.      Capitalized terms used in this Guaranty and not otherwise specifically defined shall have the same meaning in this Guaranty as in the Note.

FOR VALUE RECEIVED, and to induce Lender to extend credit to Borrower as provided for in the Note and the other Loan Documents, Guarantor, having an address as indicated below its name on the signature page of this Guaranty, hereby unconditionally agrees as follows:

1.      <u>Guaranty</u>.  Guarantor, as a primary party and not merely as a surety, jointly and severally, unconditionally and irrevocably guarantees the following (collectively, the "**Guaranteed Obligations**"):

1.1     The full, prompt and complete payment of all of Borrower's obligations under the Note, including but not limited to the Environmental Obligations;

1.2     The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Borrower and/or Guarantor under the Note and/or the other Loan Documents.

1.3     The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Mr. Edward H. Okun under the "Second Loan" (as defined in the Note).

1.4     The full, prompt and complete reimbursement of all costs, losses, expenses and damages exclusive of consequential damages (including reasonable attorneys' fees) sustained or incurred by Lender in enforcing the provisions of the Loan Documents and/or this Guaranty, including costs of collection described in **Section 16.**

Guarantor's obligations under this Guaranty are secured pursuant to an Assignment of Leases dated as of even date herewith and made by Guarantor for the benefit of Lender as the same may be amended from time to time (the "**Assignment of Leases**"). Guarantor hereby

acknowledges and agrees that Lender may at its option proceed directly and at once, without further notice, against Guarantor hereunder and under the Assignment of Leases, without proceeding against Borrower, or any other person or other collateral for the obligations secured by this Guaranty. Any sums payable by Guarantor under this Guaranty shall bear interest at the Default Interest Rate from the date of demand until the date paid.

This Guaranty shall survive and continue in full force and effect beyond and after the payment, performance and satisfaction of the Guaranteed Obligations in the event Lender is required to disgorge or return any payment or property received as a result of any laws pertaining to preferences, fraudulent transfers or fraudulent conveyances.

This Guaranty is a guaranty of payment and performance and not of collection.

2.    Waivers.  Guarantor hereby waives and relinquishes to the fullest extent now or hereafter not prohibited by applicable law:

2.1    All suretyship defenses and defenses in the nature thereof;

2.2    Any right or claim of right to cause a marshalling of the assets of Borrower or of the collateral or, except as otherwise expressly provided herein, to cause Lender to proceed against any of the other security for the Guaranteed Obligations before proceeding under this Guaranty against Guarantor;

2.3    Until the payment and satisfaction of the Guaranteed Obligations, any rights against Borrower in respect of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to indemnitors, guarantors, sureties or accommodation parties.  Provided, however, unless Lender otherwise expressly agrees in writing, such waiver by Guarantor shall not be effective to the extent that by virtue thereof Guarantor's liability under this Guaranty or under any other Loan Document is rendered invalid, voidable, or unenforceable under any applicable state or federal law dealing with the recovery or avoidance of so-called preferences or fraudulent transfers or conveyances or otherwise;

2.4    Notice of the acceptance hereof and, except for notices and demands specifically required under this Guaranty, presentment, demand for payment, protest, notice of protest, or any and all notice of nonpayment, nonperformance, nonobservance or default, or other proof or notice of demand whereby to charge Guarantor under this Guaranty; and

2.5    The pleading of any statute of limitations as a defense to Guarantor's Obligations under this Guaranty.

Any and all payments made by Borrower, or any person other than Guarantor, and any and all payments, proceeds, credits or other sums received by Lender on account of the Loan Documents whether arising from the disposition of collateral, or otherwise, shall be applied first, without modifying, releasing or reducing the Guaranteed Obligations, to reduce that portion of the obligations not guaranteed by Guarantors under this Guaranty, and only thereafter to the Guaranteed Obligations.

3.    Cumulative Rights.  Lender's rights under this Guaranty shall be in addition to and not in limitation of all of the rights and remedies of Lender under the other Loan Documents. All rights and remedies of Lender shall be cumulative and may be exercised in such manner and combination as Lender may determine.  Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party.

4.    No Impairment.  The liability of Guarantor under this Guaranty shall in no way be limited or impaired by any amendment or modification of the provisions of the other Loan Documents to or with Lender by Borrower or any person who succeeds Borrower, but no such amendment or modification shall operate so as to increase the scope of any Guarantor's liability under this Guaranty unless such amendment or modification is assented to by Guarantor.  In addition, the liability of Guarantor under this Guaranty and the other Loan Documents shall in no way be limited or impaired by:

4.1    Any extensions of time for performance required by any of the Loan Documents;

4.2    Any sale or assignment of the Loan or any sale, assignment, transfer or exchange of all or part of the property of Borrower;

4.3    Any exculpatory, or nonrecourse, or limited recourse provision in any of the Loan Documents limiting Lender's recourse to the collateral encumbered by the Loan Documents or to any other property or limiting Lender's rights to a deficiency judgment against any person or entity, if any;

4.4    The accuracy or inaccuracy of any of the representations or warranties made by or on behalf of Borrower, any principal or agent of Borrower or Guarantor, under any Loan Document or otherwise;

4.5    The release of Borrower or any other person or entity, from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act, or otherwise;

4.6    The filing of any bankruptcy or reorganization proceeding by or against either Borrower or any subsequent owner of the property of Borrower;

4.7    The release or substitution in whole or part of any collateral or security for the Guaranteed Obligations;

4.8    Lender's failure to file any UCC financing statements, or Lender's improper filing thereof, or Lender's failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Guaranteed Obligations;

4.9    The release of any other party now or hereafter liable upon or in respect of this Guaranty or any of the other Loan Documents; or

3

4.10   The invalidity or unenforceability of all or any portion of any of the Loan Documents as to Borrower or any other person or entity.

Any of the foregoing may be accomplished with or without notice to Borrower or Guarantor and with or without consideration.

5.   Delay Not Waiver.   No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right.   No waiver by Lender in any instance shall constitute a waiver in any other instance.

6.   Warranties and Representations.   Guarantor warrants and represents to Lender for the express purpose of inducing Lender to accept this Guaranty, to otherwise complete the transactions contemplated by the Loan Documents, and to induce Lender to make the Loan, that, as to such Guarantor:

6.1   Financial Information.   All financial information heretofore furnished to Lender by Guarantor does, and all financial information hereafter furnished to Lender by Guarantor will, to the best of Guarantor's knowledge and belief, set forth a reasonably accurate statement of the information contained therein as of the date thereof.

6.2   Bankruptcy.   Guarantor shall not permit either Borrower to file a voluntary petition in bankruptcy without the consent of Lender and shall use its best efforts to contest any involuntary petition filed against either Borrower.

6.3   No Violation.   The payment and performance by Guarantor of the Guaranteed Obligations do not and shall not constitute a violation of any law, order, regulation, or any material contract or agreement to which Guarantor is a party or by which Guarantor or Guarantor's property may be bound.

6.4   No Litigation.   There is no litigation now pending or, to the best of Guarantor's knowledge threatened in writing, against Guarantor which, if adversely decided would materially impair the ability of Guarantor to pay and perform the Guaranteed Obligations.

6.5   Valid and Binding.   This Guaranty constitutes Guarantor's legal, valid and binding obligation in accordance with the terms thereof, subject to bankruptcy, insolvency and similar laws of general application affecting the rights and remedies of creditors and, with respect to the availability of remedies of specific enforcement, subject to the discretion of the court before which proceedings therefor may be brought.

6.6   Solvency.   Guarantor is solvent and is not rendered insolvent by the obligations undertaken in this Guaranty.   Guarantor is not contemplating either the filing of a petition or proceeding under any state or federal bankruptcy or insolvency or reorganization laws or the liquidating of all or a major portion of Guarantor's property, and Guarantor has no knowledge of any such petition or proceeding being filed against Guarantor.

6.7   Material Economic Benefit.   The granting of the Loan to Borrower will constitute a material economic benefit to Guarantor.

4

7.    Notices.  Any notice or other communication in connection with this Guaranty shall be in writing and (i) deposited in the United States mail, postage prepaid by registered or certified mail, or (ii) hand delivered by any commercially recognized courier service or overnight delivery service such as Federal Express, or (iii) sent by facsimile transmission if a FAX number is designated below, provided a copy is also sent by first-class mail, addressed as follows:

If to Guarantor: Crossroads Transportation & Logistics, Inc., c/o 10800 Midlothian Turnpike, Suite 300, Richmond, Virginia 23235, Fax: (804) 419-2190

To the address set forth below its signature on the signature page(s) of this Guaranty.

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

All periods of notice shall be measured from the deemed date of delivery.  A notice shall be deemed to have been given, delivered and received upon the earliest of:  (i) if sent by such certified or registered mail, on the third Business Day following the date of post-mark, or (ii) if hand delivered by such courier or overnight delivery service, when so delivered or tendered for delivery during customary business hours on a Business Day at the specified address, or (iii) if facsimile transmission is a permitted means of giving notice, upon receipt as evidenced by confirmation.

8.    No Oral Change.  No provision of this Guaranty may be changed, waived, discharged, or terminated orally (in person or by telephone) or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge or termination is sought.

9.    Parties Bound; Benefit.  This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators and personal representatives, successors and assigns and shall be for the benefit of Lender, and any subsequent holder of any Lender's interest in the Loan and any owner of a participation interest therein.  In the event the interest of Lender under the Loan Documents is sold or transferred, then the liability of Guarantor to such Lender shall then be in favor of both such Lender and each subsequent holder of such Lender's interest therein, to the extent of their respective interests.

10.    Partial Invalidity.  Each of the provisions of this Guaranty shall be enforceable against Guarantor to the fullest extent now or hereafter not prohibited by applicable law.  The invalidity or unenforceability of any provision of this Guaranty shall not limit the validity or enforceability of each other provision of this Guaranty.

11.    Governing Law.  This Guaranty and the rights and obligations of the parties under this Guaranty shall in all respects be governed by and construed and enforced in accordance with the internal laws of the State of Indiana, without giving effect to principles of conflicts of law.  Lender may enforce its rights under this Guaranty and under the other Loan Documents, including, but not limited to, its rights to sue Guarantor or to collect any outstanding indebtedness in accordance with applicable law.  It is understood and agreed that this Guaranty was drafted, negotiated and delivered in the State of Indiana which State the parties agree has a

5

substantial relationship to the parties and to the underlying transactions embodied by the Loan Documents.

12.    CONSENT TO JURISDICTION. GUARANTOR AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER. GUARANTOR AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IN THE EVENT OF A DISPUTE UNDER THIS GUARANTY, GUARANTOR AND LENDER HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN MARION COUNTY, INDIANA. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY GUARANTOR OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY SAME.

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY AT ANY TIME AFTER THE SAME BECOMES DUE, WHETHER BY ACCELERATION OR OTHERWISE, IN ANY COURT OF MARION COUNTY, INDIANA OR ANY OTHER COURT OF RECORD IN OR OF THE STATE OF INDIANA OR ELSEWHERE, AND TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST THE GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF THE LENDER AGAINST GUARANTOR FOR THE AMOUNT THAT MAY BE DUE, WITH INTEREST AT THE RATE HEREIN MENTIONED AND COST OF SUIT, AND TO WAIVE AND RELEASE ALL ERRORS IN SUCH PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR AND RIGHTS OF APPEAL FROM THE JUDGMENT RENDERED.    THE FOREGOING WARRANT OF ATTORNEY SHALL SURVIVE ANY JUDGMENT, AND, IF ANY JUDGMENT BE VACATED FOR ANY REASON, THE LENDER NEVERTHELESS MAY THEREAFTER USE THE FOREGOING WARRANTS OF ATTORNEY TO OBTAIN AN ADDITIONAL JUDGMENT OR JUDGMENTS AGAINST THE UNDERSIGNED.

13.    Financial Statements. Guarantor shall furnish or cause to be furnished to Lender when due all of the information with respect to the Guarantor required pursuant to Section 9.c. of the Note.

14.    Covenant of Guarantor. Guarantor shall pay, perform, observe and comply with all of the obligations, terms, covenants and conditions set forth in this Guaranty.

15.    Subordination. Guarantor hereby subordinates any and all claims which it now has, or in the future may acquire, as a creditor of Borrower, to the prior payment and satisfaction in full of this Guaranty. If, prior to the payment and satisfaction of this Guaranty, Guarantor

6

would, without reference to the provisions of this **Section 15**, be entitled to receive any payment on account of any claim of Guarantor against the Borrower, all such payments shall be made instead to Lender until the Guaranteed Obligations have been paid and satisfied in full, and each Guarantor hereby so directs. If any Guarantor receives any payment on account of any claim of each Guarantor against the Borrower, such Guarantor shall immediately pay the same over to Lender to be applied to the payment or satisfaction of the Guaranteed Obligations, if any. Notwithstanding the foregoing, unless an Event of Default has occurred, and any such Event of Default has not been either waived or acknowledged to have been cured in writing by Lender, such Guarantor may receive and retain payments from the Borrower.

16.     Legal Fees, Costs and Expenses.  Guarantor further agrees to pay upon demand all costs and expenses reasonably incurred by Lender or its successors or assigns in connection with enforcing any of the rights or remedies of Lender, or such successors or assigns, under or with respect to this Guaranty including, but not limited to, reasonable attorneys' fees and the out-of-pocket expenses and disbursements of such attorneys. Any such amounts which are not paid within 15 days of demand therefor shall bear interest at the Default Interest Rate from the date of demand until paid.

17.     Setoff, etc.  All accounts, deposits, securities, instruments and other property of Guarantor in the possession of Lender or any of its affiliates, whether for safekeeping or otherwise, may be applied or set-off against the Guaranteed Obligations, whether or not other collateral is then available to Lender.

18.     Time of Essence.  Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations under this Guaranty.

19.     Entire Agreement.  This Guaranty and the Assignment of Leases embody the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations.

20.     Incorporation by Reference.  The Preamble and the Recitals to this Guaranty are incorporated into this Guaranty as if the same were fully set forth in this Guaranty.

[Remainder of page intentionally left blank. Signature page follows.]

7

WITNESS the execution and delivery of this Guaranty as an instrument under seal as of the 12th day of December, 2006.

---

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

---

GUARANTOR:

CROSSROADS TRANSPORTATION & LOGISTICS, INC.

By: _____

Name: _Edward O. Gun_

Title: _Manager President_

Address:
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235

STATE OF _Florida_ )

COUNTY OF _Miami-Dade_ ) ss.:

    On the _7_ day of _December_ 2006, before me, the undersigned, personally appeared _Edward Hugh Owen_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Marie Chavarri_

Notary Public

COUNTY OF RESIDENCE : MIAMI-DADE

Marie Chavarri
MY COMMISSION # DD175741 EXPIRES
April 22, 2007
BONDED THRU TROY FAIN INSURANCE, INC.

2

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**

## SECURED PROMISSORY NOTE

$3,000,000

New York, New York
December 11th, 2006

1.    FUNDAMENTAL PROVISIONS.

The following terms are used as defined terms in this Secured Promissory Note (as it may be amended, modified, extended and renewed from time to time, the "Note" or "Agreement"):

| | |
|---|---|
| Lender: | Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Plan Trust. |
| Borrower: | Edward H. Okun having an address c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235. |
| Principal Amount: | Three Million and No/100 Dollars ($3,000,000.00). |
| Interest Rate: | (i) The greater of thirteen percent (13%) per annum or five percent (5%) per annum in excess of the Prime Rate (defined below) in effect on the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the Prime Rate so published on the first Business Day (defined below) of each succeeding month for the period commencing on the date hereof through and including the calendar day immediately preceding the first anniversary of the date hereof; (ii) the greater of fifteen percent (15%) per annum or seven percent (7%) per annum in excess of the Prime Rate in effect on the first anniversary of the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the first Business Day of each succeeding month, for the period commencing on the first anniversary of the date hereof through and including the calendar day immediately preceding the second anniversary of the date hereof; and (iii) the greater of seventeen percent (17%) per annum or nine percent (9%) per annum in excess of the Prime Rate in effect on the second anniversary of the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the first Business Day of each succeeding month, for the period commencing on the second anniversary of the date hereof through and including the Maturity Date, except as otherwise provided herein; notwithstanding the foregoing, the Interest Rate shall not exceed twenty-five percent (25%) per annum. |
| Default Interest Rate: | Twenty-five percent (25%). |
| Maturity Date: | December 11, 2009. |

Business Day:
Any day of the year other than Saturdays, Sundays and legal holidays on which Lender is obligated or permitted to be closed.

Governmental Authority:
Any court, government or governmental authority (federal, state, local, foreign).

Guarantors:
Individually and collectively, Simone Condo I, LLC ("Simone I"), a Delaware limited liability company, and Simone Condo II, LLC ("Simone II"), a Delaware limited liability company.

Guaranties:
Those certain Guaranties from Guarantors to Lender dated the date of this Note.

Interest Period:
Each consecutive one calendar month period (the first of which shall commence January, 2007).

Loan:
The loan from Lender to Borrower in the Principal Amount and evidenced by this Note.

Loan Documents:
This Note, the Guaranties, the Mortgages, the Membership Interest Pledge Agreements and such other documents and agreements entered into by Borrower, Guarantors and Lender in connection with the Loan.

Mortgage Condo I
That certain Mortgage and Security Agreement dated the date hereof from Simone I to Lender encumbering "Condo I" (as defined below).

Mortgage Condo II
That certain Mortgage and Security Agreement dated the date hereof from Simone II to Lender encumbering "Condo II" (as defined below).

Mortgage Indiana
That certain First Priority Real Estate Mortgage And Security Agreement (Fixture Filing) dated the date hereof from Borrower to Lender encumbering the "Indiana Property" (as defined below).

Mortgages
Collectively, Mortgage Condo I, Mortgage Condo II and Mortgage Indiana.

Membership Interest Pledge Agreement:
Those certain Membership Interest Pledge Agreements from Borrower to Lender dated the date of this Note.

2

Prime Rate:      The daily average prime rate for corporate loans at large United States money center commercial banks published in The Wall Street Journal. If a prime rate is no longer generally published, or is limited, regulated or administered by a governmental or quasi-governmental body, then Lender shall select a comparable interest rate index that is readily available to Borrower and verifiable by Borrower but is beyond Lender's control.

Project:      The real property and improvements constituting the "Property".

Property:      Collectively, (i) the land and improvements owned by Borrower located at 10548 Coppergate Derive, Carmel, Indiana (the "Indiana Property"), (ii) condominium unit 3404 located at 901 Brickell Boulevard, Miami, Florida owned by Simone I ("Condo I") and (iii) condominium unit 1808 located at 901 Brickell Boulevard, Miami, Florida owned by Simone II ("Condo II").

Security Agreement:      That certain Security Agreement from Borrower to Lender dated the date of this Note.

## 2.     PROMISE TO PAY.

For value received, Borrower promises to pay to the order of Lender, at 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez, or at such other place as Lender may from time to time designate in writing, the Principal Amount, together with accrued interest from the date of disbursement on the unpaid principal balance of this Note at the Interest Rate, as set forth below.

## 3.     INTEREST; PAYMENTS.

(a)      Absent an Event of Default under this Note or under any of the other Loan Documents from the date hereof, interest will accrue on the unpaid principal balance of this Note at the Interest Rate. Interest at the Interest Rate shall be computed on the basis of the actual number of days elapsed over a 360-day year.

(b)      All payments of principal and interest due under this Note must be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts Borrower shall pay, and (ii) without any other set off. Borrower shall pay such amounts as are necessary to ensure that the gross amount of the principal and interest received by the holder hereof is not less than that required by this Note.

(c)      Prior to Lender making any advances under this Note, Borrower shall have paid to Lender (a) a commitment fee in an aggregate amount equal to $165,000 (which Lender acknowledges having received prior to the date hereof in connection with the "First Loan" [as hereinafter defined]) and (b) a funding fee in an amount equal to $180,000.

    (d)    Beginning February 1, 2007, and continuing on the first day of each month thereafter until the Maturity Date, Borrower shall make consecutive monthly installments of interest only, in arrears, at the Interest Rate on the then-outstanding Principal Amount. A prorated, stub interest payment shall be collected on the date hereof for the initial partial month.

    (e)    Borrower shall make one (1) final "balloon" payment, payable on the Maturity Date, of all unpaid principal, interest and all other amounts due under the Loan Documents. Borrower acknowledges and agrees that the entire principal balance evidenced by this Note shall be due and payable on the Maturity Date.

    (f)    If any payment of principal and interest to be made by Borrower hereunder shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time will be included in computing the interest in such payment.

4.    PREPAYMENT.

    (a)    <u>Optional Prepayment</u>. Borrower may prepay the unpaid principal balance of this Note, in whole or in part without penalty or premium, at any time. Any such principal prepayment shall be accompanied by all accrued and unpaid interest on the principal being prepaid and all other amounts due under the Loan Documents. Any prepayment shall be in denominations of $10,000 and shall be no less than $100,000.

    (b)    <u>Mandatory Prepayment</u>. Borrower shall immediately pay to Lender as a prepayment on the unpaid principal balance of this Note, accrued but unpaid interest and all other amounts due under the Loan Documents, any amounts received by Borrower that constitutes a prepayment of the obligations evidenced and secured by the Collateral Documents.

5.    LAWFUL MONEY.

Principal, interest and all other amounts due to Lender must be paid in lawful money of the United States of America.

6.    APPLICATION OF PAYMENTS/LATE CHARGE.

    (a)    Absent the occurrence of an Event of Default under this Note or any of the other Loan Documents, any payments received by the holder hereof pursuant to the terms of this Note will be applied first to payment of sums other than principal and interest to be paid by Borrower under this Note or any of the other Loan Documents, then to the payment of all interest accrued to the date of such payment, and the balance, if any, to the payment of principal. Any payments received by the holder of this Note after the occurrence of an Event of Default under this Note or any of the other Loan Documents will be applied to the amounts specified in this <u>Section 6(a)</u> in such order as the holder may elect in its sole discretion.

4

(b) If any payment of interest or principal is not received by the holder of this Note when it is due, then in addition to the remedies conferred upon the holder of this Note pursuant to Section 11 and the other Loan Documents, (i) subject to the provisions of this Note limiting interest to the maximum lawful amount, a late charge of 10% of the amount of the installment due and unpaid will be added to the delinquent amount to compensate the holder of this Note for the expense of handling the delinquency for any payment past due in excess of five (5) days after when scheduled to be due and payable, and (ii) the amount due and unpaid (including but not limited to the late charge) will bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid.

7. SECURITY AND GUARANTY.

This Note is secured by, inter alia, (a) the Mortgages, (b) the Guaranties (c) the Membership Interest Pledge Agreement and (d) the other Loan Documents.

8. REPRESENTATIONS AND WARRANTIES.

(a) Organization and Powers. Borrower has full power and authority or capacity to own and operate its properties, to carry on its businesses as now conducted and as proposed to be conducted, and to execute and deliver this Note and the other Loan Documents and to perform its obligations hereunder and thereunder. The address of Borrower's personal residence is 3945 Hibicus Dr., Miami Beach, Florida 33139. The address of Borrower's chief executive office and principal place of business is: 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

(b) Organization and Powers and Good Standing. Guarantors are Delaware limited liability companies. Guarantors have full power and authority or capacity to own and operate their properties, to carry on their businesses as now conducted and as proposed to be conducted, and to execute and deliver the Guaranties and the other Loan Documents to which they are parties and to perform their obligations thereunder. The address of Guarantors' chief executive office and principal place of business is: 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235. Guarantors have made all filings and are in good standing as domestic limited liability companies in the jurisdiction in which the character of the property it owns or the nature of the business it transacts makes such filings necessary or where the failure to make such filings could have a materially adverse effect on the business, operations, assets or condition of Guarantors.

(c) Non-Foreign Status. Borrower is not a "foreign person," "foreign corporation," "foreign partnership," "foreign trust," or "foreign estate," as those terms are defined in the Internal Revenue Code and the regulations promulgated thereunder.

(d) Authorization. The execution, delivery and performance of the Loan Documents by Borrower and Guarantors are within Borrower's individual, and Guarantors' limited liability company, powers and, in the case of Guarantors, have been duly

5

authorized by all necessary action required under Guarantors' Operating Agreements.

(e)   No Conflict. The execution, delivery and performance of the Loan Documents by Borrower and Guarantors will not violate (i) in the case of Guarantors, the organizational documents of Guarantors; or (ii) any legal requirement affecting Borrower or Guarantors or any or their properties; or (iii) any agreement to which Borrower or Guarantors is bound or to which it is a party and will not result in or require the creation (except as provided in or contemplated by this Agreement) of any lien upon any of such properties.

(f)   Governmental and Private Approvals. To the best of Borrower's knowledge after due inquiry, all governmental or regulatory orders, consents, permits, authorizations and approvals required for the use, occupancy and operation of the Project have been obtained and are in full force and effect. No additional governmental or regulatory actions, filings or registrations, and no approvals, authorizations or consents of Borrower or Guarantors, or any holder of any indebtedness or obligation of Borrower or Guarantors are required for the due execution, delivery and performance by Borrower and Guarantors of the Loan Documents.

(g)   Binding Obligations. This Note, the Guaranties and the other Loan Documents have been duly executed by Borrower and Guarantors, and are legally valid and binding obligations of Borrower and Guarantors respectively, enforceable against Borrower and Guarantors in accordance with their terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

(h)   No Material Defaults. There exists no material violation of or material default by Borrower or Guarantors and, to the best knowledge of Borrower, no event has occurred which, upon the giving of notice or the passage of time, or both, would constitute a material default with respect to (a) the Project, (b) any lease or other agreement affecting the Project, (c) any license, permit, statute, ordinance, law, judgment, order, writ, injunction, decree, rule or regulation of any Governmental Authority, or any determination or award of any arbitrator or other private adjudicator to which Borrower, Guarantors or the Project may be bound, or (d) any mortgage, instrument, agreement or document by which Borrower or Guarantors or any of their respective properties (including the Project) is bound: (i) which involves any Loan Document, (ii) which involves the Project or any owner and is not adequately covered by insurance, (iii) which might materially and adversely affect the ability of Borrower or Guarantors to perform their respective obligations under any of the Loan Documents or any other material instrument, agreement or document to which it is a party, or (iv) which might adversely affect the priority of the liens created by the Mortgages, this Agreement or any of the other Loan Documents.

(i)     Litigation; Adverse Facts. There is no action, suit, investigation, proceeding or arbitration at law or in equity or before or by any foreign or domestic court or other governmental entity (a "Legal Action"), pending or, to the knowledge of Borrower, threatened against or affecting Borrower, Guarantors or any of their respective assets which could reasonably be expected to result in any material adverse change in the business, operations, assets (including the Project) or condition (financial or otherwise) of Borrower or Guarantors or would materially and adversely affect Borrower's or Guarantors' ability to perform its obligations under the Loan Documents. Neither Borrower nor Guarantors is (a) in violation of any applicable law which violation materially and adversely affects or may materially and adversely affect the business, operations, assets or condition (financial or otherwise) of Borrower or Guarantors, (b) subject to, or in default with respect to any other legal requirement that would have a materially adverse effect on the business, operations, assets or condition (financial or otherwise) of Borrower or Guarantors, or (c) in default with respect to any material agreement to which Borrower or Guarantors is a party or to which it is bound. There is no action, suit or proceeding pending or, to the knowledge of Borrower, threatened against or affecting Borrower or Guarantors which, if adversely decided would materially impair the ability of Borrower or Guarantors to perform its respective obligations under the Loan Documents.

(j)     Title to Project; Liens. Borrower is the sole owner of, and has good and indefeasible fee simple title to the Indiana Property, free from any adverse lien, security interest or encumbrance of any kind whatsoever. Simone I is the sole owner of, and has good and indefeasible fee simple title to Condo I, free from any adverse lien, security interest or encumbrance of any kind whatsoever. Simone II is the sole owner of, and has good and indefeasible fee simple title to Condo II, free from any adverse lien, security interest or encumbrance of any kind whatsoever. There are no leases or other occupancy agreements affecting any portion of the Project.

(k)     Disclosure. There is no fact known to Borrower that materially and adversely affects the business, operations, assets or condition (financial or otherwise) of Borrower or Guarantors which has not been disclosed in this Agreement or in other documents, certificates and written statements furnished to Lender in connection herewith.

(l)     Payment of Taxes. All tax returns of Borrower and Guarantors required to be filed have been timely filed (subject to rights of extension), and all taxes, assessments, fees and other governmental charges upon Borrower and Guarantors and upon their respective properties, assets, income and franchises which are due and payable have been paid in a manner so as to not give rise to a lien upon the Project or any part thereof. Borrower knows of no proposed tax assessment against it or Guarantors that would be material to the condition (financial or otherwise) of Borrower or Guarantors, and neither Borrower nor Guarantors have contracted with any government entity in connection with such taxes.

7

(m)    Anti-terrorism Laws.

(i) General. Neither Borrower nor any affiliate of Borrower is in violation of any Anti-Terrorism Law or engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law. "Anti-Terrorism Law" shall mean any statutes, regulations, ordinances and orders ("Laws") relating to terrorism or money laundering, including Executive Order No. 13224, the USA Patriot Act, the Laws comprising or implementing the Bank Secrecy Act, and the Laws administered by the United States Treasury Department's Office of Foreign Asset Control (as any of the foregoing Laws may from time to time be amended, renewed, extended, or replaced).

(ii) Executive Order No. 13224. Neither Borrower, nor its agents acting or benefiting in any capacity in connection with the Loan or other transactions hereunder, is any of the following (each a "Blocked Person"):

(A)    a person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

(B)    a person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

(C)    a person or entity with which any Bank is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law;

(D)    a person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order No. 13224;

(E)    a person or entity that is named as a "specially designated national" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list, or

(F)    a person or entity who is affiliated or associated with a person or entity listed above.

Neither Borrower nor, to the knowledge of Borrower, any of its agents acting in any capacity in connection with the Loan or other transactions hereunder (i) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, or (ii) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224.

(n)    Government Regulations. Borrower is not subject to any federal or state statute or regulation limiting its ability to incur indebtedness for money borrowed.

(o)    <u>Lien Priority</u>.  The Mortgages when filed will constitute first priority mortgage liens against the portion of the Project such Mortgage covers.

9.    COVENANTS.

(a)    <u>Compliance with Laws</u>.  Borrower will comply, and shall cause Guarantors to comply, in all material respects with all applicable laws and requirements of any applicable Governmental Authority.

(b)    <u>Lender Inspections</u>.  Throughout the term of the Loan upon reasonable advance written notice to Borrower and during normal business hours, Borrower will permit, and cause Guarantors to permit, Lender and Lender's representatives, inspectors and consultants to enter upon the Borrower's or Guarantors' premises or the Project, to examine the books and records (including, but not limited to, financial and accounting records pertaining to the Loan or the Project), and to discuss the affairs, finances and accounts of Borrower or Guarantors (or any affiliate of Borrower or Guarantors which provides goods or services to Borrower or Guarantors) with representatives of Borrower.

(c)    <u>Financial Statements and Reports</u>.

    (i)    As soon as available, and in any event within one hundred twenty (120) days of the end of each fiscal year of Borrower or Guarantors, Borrower shall furnish to Lender, certified as true and correct, a copy of (i) the annual operating statements of the Project, (ii) the unaudited financial statements of Borrower and Guarantors for such year, in form and substance reasonably satisfactory to Lender, and (iii) annual cash flow projections of Borrower, and shall also provide Lender with such other information respecting the condition of Borrower, Guarantors and the Project as Lender may from time to time reasonably request in writing.

    (ii)    Within forty-five (45) days following the end of the applicable quarter, Borrower shall furnish to Lender a quarterly operating statement for the Project covering the prior calendar quarter and cash flow reports of Borrower and Guarantors.

    (iii)    Within twenty (20) days after filing, Borrower shall provide to Lender copies of tax returns of Borrower and Guarantors.

(d)    <u>Further Assurances</u>.  Borrower shall execute, and shall cause Guarantors to execute, and deliver from time to time, promptly after any reasonable request therefor by Lender, any and all instruments, agreements and documents and shall take such other action as may be necessary or desirable in the reasonable opinion of Lender to maintain, perfect or insure Lender's security provided for herein and in the other Loan Documents, including, without limitation, the execution of such amendments to the Loan Documents and the delivery of such available endorsements to the Lender's applicable title insurance policy, all as Lender shall

reasonably require, and Borrower shall pay all reasonable out-of-pocket third party fees and expenses (including reasonable attorneys' fees) related thereto.

(e) <u>Notice of Litigation</u>. Borrower will give, or cause to be given, prompt written notice to Lender of (a) any action or proceeding which is instituted by or against it or either Guarantor in any Federal or state court or before any commission or other regulatory body, Federal, state or local, foreign or domestic, or any such proceedings which are threatened against it or either Guarantor which, if adversely determined, is reasonably likely to have a material and adverse effect upon its ability to repay the Loan, (b) any other action, event or condition of any nature which is reasonably likely to have a material and adverse effect upon its or Guarantors business, operations, management, assets, properties, ownership or condition (financial or otherwise), or which, with notice or lapse of time or both, would constitute an Event of Default or a default under any other material contract, instrument or agreement to which it is a party or to which it or any of its or Guarantors' properties or assets may be bound or subject, and (c) any actions, proceedings or notices materially adversely affecting any part of the Project by any zoning, building or other municipal officers, offices or departments having jurisdiction with respect to the Project (or any part thereof).

(f) <u>Anti-Terrorism Laws</u>. Borrower and its respective affiliates and agents shall not (i) conduct any business or engage in any transaction or dealing with any Blocked Person, including the making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, (ii) deal in, or otherwise engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224; or (iii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order No. 13224, the USA Patriot Act or any other Anti-Terrorism Law. Borrower shall deliver to Lender any certification or other evidence requested from time to time by Lender in its sole discretion, confirming Borrower's compliance with this Section.

(g) <u>Amendments to Borrower's Organizational Documents</u>. Borrower shall not allow any amendments to be made in the terms of Guarantors' organizational documents, including the Operating Agreements, without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

10. EVENTS OF DEFAULT.

The occurrence of any one or more of the following will constitute an event of default ("Event of Default") under this Note:

(a) Failure by Borrower to pay any monetary amount when due under this Note or any other Loan Document which failure has not been cured within five (5) days after notice from Lender that the same is due;

10

(b)    Failure by Borrower or either Guarantor to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to Borrower or Guarantors under any Loan Document which failure has not been cured upon the expiration of thirty (30) days after written notice of such failure by Lender to Borrower, or such additional period of time as is reasonably required (not to exceed 90 days), provided Borrower has commenced and is diligently prosecuting such cure;

(c)    Any representation or warranty by Borrower or Guarantors in any Loan Document is materially false, incorrect, or misleading as of the date made;

(d)    The occurrence of any event (including, without limitation, a change in the financial condition, business or operations of Borrower or either Guarantor for any reason whatsoever or any changes to the governing documents of either Guarantor) that materially and adversely affects the ability of Borrower or either Guarantor to perform any of its respective obligations under the Loan Documents;

(e)    Borrower or either Guarantor (i) admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors, or (iii) applies for, consents to, or acquiesces in, the appointment of a trustee, receiver, or other custodian for Borrower or either Guarantor or the property of Borrower or either Guarantor or any part thereof, or in the absence of such application, consent, or acquiescence, a trustee, receiver, or other custodian is appointed for Borrower or either Guarantor or the property of Borrower or either Guarantor or any part thereof, and such appointment is not discharged within ninety (90) days;

(f)    Commencement of any case under the Bankruptcy Code, Title 11 of the United State Code, or commencement of any other bankruptcy arrangement, reorganization, receivership, custodianship, or similar proceeding under any federal, state, or foreign law by or against Borrower or either Guarantor and with respect to any such case or proceeding that is involuntary, such case or proceeding is not dismissed with prejudice within ninety (90) days of the filing thereof;

(g)    Any litigation or proceeding is commenced before any Governmental Authority against or affecting Borrower or either Guarantor or the property of Borrower or either Guarantor or any part thereof and such litigation or proceeding is not defended diligently and in good faith by Borrower or such Guarantor;

(h)    A final judgment or decree for monetary damages or a monetary fine or penalty (not subject to appeal or as to which the time for appeal has expired) in excess of $50,000 in the aggregate is entered against Borrower or either Guarantor by any Government Authority, which together with the aggregate amount of all other such judgments and decrees against Borrower or such Guarantor that remain unpaid or that have not been discharged, bonded off or stayed, is not paid and discharged, bonded off or stayed within thirty (30) days after the entry thereof;

11

(i)      Commencement of any action or proceeding which seeks as one of its remedies the dissolution of either Guarantor;

(j)      All or any material part of the property of Borrower or either Guarantor is attached, levied upon, or otherwise seized by legal process, and such attachment, levy, or seizure is not quashed, stayed, or released within forty-five (45) days of the date thereof;

(k)     The existence of any lien or encumbrance on the Project (or any part thereof) that has not been approved in advance by Lender in writing;

(l)      There exists any "Event of Default" (as defined in the loan documents evidencing and securing that certain $2,500,000 loan made by Lender to IPofA 5201 Lender, LLC, a Delaware limited liability company on December 12, 2006 [the "First Loan"]) pursuant to any of the loan documents evidencing and securing the First Loan;

(m)    Fee title to the Project, or any part thereof, is transferred, leased or encumbered, either directly or indirectly, without Lender's written consent; or

(n)     The occurrence of any Event of Default, as such term is defined in any other Loan Document.

## 11.   REMEDIES.

Upon the occurrence and during the continuance of any Event of Default under this Agreement, or upon the occurrence and during the continuance of an Event of Default under any of the other Loan Documents, then at the option of the holder of this Note, the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Borrower under this Note and the other Loan Documents will, without presentment, demand, protest or notice of any kind, immediately become due and payable. Upon the occurrence of an Event of Default (and so long as such Event of Default continues), the entire balance of principal of this Note, together with all accrued interest thereon, all other amounts due under this Note or any of the other Loan Documents, and any judgment for such principal, interest and other amounts will bear interest at the Default Interest Rate, subject to the limitations contained in Section 17. No delay or omission on the part of the holder of this Note in exercising any right under this Note or under any of the other Loan Documents will operate as a waiver of such right.

## 12.   WAIVER.

Borrower, endorsers, guarantors and sureties of this Note hereby waive diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of nonpayment and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents or required by law) and expressly agree that, without in any way affecting the liability of Borrower, endorsers, guarantors, or sureties, the holder of this Note may extend any maturity date or the time for payment of any

installment due under this Note, may otherwise modify the Loan Documents, may accept additional security, may release any person liable, and may release any security or guaranty. Borrower, endorsers, guarantors, and sureties waive, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

13.    CHANGE, DISCHARGE, TERMINATION, OR WAIVER.

No provision of this Note may be changed, discharged, terminated, or waived except in a writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought. No failure on the part of the holder of this Note to exercise and no delay by the holder of this Note in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

14.    INDEMNIFICATION.

TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AGREES TO PROTECT, INDEMNIFY, DEFEND AND SAVE HARMLESS LENDER AND ITS PARTNERS, MANAGERS, DIRECTORS, OFFICERS, AGENTS AND EMPLOYEES (EACH AN "INDEMNIFIED PARTY") FOR, FROM AND AGAINST ANY AND ALL LIABILITY, EXPENSE OR DAMAGE OF ANY KIND OR NATURE AND FOR, FROM AND AGAINST ANY SUITS, CLAIMS OR DEMANDS, INCLUDING REASONABLE LEGAL FEES AND EXPENSES ON ACCOUNT OF ANY MATTER OR THING OR ACTION OR FAILURE TO ACT BY LENDER, WHETHER IN SUIT OR NOT, ARISING OUT OF THIS AGREEMENT OR IN CONNECTION HEREWITH, EXCLUDING, HOWEVER, ANY MATTERS ARISING OUT OF INDEMNIFIED PARTY'S NEGLIGENCE OR WILLFUL MISCONDUCT. Upon receiving knowledge of any suit, claim or demand asserted by a third party that Lender believes is covered by this indemnity, Lender shall give Borrower notice of the matter and an opportunity to defend it, at Borrower's sole cost and expense, with legal counsel selected by Borrower and reasonably satisfactory to Lender. Lender may also require Borrower to so defend the matter. The foregoing indemnity shall not terminate upon the repayment of the Loan, but will survive the repayment of the obligations and the termination of the Loan Documents.

In addition to the foregoing, Borrower shall protect, indemnify, defend and hold Lender and any successors to Lender's interests in the Loan, Project or Loan Documents, and any other person or entity who acquires the Loan Documents or the Project at a foreclosure sale or otherwise through the exercise of Lender's rights and remedies under the Loan Documents, and all directors, officers, employees and agents of all of the aforementioned indemnified parties, harmless from and against any and all actual or potential claims, liabilities, damages (direct or indirect), losses, fines, penalties, judgments, awards, costs and expenses (including, without limitation, reasonable attorneys' fees and costs and expenses of investigation) (collectively, "Expenses") which arise out of or relate in any way to any use, handling, production, transportation, disposal, release or storage of any Hazardous Material in, under or on the Project (or any part thereof), whether by Borrower, either Guarantor, any tenant of any portion of the Project or any other person, including, without limitation:

13

(a)    all foreseeable and all unforeseeable Expenses arising out of:

(i)    any and all environmental proceedings, whether civil (including actions by private parties), criminal, or administrative proceedings, relating to any part of the Project ("Environmental Proceedings") or the use, generation, storage, discharge or disposal of Hazardous Material by Borrower, either Guarantor, the current or any prior owner or operator of any part of the Project or any person on or about any portion of the Project;

(ii)    any residual contamination affecting any natural resource or the environment; or

(iii)   any exercise by Lender of any of its rights and remedies hereunder; and

(b)    the costs of any required or necessary investigation, assessment, testing, remediation, repair, cleanup, or detoxification of any portion of the Project and the preparation of any closure or other required plans.

Borrower's liability to the aforementioned indemnified parties shall arise upon the earlier to occur of (1) discovery of any Hazardous Material on, under or about any portion of the Project, or (2) the institution of any Environmental Proceedings, and not upon the realization of loss or damage, and Borrower shall pay to Lender from time to time, immediately upon request, an amount equal to such Expenses, as reasonably determined by Lender. In addition, in the event any Hazardous Material is removed, or caused to be removed from any portion of the Project, by Borrower, Lender or any other person, the number assigned by the U.S. Environmental Protection Agency to such Environmental Proceedings or any similar identification shall in no event be in the name of the Lender or identify the Lender as a generator, arranger or other designation.

For purposes of this Agreement, "Hazardous Material" shall mean and include gasoline, petroleum, asbestos containing materials, explosives, radioactive materials or any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any law of any Governmental Authority having jurisdiction over the Project or any portion thereof or its use, including: (i) any "hazardous substance" defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9601(14) as may be amended from time to time, or any so-called "superfund" or "superlien" Law, including the judicial interpretation thereof; (ii) any "pollutant or contaminant" as defined in 42 U.S.C.A. § 9601(33); (iii) any material now defined as "hazardous waste" pursuant to 40 C.F.R. Part 260; (iv) any petroleum, including crude oil or any fraction thereof; (v) natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel; (vi) any "hazardous chemical" as defined pursuant to 29 C.F.R. Part 1910; and (vii) any other toxic substance or contaminant that is subject to any other law or other past or present requirement of any Governmental Authority having jurisdiction over any portion of the Project or any portion thereof or its use.

14

The obligations set forth herein, including, without limitation, Borrower's obligation to pay Expenses hereunder, are collectively referred to as, the "Environmental Obligations". Notwithstanding any term or provision contained herein or in the other Loan Documents, the Environmental Obligations are unconditional. Borrower shall be jointly and severally and fully and personally liable for the Environmental Obligations hereunder, and such liability shall not be limited to the Principal Amount. The Environmental Obligations shall survive the repayment of the other obligations under this Note and any foreclosure, deed-in-lieu of foreclosure or similar proceedings by or through which Lender or any of their affiliates, nominees, successors or assigns or any other person bidding at a foreclosure sale may obtain title to the Project or any portion thereof.

15.    PAYMENT OF EXPENSES.

Borrower shall pay all taxes and assessments and all reasonable expenses, charges, costs and fees provided for in this Agreement or relating to the Loan, including, without limitation, any fees incurred for recording or filing any of the Loan Documents, title insurance premiums and charges, reasonable fees and expenses of Lender's outside counsel, documentation and processing fees, printing, photostatting and duplicating expenses, air freight charges, escrow fees, costs of surveys, premiums of hazard insurance policies and surety bonds and fees for any appraisal and appraisal review, environmental, seismic studies, market or feasibility study required by Lender. Borrower hereby authorizes Lender to make additional loan advances to pay such expenses, charges, costs and fees notwithstanding that Borrower may not have requested an increase in the amount of the Loan. Such disbursement shall be added to the outstanding principal balance of the Note. The authorization hereby granted shall be irrevocable, and no further direction or authorization from Borrower shall be necessary for Lender to make such disbursements. However, the provision of this Section 15 shall not prevent Borrower from paying such expense, charges, costs and fees from its own funds. All such expenses, charges, costs and fees shall be Borrower's obligation.

If this Note is not paid when due or if any Event of Default occurs, Borrower promises to pay all costs of enforcement and collection and preparation therefor, including but not limited to, reasonable attorneys' fees, whether or not any action or proceeding is brought to enforce the provisions of this Note (including but not limited to all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)).

16.    SEVERABILITY.

If any provision of this Note is unenforceable, the enforceability of the other provisions will not be affected and they will remain in full force and effect.

17.    INTEREST RATE LIMITATION.

Borrower hereby agrees to pay an effective rate of interest that is the sum of the interest rate provided for in this Note, together with any additional rate of interest resulting from

15

any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan, including but not limited to any fees to be paid by Borrower pursuant to the provisions of the Loan Documents. Lender and Borrower agree that none of the terms and provisions contained in this Note or in any of the other Loan Documents is to be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by applicable laws. **ALL AGREEMENTS BETWEEN BORROWER AND LENDER, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER WRITTEN OR ORAL, ARE HEREBY LIMITED SO THAT UNDER NO CIRCUMSTANCE, WHETHER BY REASON OF ACCELERATION OF THE MATURITY OF ANY INDEBTEDNESS GOVERNED HEREBY OR OTHERWISE, WILL THE INTEREST CONTRACTED FOR, CHARGED OR RECEIVED BY LENDER EXCEED THE MAXIMUM AMOUNT PERMISSIBLE UNDER APPLICABLE LAW. IF, UNDER ANY CIRCUMSTANCE WHATSOEVER, INTEREST WOULD OTHERWISE BE PAYABLE TO LENDER IN EXCESS OF THE MAXIMUM LAWFUL AMOUNT, THE INTEREST PAYABLE TO LENDER WILL BE REDUCED TO THE MAXIMUM AMOUNT PERMITTED UNDER APPLICABLE LAW; AND, IF UNDER ANY CIRCUMSTANCE LENDER EVER RECEIVES ANYTHING OF VALUE DEEMED INTEREST BY APPLICABLE LAW IN EXCESS OF THE MAXIMUM LAWFUL AMOUNT, AN AMOUNT EQUAL TO ANY EXCESSIVE INTEREST WILL BE APPLIED FIRST TO PAYMENT OF SUMS OTHER THAN PRINCIPAL AND INTEREST PAYABLE BY BORROWER UNDER THIS NOTE OR THE OTHER LOAN DOCUMENTS, THEN TO REDUCE THE PRINCIPAL OF THE LOAN AND NOT TO PAY INTEREST, AND THEN TO THE EXTENT THAT SUCH EXCESSIVE INTEREST EXCEEDS THE UNPAID PRINCIPAL BALANCE OF THE LOAN, THE EXCESS WILL BE REFUNDED TO BORROWER. ALL INTEREST PAID OR AGREED TO BE PAID TO LENDER WILL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, BE AMORTIZED, PRORATED, ALLOCATED AND SPREAD THROUGHOUT THE FULL PERIOD UNTIL PAYMENT IN FULL OF THE PRINCIPAL OF THE LOAN (INCLUDING THE PERIOD OF ANY RENEWAL OR EXTENSION THEREOF) SO THAT INTEREST THEREON FOR SUCH FULL PERIOD DOES NOT EXCEED THE MAXIMUM AMOUNT PERMITTED BY APPLICABLE LAW. THIS SECTION CONTROLS ALL AGREEMENTS BETWEEN BORROWER AND LENDER. BORROWER REPRESENTS THAT THE PROCEEDS OF THE LOAN WILL BE USED SOLELY FOR BUSINESS PURPOSES.**

18.     NUMBER AND GENDER.

In this Note the singular includes the plural and the masculine includes the feminine and neuter genders, and vice versa.

19.     HEADINGS; SECTION REFERENCES.

Headings at the beginning of each numbered section of this Note are intended solely for convenience and are not part of this Note. Section references appearing in this Note refer to the Sections of this Note unless otherwise stated.

20.    APPLICABLE LAW.

This Note and the rights and obligations of the parties under this Note are governed by and are to be construed in accordance with the laws of the State of New York (without giving effect to principles of conflicts of law).

21.    INTEGRATION.

The Loan Documents contain the complete understanding and agreement of the holder hereof and Borrower and supersede all prior representations, warranties, agreements, arrangements, understandings and negotiations between the parties to the Loan Documents with respect to the Loan.

22.    BINDING EFFECT.

The Loan Documents are binding upon, and inure to the benefit of, the holder of this Note, Borrower and their respective successors and permitted assigns. Borrower may not assign or delegate its obligations under this Note or any of the other Loan Documents.

23.    TIME OF THE ESSENCE.

Time is of the essence with regard to each provision of the Loan Documents as to which time is a factor.

24.    SURVIVAL.

The representations, warranties and covenants of Borrower in the Loan Documents will survive the execution and delivery of the Loan Documents and the making of the Loan.

25.    WAIVER OF JURY TRIAL; CONSENT TO VENUE.

BORROWER AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS NOTE, ANY RELATED INSTRUMENT OR AGREEMENT, ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS NOTE, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY OF THEM. NEITHER BORROWER NOR LENDER MAY SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IF A DISPUTE ARISES UNDER THIS NOTE, THE PARTIES HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A STATE OR FEDERAL

COURT IN NEW YORK COUNTY, NEW YORK. THE PARTIES HEREBY WAIVE ANY OBJECTION AS TO THE VENUE OF ANY SUCH ACTION BROUGHT IN ANY SUCH COURT OR THAT ANY SUCH COURT IS AN INCONVENIENT FORUM. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER BORROWER OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY EACH OF THEM.

26.    NOTICES.

All notices, consents and other communications given under this Agreement shall be in writing and shall be deemed to have been duly given (a) when delivered by hand or by FEDEX or a similar overnight courier to, (b) three days after being deposited in any United States post office enclosed in an airmail postage prepaid registered or certified envelope addressed to, or (c) when successfully transmitted by facsimile (with a confirming copy of such communication to be sent as provided in (a) or (b) above) to, the party for whom intended, at the address or facsimile number for such party set forth below, or to such other address or facsimile number as may be furnished by such party by notice in the manner provided herein; provided, however, that any notice of change of address or facsimile number shall be effective only on receipt.

If to Lender at 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez (fax 305-4434282)

If to Borrower c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235 Attention: Edward H. Okun (fax 804-419-2190)

[Remainder of page intentionally left blank.  Signature page follows.]

18

IN WITNESS WHEREOF, Borrower has executed and delivered this Note as of the day, month and year first-above written.

_____
Edward H. Okun

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**

<u>GUARANTY (SIMONE I)</u>

This Guaranty ("Guaranty") is made and entered into effective the 19th day of December, 2006, by SIMONE CONDO I, LLC, a Delaware limited liability company ("Guarantor"), for the benefit of CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Retirement Plan Trust ("Lender").

## BACKGROUND

A.    This Guaranty is being given in connection with the Secured Promissory Note of even date herewith made by Edward H. Okun, as maker (the "Borrower"), in favor of Lender (as amended from time to time, the "Note") evidencing that certain loan in the principal amount of $3,000,000 from Lender to Borrower (the "Loan"). Guarantor will derive substantial financial benefit from the making of the Loan.

B.    Capitalized terms used in this Guaranty and not otherwise specifically defined shall have the same meaning in this Guaranty as in the Note.

FOR VALUE RECEIVED, and to induce Lender to extend credit to Borrower as provided for in the Note and the other Loan Documents, Guarantor, having an address as indicated below its name on the signature page of this Guaranty, hereby unconditionally agrees as follows:

1.    <u>Guaranty</u>. Guarantor, as a primary party and not merely as a surety, jointly and severally, unconditionally and irrevocably guarantees the following (collectively, the "**Guaranteed Obligations**"):

1.1    The full, prompt and complete payment of all of Borrower's obligations under the Note, including but not limited to the Environmental Obligations;

1.2    The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Borrower and/or Guarantor under the Note and/or the other Loan Documents.

1.3    The full, prompt and complete reimbursement of all costs, losses, expenses and damages exclusive of consequential damages (including reasonable attorneys' fees) sustained or incurred by Lender in enforcing the provisions of the Loan Documents and/or this Guaranty, including costs of collection described in **Section 16**.

Guarantor's obligations under this Guaranty are secured pursuant to that certain Mortgage and Security Agreement dated as of even date herewith and made by Guarantor for the benefit of Lender encumbering condominium unit 3404 located at 901 Brickell Boulevard, Miami, Florida, as the same may be amended from time to time (the "**Mortgage**"). Guarantor hereby acknowledges and agrees that Lender may at its option proceed directly and at once, without further notice, against Guarantor hereunder and under the Mortgage, without proceeding against Borrower, or any other person or other collateral for the obligations secured by this Guaranty.

Any sums payable by Guarantor under this Guaranty shall bear interest at the Default Interest Rate from the date of demand until the date paid.

This Guaranty shall survive and continue in full force and effect beyond and after the payment, performance and satisfaction of the Guaranteed Obligations in the event Lender is required to disgorge or return any payment or property received as a result of any laws pertaining to preferences, fraudulent transfers or fraudulent conveyances.

This Guaranty is a guaranty of payment and performance and not of collection.

2.    Waivers.  Guarantor hereby waives and relinquishes to the fullest extent now or hereafter not prohibited by applicable law:

2.1    All suretyship defenses and defenses in the nature thereof;

2.2    Any right or claim of right to cause a marshalling of the assets of Borrower or of the collateral or, except as otherwise expressly provided herein, to cause Lender to proceed against any of the other security for the Guaranteed Obligations before proceeding under this Guaranty against Guarantor;

2.3    Until the payment and satisfaction of the Guaranteed Obligations, any rights against Borrower in respect of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to indemnitors, guarantors, sureties or accommodation parties.  Provided, however, unless Lender otherwise expressly agrees in writing, such waiver by Guarantor shall not be effective to the extent that by virtue thereof Guarantor's liability under this Guaranty or under any other Loan Document is rendered invalid, voidable, or unenforceable under any applicable state or federal law dealing with the recovery or avoidance of so-called preferences or fraudulent transfers or conveyances or otherwise;

2.4    Notice of the acceptance hereof and, except for notices and demands specifically required under this Guaranty, presentment, demand for payment, protest, notice of protest, or any and all notice of nonpayment, nonperformance, nonobservance or default, or other proof or notice of demand whereby to charge Guarantor under this Guaranty; and

2.5    The pleading of any statute of limitations as a defense to Guarantor's Obligations under this Guaranty.

Any and all payments made by Borrower, or any person other than Guarantor, and any and all payments, proceeds, credits or other sums received by Lender on account of the Loan Documents whether arising from the disposition of collateral, or otherwise, shall be applied first, without modifying, releasing or reducing the Guaranteed Obligations, to reduce that portion of the obligations not guaranteed by Guarantor under this Guaranty, and only thereafter to the Guaranteed Obligations.

3.    Cumulative Rights.  Lender's rights under this Guaranty shall be in addition to and not in limitation of all of the rights and remedies of Lender under the other Loan Documents.  All rights and remedies of Lender shall be cumulative and may be exercised in such manner and

combination as Lender may determine. Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party.

4.    **No Impairment.** The liability of Guarantor under this Guaranty shall in no way be limited or impaired by any amendment or modification of the provisions of the other Loan Documents to or with Lender by Borrower or any person who succeeds Borrower, but no such amendment or modification shall operate so as to increase the scope of Guarantor's liability under this Guaranty unless such amendment or modification is assented to by Guarantor. In addition, the liability of Guarantor under this Guaranty and the other Loan Documents shall in no way be limited or impaired by:

4.1    Any extensions of time for performance required by any of the Loan Documents;

4.2    Any sale or assignment of the Loan or any sale, assignment, transfer or exchange of all or part of the property of Borrower;

4.3    Any exculpatory, or nonrecourse, or limited recourse provision in any of the Loan Documents limiting Lender's recourse to the collateral encumbered by the Loan Documents or to any other property or limiting Lender's rights to a deficiency judgment against any person or entity, if any;

4.4    The accuracy or inaccuracy of any of the representations or warranties made by or on behalf of Borrower, any principal or agent of Borrower or Guarantor, under any Loan Document or otherwise;

4.5    The release of Borrower or any other person or entity, from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act, or otherwise;

4.6    The filing of any bankruptcy or reorganization proceeding by or against either Borrower or any subsequent owner of the property of Borrower;

4.7    The release or substitution in whole or part of any collateral or security for the Guaranteed Obligations;

4.8    Lender's failure to file any UCC financing statements, or Lender's improper filing thereof, or Lender's failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Guaranteed Obligations;

4.9    The release of any other party now or hereafter liable upon or in respect of this Guaranty or any of the other Loan Documents; or

4.10    The invalidity or unenforceability of all or any portion of any of the Loan Documents as to Borrower or any other person or entity.

3

Any of the foregoing may be accomplished with or without notice to Borrower or Guarantor and with or without consideration.

5.     Delay Not Waiver.  No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right.  No waiver by Lender in any instance shall constitute a waiver in any other instance.

6.     Warranties and Representations.  Guarantor warrants and represents to Lender for the express purpose of inducing Lender to accept this Guaranty, to otherwise complete the transactions contemplated by the Loan Documents, and to induce Lender to make the Loan, that, as to such Guarantor:

6.1     Financial Information.  All financial information heretofore furnished to Lender by Guarantor does, and all financial information hereafter furnished to Lender by Guarantor will, to the best of Guarantor's knowledge and belief, set forth a reasonably accurate statement of the information contained therein as of the date thereof.

6.2     Bankruptcy.  Guarantor shall not file a voluntary petition in bankruptcy without the consent of Lender and shall use its best efforts to contest any involuntary petition filed against it.

6.3     No Violation.  The payment and performance by Guarantor of the Guaranteed Obligations do not and shall not constitute a violation of any law, order, regulation, or any material contract or agreement to which Guarantor is a party or by which Guarantor or Guarantor's property may be bound.

6.4     No Litigation.  There is no litigation now pending or, to the best of Guarantor's knowledge threatened in writing, against Guarantor which, if adversely decided would materially impair the ability of Guarantor to pay and perform the Guaranteed Obligations.

6.5     Valid and Binding. This Guaranty constitutes Guarantor's legal, valid and binding obligation in accordance with the terms thereof, subject to bankruptcy, insolvency and similar laws of general application affecting the rights and remedies of creditors and, with respect to the availability of remedies of specific enforcement, subject to the discretion of the court before which proceedings therefor may be brought.

6.6     Solvency.  Guarantor is solvent and is not rendered insolvent by the obligations undertaken in this Guaranty.  Guarantor is not contemplating either the filing of a petition or proceeding under any state or federal bankruptcy or insolvency or reorganization laws or the liquidating of all or a major portion of Guarantor's property, and Guarantor has no knowledge of any such petition or proceeding being filed against Guarantor.

6.7     Material Economic Benefit.  The granting of the Loan to Borrower will constitute a material economic benefit to Guarantor.

7.     Notices.  Any notice or other communication in connection with this Guaranty shall be in writing and (i) deposited in the United States mail, postage prepaid by registered or

certified mail, or (ii) hand delivered by any commercially recognized courier service or overnight delivery service such as Federal Express, or (iii) sent by facsimile transmission if a FAX number is designated below, provided a copy is also sent by first-class mail, addressed as follows:

If to Guarantor:

To the address set forth below its signature on the signature page(s) of this Guaranty.

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

All periods of notice shall be measured from the deemed date of delivery. A notice shall be deemed to have been given, delivered and received upon the earliest of: (i) if sent by such certified or registered mail, on the third Business Day following the date of post-mark, or (ii) if hand delivered by such courier or overnight delivery service, when so delivered or tendered for delivery during customary business hours on a Business Day at the specified address, or (iii) if facsimile transmission is a permitted means of giving notice, upon receipt as evidenced by confirmation.

8.      No Oral Change.  No provision of this Guaranty may be changed, waived, discharged, or terminated orally (in person or by telephone) or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge or termination is sought.

9.      Parties Bound; Benefit.  This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators and personal representatives, successors and assigns and shall be for the benefit of Lender, and any subsequent holder of any Lender's interest in the Loan and any owner of a participation interest therein. In the event the interest of Lender under the Loan Documents is sold or transferred, then the liability of Guarantor to such Lender shall then be in favor of both such Lender and each subsequent holder of such Lender's interest therein, to the extent of their respective interests.

10.     Partial Invalidity.  Each of the provisions of this Guaranty shall be enforceable against Guarantor to the fullest extent now or hereafter not prohibited by applicable law. The invalidity or unenforceability of any provision of this Guaranty shall not limit the validity or enforceability of each other provision of this Guaranty.

11.     Governing Law.  This Guaranty and the rights and obligations of the parties under this Guaranty shall in all respects be governed by and construed and enforced in accordance with the internal laws of the State of New York, without giving effect to principles of conflicts of law. Lender may enforce its rights under this Guaranty and under the other Loan Documents, including, but not limited to, its rights to sue Guarantor or to collect any outstanding indebtedness in accordance with applicable law. It is understood and agreed that this Guaranty was drafted, negotiated and delivered in the State of New York which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by the Loan Documents.

12.    CONSENT TO JURISDICTION. GUARANTOR AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER. GUARANTOR AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IN THE EVENT OF A DISPUTE UNDER THIS GUARANTY, GUARANTOR AND LENDER HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN NEW YORK COUNTY, NEW YORK. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY GUARANTOR OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY SAME.

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY AT ANY TIME AFTER THE SAME BECOMES DUE, WHETHER BY ACCELERATION OR OTHERWISE, IN THE SUPREME COURT OF NEW YORK COUNTY, NEW YORK OR ANY OTHER COURT OF RECORD IN OR OF THE STATE OF NEW YORK OR ELSEWHERE, AND TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST THE GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF THE LENDER AGAINST GUARANTOR FOR THE AMOUNT THAT MAY BE DUE, WITH INTEREST AT THE RATE HEREIN MENTIONED AND COST OF SUIT, AND TO WAIVE AND RELEASE ALL ERRORS IN SUCH PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR AND RIGHTS OF APPEAL FROM THE JUDGMENT RENDERED. THE FOREGOING WARRANT OF ATTORNEY SHALL SURVIVE ANY JUDGMENT, AND, IF ANY JUDGMENT BE VACATED FOR ANY REASON, THE LENDER NEVERTHELESS MAY THEREAFTER USE THE FOREGOING WARRANTS OF ATTORNEY TO OBTAIN AN ADDITIONAL JUDGMENT OR JUDGMENTS AGAINST THE UNDERSIGNED.

13.    Financial Statements. Guarantor shall furnish or cause to be furnished to Lender when due all of the information with respect to the Guarantor required pursuant to Section 9.c. of the Note.

14.    Covenant of Guarantor. Guarantor shall pay, perform, observe and comply with all of the obligations, terms, covenants and conditions set forth in this Guaranty.

15.    Subordination. Guarantor hereby subordinates any and all claims which it now has, or in the future may acquire, as a creditor of Borrower, to the prior payment and satisfaction in full of this Guaranty. If, prior to the payment and satisfaction of this Guaranty, Guarantor would, without reference to the provisions of this Section 15, be entitled to receive any payment on account of any claim of Guarantor against the Borrower, all such payments shall be made

instead to Lender until the Guaranteed Obligations have been paid and satisfied in full, and each Guarantor hereby so directs. If any Guarantor receives any payment on account of any claim of each Guarantor against the Borrower, such Guarantor shall immediately pay the same over to Lender to be applied to the payment or satisfaction of the Guaranteed Obligations, if any. Notwithstanding the foregoing, unless an Event of Default has occurred, and any such Event of Default has not been either waived or acknowledged to have been cured in writing by Lender, such Guarantor may receive and retain payments from the Borrower.

16. _Legal Fees, Costs and Expenses._ Guarantor further agrees to pay upon demand all costs and expenses reasonably incurred by Lender or its successors or assigns in connection with enforcing any of the rights or remedies of Lender, or such successors or assigns, under or with respect to this Guaranty including, but not limited to, reasonable attorneys' fees and the out-of-pocket expenses and disbursements of such attorneys. Any such amounts which are not paid within 15 days of demand therefor shall bear interest at the Default Interest Rate from the date of demand until paid.

17. _Setoff, etc._ All accounts, deposits, securities, instruments and other property of Guarantor in the possession of Lender or any of its affiliates, whether for safekeeping or otherwise, may be applied or set-off against the Guaranteed Obligations, whether or not other collateral is then available to Lender.

18. _Time of Essence._ Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations under this Guaranty.

19. _Entire Agreement._ This Guaranty and the Mortgage embody the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations.

20. _Incorporation by Reference._ The Preamble and the Recitals to this Guaranty are incorporated into this Guaranty as if the same were fully set forth in this Guaranty.

21. _Joint and Several._ The obligations of Guarantor hereunder shall be joint and several with all other guarantors providing guaranties related to the Loan.

[Remainder of page intentionally left blank. Signature page follows.]

7

WITNESS the execution and delivery of this Guaranty as an instrument under seal as of the ___ day of December, 2006.

**WARNING — BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

GUARANTOR:

SIMONE CONDO I, LLC

By: _____
Name: Edward Okun
Title: Sole Member

Address:  c/o Investment Properties of
America, LLC, 10800
Midlothian Turnpike, Suite 309,
Richmond, Virginia 23235

STATE OF _Florida_ )
                          ) ss.:
COUNTY OF _Miami Dade_ )

On the _14_ day of _Dec_, 2006, before me, the undersigned, personally

appeared _Edward Okun_, personally known to me or proved to me on the

basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their

capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the

person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public: State of Florida
Jon Chasson
My Commission DD429535
Expires 07/11/2009

_____
Notary Public

2

## GUARANTY (SIMONE II)

This Guaranty ("**Guaranty**") is made and entered into effective the 19th day of December, 2006, by SIMONE CONDO II, LLC, a Delaware limited liability company ("**Guarantor**"), for the benefit of CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Retirement Plan Trust ("**Lender**").

### BACKGROUND

A.    This Guaranty is being given in connection with the Secured Promissory Note of even date herewith made by Edward H. Okun, as maker (the "**Borrower**"), in favor of Lender (as amended from time to time, the "**Note**") evidencing that certain loan in the principal amount of $3,000,000 from Lender to Borrower (the "**Loan**"). Guarantor will derive substantial financial benefit from the making of the Loan.

B.    Capitalized terms used in this Guaranty and not otherwise specifically defined shall have the same meaning in this Guaranty as in the Note.

FOR VALUE RECEIVED, and to induce Lender to extend credit to Borrower as provided for in the Note and the other Loan Documents, Guarantor, having an address as indicated below its name on the signature page of this Guaranty, hereby unconditionally agrees as follows:

1.    <u>Guaranty</u>. Guarantor, as a primary party and not merely as a surety, jointly and severally, unconditionally and irrevocably guarantees the following (collectively, the "**Guaranteed Obligations**"):

1.1    The full, prompt and complete payment of all of Borrower's obligations under the Note, including but not limited to the Environmental Obligations;

1.2    The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Borrower and/or Guarantor under the Note and/or the other Loan Documents.

1.3    The full, prompt and complete reimbursement of all costs, losses, expenses and damages exclusive of consequential damages (including reasonable attorneys' fees) sustained or incurred by Lender in enforcing the provisions of the Loan Documents and/or this Guaranty, including costs of collection described in **Section 16**.

Guarantor's obligations under this Guaranty are secured pursuant to that certain Mortgage and Security Agreement dated as of even date herewith and made by Guarantor for the benefit of Lender encumbering condominium unit 1808 located at 901 Brickell Boulevard, Miami, Florida, as the same may be amended from time to time (the "**Mortgage**"). Guarantor hereby acknowledges and agrees that Lender may at its option proceed directly and at once, without further notice, against Guarantor hereunder and under the Mortgage, without proceeding against Borrower, or any other person or other collateral for the obligations secured by this Guaranty.

Any sums payable by Guarantor under this Guaranty shall bear interest at the Default Interest Rate from the date of demand until the date paid.

This Guaranty shall survive and continue in full force and effect beyond and after the payment, performance and satisfaction of the Guaranteed Obligations in the event Lender is required to disgorge or return any payment or property received as a result of any laws pertaining to preferences, fraudulent transfers or fraudulent conveyances.

This Guaranty is a guaranty of payment and performance and not of collection.

2.    Waivers.  Guarantor hereby waives and relinquishes to the fullest extent now or hereafter not prohibited by applicable law:

2.1    All suretyship defenses and defenses in the nature thereof;

2.2    Any right or claim of right to cause a marshalling of the assets of Borrower or of the collateral or, except as otherwise expressly provided herein, to cause Lender to proceed against any of the other security for the Guaranteed Obligations before proceeding under this Guaranty against Guarantor;

2.3    Until the payment and satisfaction of the Guaranteed Obligations, any rights against Borrower in respect of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to indemnitors, guarantors, sureties or accommodation parties.    Provided, however, unless Lender otherwise expressly agrees in writing, such waiver by Guarantor shall not be effective to the extent that by virtue thereof Guarantor's liability under this Guaranty or under any other Loan Document is rendered invalid, voidable, or unenforceable under any applicable state or federal law dealing with the recovery or avoidance of so-called preferences or fraudulent transfers or conveyances or otherwise;

2.4    Notice of the acceptance hereof and, except for notices and demands specifically required under this Guaranty, presentment, demand for payment, protest, notice of protest, or any and all notice of nonpayment, nonperformance, nonobservance or default, or other proof or notice of demand whereby to charge Guarantor under this Guaranty; and

2.5    The pleading of any statute of limitations as a defense to Guarantor's Obligations under this Guaranty.

Any and all payments made by Borrower, or any person other than Guarantor, and any and all payments, proceeds, credits or other sums received by Lender on account of the Loan Documents whether arising from the disposition of collateral, or otherwise, shall be applied first, without modifying, releasing or reducing the Guaranteed Obligations, to reduce that portion of the obligations not guaranteed by Guarantor under this Guaranty, and only thereafter to the Guaranteed Obligations.

3.    Cumulative Rights.  Lender's rights under this Guaranty shall be in addition to and not in limitation of all of the rights and remedies of Lender under the other Loan Documents. All rights and remedies of Lender shall be cumulative and may be exercised in such manner and

combination as Lender may determine. Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party.

4.    **No Impairment.** The liability of Guarantor under this Guaranty shall in no way be limited or impaired by any amendment or modification of the provisions of the other Loan Documents to or with Lender by Borrower or any person who succeeds Borrower, but no such amendment or modification shall operate so as to increase the scope of Guarantor's liability under this Guaranty unless such amendment or modification is assented to by Guarantor. In addition, the liability of Guarantor under this Guaranty and the other Loan Documents shall in no way be limited or impaired by:

4.1    Any extensions of time for performance required by any of the Loan Documents;

4.2    Any sale or assignment of the Loan or any sale, assignment, transfer or exchange of all or part of the property of Borrower;

4.3    Any exculpatory, or nonrecourse, or limited recourse provision in any of the Loan Documents limiting Lender's recourse to the collateral encumbered by the Loan Documents or to any other property or limiting Lender's rights to a deficiency judgment against any person or entity, if any;

4.4    The accuracy or inaccuracy of any of the representations or warranties made by or on behalf of Borrower, any principal or agent of Borrower or Guarantor, under any Loan Document or otherwise;

4.5    The release of Borrower or any other person or entity, from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act, or otherwise;

4.6    The filing of any bankruptcy or reorganization proceeding by or against either Borrower or any subsequent owner of the property of Borrower;

4.7    The release or substitution in whole or part of any collateral or security for the Guaranteed Obligations;

4.8    Lender's failure to file any UCC financing statements, or Lender's improper filing thereof, or Lender's failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Guaranteed Obligations;

4.9    The release of any other party now or hereafter liable upon or in respect of this Guaranty or any of the other Loan Documents; or

4.10    The invalidity or unenforceability of all or any portion of any of the Loan Documents as to Borrower or any other person or entity.

3

Any of the foregoing may be accomplished with or without notice to Borrower or Guarantor and with or without consideration.

5. Delay Not Waiver. No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right. No waiver by Lender in any instance shall constitute a waiver in any other instance.

6. Warranties and Representations. Guarantor warrants and represents to Lender for the express purpose of inducing Lender to accept this Guaranty, to otherwise complete the transactions contemplated by the Loan Documents, and to induce Lender to make the Loan, that, as to such Guarantor:

6.1 Financial Information. All financial information heretofore furnished to Lender by Guarantor does, and all financial information hereafter furnished to Lender by Guarantor will, to the best of Guarantor's knowledge and belief, set forth a reasonably accurate statement of the information contained therein as of the date thereof.

6.2 Bankruptcy. Guarantor shall not file a voluntary petition in bankruptcy without the consent of Lender and shall use its best efforts to contest any involuntary petition filed against it.

6.3 No Violation. The payment and performance by Guarantor of the Guaranteed Obligations do not and shall not constitute a violation of any law, order, regulation, or any material contract or agreement to which Guarantor is a party or by which Guarantor or Guarantor's property may be bound.

6.4 No Litigation. There is no litigation now pending or, to the best of Guarantor's knowledge threatened in writing, against Guarantor which, if adversely decided would materially impair the ability of Guarantor to pay and perform the Guaranteed Obligations.

6.5 Valid and Binding. This Guaranty constitutes Guarantor's legal, valid and binding obligation in accordance with the terms thereof, subject to bankruptcy, insolvency and similar laws of general application affecting the rights and remedies of creditors and, with respect to the availability of remedies of specific enforcement, subject to the discretion of the court before which proceedings therefor may be brought.

6.6 Solvency. Guarantor is solvent and is not rendered insolvent by the obligations undertaken in this Guaranty. Guarantor is not contemplating either the filing of a petition or proceeding under any state or federal bankruptcy or insolvency or reorganization laws or the liquidating of all or a major portion of Guarantor's property, and Guarantor has no knowledge of any such petition or proceeding being filed against Guarantor.

6.7 Material Economic Benefit. The granting of the Loan to Borrower will constitute a material economic benefit to Guarantor.

7. Notices. Any notice or other communication in connection with this Guaranty shall be in writing and (i) deposited in the United States mail, postage prepaid by registered or

4

certified mail, or (ii) hand delivered by any commercially recognized courier service or overnight delivery service such as Federal Express, or (iii) sent by facsimile transmission if a FAX number is designated below, provided a copy is also sent by first-class mail, addressed as follows:

If to Guarantor:

To the address set forth below its signature on the signature page(s) of this Guaranty.

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

All periods of notice shall be measured from the deemed date of delivery. A notice shall be deemed to have been given, delivered and received upon the earliest of: (i) if sent by such certified or registered mail, on the third Business Day following the date of post-mark, or (ii) if hand delivered by such courier or overnight delivery service, when so delivered or tendered for delivery during customary business hours on a Business Day at the specified address, or (iii) if facsimile transmission is a permitted means of giving notice, upon receipt as evidenced by confirmation.

8.    No Oral Change.   No provision of this Guaranty may be changed, waived, discharged, or terminated orally (in person or by telephone) or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge or termination is sought.

9.    Parties Bound; Benefit.   This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators and personal representatives, successors and assigns and shall be for the benefit of Lender, and any subsequent holder of any Lender's interest in the Loan and any owner of a participation interest therein.   In the event the interest of Lender under the Loan Documents is sold or transferred, then the liability of Guarantor to such Lender shall then be in favor of both such Lender and each subsequent holder of such Lender's interest therein, to the extent of their respective interests.

10.    Partial Invalidity.   Each of the provisions of this Guaranty shall be enforceable against Guarantor to the fullest extent now or hereafter not prohibited by applicable law.   The invalidity or unenforceability of any provision of this Guaranty shall not limit the validity or enforceability of each other provision of this Guaranty.

11.    Governing Law.   This Guaranty and the rights and obligations of the parties under this Guaranty shall in all respects be governed by and construed and enforced in accordance with the internal laws of the State of New York, without giving effect to principles of conflicts of law. Lender may enforce its rights under this Guaranty and under the other Loan Documents, including, but not limited to, its rights to sue Guarantor or to collect any outstanding indebtedness in accordance with applicable law.   It is understood and agreed that this Guaranty was drafted, negotiated and delivered in the State of New York which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by the Loan Documents.

5

12.    CONSENT TO JURISDICTION. GUARANTOR AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER. GUARANTOR AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IN THE EVENT OF A DISPUTE UNDER THIS GUARANTY, GUARANTOR AND LENDER HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN NEW YORK COUNTY, NEW YORK. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY GUARANTOR OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY SAME.

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY AT ANY TIME AFTER THE SAME BECOMES DUE, WHETHER BY ACCELERATION OR OTHERWISE, IN THE SUPREME COURT OF NEW YORK COUNTY, NEW YORK OR ANY OTHER COURT OF RECORD IN OR OF THE STATE OF NEW YORK OR ELSEWHERE, AND TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST THE GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF THE LENDER AGAINST GUARANTOR FOR THE AMOUNT THAT MAY BE DUE, WITH INTEREST AT THE RATE HEREIN MENTIONED AND COST OF SUIT, AND TO WAIVE AND RELEASE ALL ERRORS IN SUCH PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR AND RIGHTS OF APPEAL FROM THE JUDGMENT RENDERED. THE FOREGOING WARRANT OF ATTORNEY SHALL SURVIVE ANY JUDGMENT, AND, IF ANY JUDGMENT BE VACATED FOR ANY REASON, THE LENDER NEVERTHELESS MAY THEREAFTER USE THE FOREGOING WARRANTS OF ATTORNEY TO OBTAIN AN ADDITIONAL JUDGMENT OR JUDGMENTS AGAINST THE UNDERSIGNED.

13.    Financial Statements. Guarantor shall furnish or cause to be furnished to Lender when due all of the information with respect to the Guarantor required pursuant to Section 9.c. of the Note.

14.    Covenant of Guarantor. Guarantor shall pay, perform, observe and comply with all of the obligations, terms, covenants and conditions set forth in this Guaranty.

15.    Subordination. Guarantor hereby subordinates any and all claims which it now has, or in the future may acquire, as a creditor of Borrower, to the prior payment and satisfaction in full of this Guaranty. If, prior to the payment and satisfaction of this Guaranty, Guarantor would, without reference to the provisions of this Section 15, be entitled to receive any payment on account of any claim of Guarantor against the Borrower, all such payments shall be made

6

instead to Lender until the Guaranteed Obligations have been paid and satisfied in full, and each Guarantor hereby so directs. If any Guarantor receives any payment on account of any claim of each Guarantor against the Borrower, such Guarantor shall immediately pay the same over to Lender to be applied to the payment or satisfaction of the Guaranteed Obligations, if any. Notwithstanding the foregoing, unless an Event of Default has occurred, and any such Event of Default has not been either waived or acknowledged to have been cured in writing by Lender, such Guarantor may receive and retain payments from the Borrower.

16. _Legal Fees, Costs and Expenses_. Guarantor further agrees to pay upon demand all costs and expenses reasonably incurred by Lender or its successors or assigns in connection with enforcing any of the rights or remedies of Lender, or such successors or assigns, under or with respect to this Guaranty including, but not limited to, reasonable attorneys' fees and the out-of-pocket expenses and disbursements of such attorneys. Any such amounts which are not paid within 15 days of demand therefor shall bear interest at the Default Interest Rate from the date of demand until paid.

17. _Setoff, etc_. All accounts, deposits, securities, instruments and other property of Guarantor in the possession of Lender or any of its affiliates, whether for safekeeping or otherwise, may be applied or set-off against the Guaranteed Obligations, whether or not other collateral is then available to Lender.

18. _Time of Essence_. Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations under this Guaranty.

19. _Entire Agreement_. This Guaranty and the Mortgage embody the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations.

20. _Incorporation by Reference_. The Preamble and the Recitals to this Guaranty are incorporated into this Guaranty as if the same were fully set forth in this Guaranty.

21. _Joint and Several_. The obligations of Guarantor hereunder shall be joint and several with all other guarantors providing guaranties related to the Loan.

[Remainder of page intentionally left blank.  Signature page follows.]

7

WITNESS the execution and delivery of this Guaranty as an instrument under seal as of the 19th day of December, 2006.

---

WARNING — BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

---

GUARANTOR:

SIMONE CONDO II, LLC

By:

Name: _Edward Okun_

Title: _sole manager_

Address:    c/o Investment Properties of
America, LLC, 10800
Midlothian Turnpike, Suite 309,
Richmond, Virginia 23235

STATE OF _Florida_ )
                          )  ss.:
COUNTY OF _Miami Dade_ )

On the _14_ day of _Dec_, 2006, before me, the undersigned, personally

appeared _Edward Olling_, personally known to me or proved to me on the

basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in his/her/their

capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the

person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public State of Florida
Jon Chassen
My Commission DD429535
Expires 07/11/2009

_____
Notary Public

2

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**

April 20, 2007        $7,000,000.00        Ft. Lauderdale, Florida

## PROMISSORY NOTE

FOR VALUE RECEIVED the undersigned, **EDWARD H. OKUN** ("Maker"), promises to pay to the order of **CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN AND TRUST**, a qualified employee benefit plan and trust, together with any other holder hereof ("Holder"), at 675 Berkmar Court, Charlottesville, Virginia 22901, or such other place as Holder may from time to time designate in writing, the principal sum of SEVEN MILLION AND NO/100 Dollars ($7,000,000.00), plus accrued interest, to be paid in lawful money of the United States of America, as follows:

1)     Subject to the imposition of a higher rate of interest as set forth hereinbelow, interest shall be charged on the basis of a three hundred sixty (360) day year counting the actual number of days elapsed and shall accrue on the principal amount of the Loan outstanding from time to time at a fixed rate per annum equal to eighteen percent (18%) ("Interest Rate").

2)     During the term of this Note, monthly payments of interest only shall be payable monthly by Maker, with the first payment due and owing on the 1st day of June, 2007, and continuing on the 1st day of each calendar month thereafter until the maturity date. The entire principal balance of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on June 1, 2010, ("Maturity Date"), unless acceleration is made by Holder pursuant to the provisions hereof.

3)     This Note may be prepaid in whole or in part at any time, without penalty or premium; provided, however, that such prepayment must be in even multiple amounts of Ten Thousand and no/100 Dollars ($10,000.00) and in an amount of not less than One Hundred Thousand and no/100 Dollars ($100,000.00). Any payment or prepayment hereunder shall be applied first to unpaid costs of collection and late charges, if any, then to accrued and unpaid interest and the balance, if any, to installments of principal, in the inverse order of their maturity.

4)     After maturity or acceleration, this Note shall bear interest at the Default Interest Rate (as defined hereinbelow) until paid in full.

This Note is secured by a Mortgage Deed and Security Agreement (the "Mortgage") encumbering certain real property located in Miami-Dade County, Florida (the "Premises"), by a Collateral Assignment of Membership Interest and UCC-1 Financing Statements, all of even date herewith. The foregoing and all other agreements, instruments and documents delivered in connection therewith and herewith are collectively referred to as the "Loan Documents."

TPA:511246:3

1

This Note is to be governed by and construed under the laws of the Commonwealth of Virginia. The interest due hereunder is being charged pursuant to applicable Virginia law.

Maker shall have no obligation to pay interest or payments in the nature of interest in excess of the maximum rate of interest allowed to be contracted for by law, as changed from time to time, applicable to this Note (the "Maximum Rate"). Any interest in excess of the Maximum Rate paid by Maker ("excess sum") shall be credited as a payment of principal, or, if Maker so requests in writing, returned to Maker, or, if the indebtedness and other obligations evidenced by this Note have been paid in full, returned to Maker together with interest at the same rate as was paid by Maker during such period. Any excess sum credited to principal shall be credited as of the date paid to Holder. The Maximum Rate varies from time to time and from time to time there may be no specific maximum rate. Holder may, without such action constituting a breach of any obligations to Maker, seek judicial determination of the applicable rate of interest, and its obligation to pay or credit any proposed excess sum to Maker.

The "Default Interest Rate" shall be the maximum rate and shall be the lesser of (i) thirty-six percent (36%) or (ii) the maximum rate allowed by applicable law.

Notwithstanding anything herein to the contrary, the entire unpaid principal amount of the Loan shall bear interest at the Default Interest Rate, in lieu of the Interest Rate if (i) any payment of principal or interest is not received by Holder within five (5) days after it becomes due, or (ii) all indebtedness due in connection with the Loan is not paid in full on the Maturity Date, or (iii) any other event of Default occurs. If the event of Default is due to Maker's failure to make a payment of principal or interest within five (5) days after it becomes due, the Loan shall bear interest at the Default Rate beginning on the date such payment was due. In all other circumstances, the Loan shall bear interest at the Default Rate beginning on the date that the event of Default occurred.

Holder shall have the right to declare the total unpaid balance hereof to be immediately due and payable in advance of the Maturity Date upon the failure of Maker to pay within five (5) days when due any payment of principal or interest or other amount due hereunder; or upon the occurrence of an event of default pursuant to any other Loan Documents now or hereafter evidencing, securing or guarantying payment of this Note, which event of default is not cured within any applicable grace period ("Default"). Exercise of this right shall be without notice to Maker or to any other person liable for payment hereof, notice of such exercise being hereby expressly waived.

Provided Holder has not accelerated this Note, Maker shall pay Holder a late charge of ten percent (10%) of any required payment, which is not received by Holder within five (5) days when said payment is due. The parties agree that said charge is a fair and reasonable charge for the late payment and shall not be deemed a penalty.

Holder is hereby given a lien upon and a security interest in all property of each Maker now or at any time hereafter in the possession of Holder in any capacity whatsoever, including but not limited to any balance or share of any deposit, trust, or agent account as security for the payment of this note, and a similar lien upon and security interest in all such property of each Maker as security for the payment of all other liabilities of each Maker to Holder (including

TPA:511246:3

2

liabilities of each Maker and any other person); and Holder shall have the same rights as to such property as it has with respect to the Collateral as such is defined in the Mortgage.

Upon the occurrence of any Default hereunder, Holder shall have the remedies of a secured party under the Uniform Commercial Code and, without limiting the generality of the foregoing, Holder shall have the right, immediately and without further action by it, to set off against this note all money owed by Holder in any capacity to each or any Obligor, whether or not due, and also to set off against all other liabilities of each Maker to Holder all money owed by Holder in any capacity to each or any Maker; and Holder shall be deemed to have exercised such right of set-off and to have made a charge against any such money immediately upon the occurrence of such Default even though such a charge is made or entered on the books of Holder subsequent thereto. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Holder will give Maker reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to any Maker at the address given below or at any other address shown on the records of the Holder, at least five (5) days before the time of the sale or disposition. Upon disposition of any Collateral after the occurrence of any Default hereunder, Maker shall be and remain liable for any deficiency; and Holder shall account to Maker for any surplus, but Holder shall have the right to apply all or any part of such surplus (or to hold the same as a reserve against) any and all other liability of each or any Maker to Holder. The Maker promises and agrees to pay all costs and expenses of collection and reasonable attorneys' fee, including costs, expenses and reasonable attorneys' fees on appeal, if collected by legal proceedings or through an attorney at law.

Time is of the essence hereunder. In the event that this Note is collected by law or through attorneys at law, or under advice therefrom, Maker agrees to pay all costs of collection, including reasonable attorneys' fees, whether or not suit is brought, and whether incurred in connection with collection, trial, appeal, bankruptcy or other creditors' proceedings or otherwise.

Acceptance of partial payments or payments marked "payment in full" or "in satisfaction" or words to similar effect shall not affect the duty of Maker to pay all obligations due hereunder, and shall not affect the right of Holder to pursue all remedies available to it under any Loan Documents.

The remedies of Holder shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Holder, and may be exercised as often as occasion therefor shall arise. No action or omission of Holder, including specifically any failure to exercise or forbearance in the exercise of any remedy, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by Holder and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing or as constituting a course of dealing, nor shall it be construed as a bar to, or as a waiver or release of, any subsequent remedy as to a subsequent event.

Maker hereby consents and submits to the jurisdiction of the courts of the State of Florida and Commonwealth of Virginia, and, notwithstanding its place of residence or organization or the place of execution of this Note, any litigation relating hereto, whether arising in contract or

TPA:511246:3

3

tort, by statute or otherwise, shall be brought in (and, if brought elsewhere, may be transferred to) a State or Federal court of competent jurisdiction in, at Payee's option, Miami-Dade County Florida or Albermarle County, Virginia.

Any notice to be given or to be served upon any party hereto in connection with this Note, whether required or otherwise, may be given in any manner permitted under the Loan Documents.

If more than one party shall execute this Note, the term "Maker" shall mean all parties signing this Note, who shall be jointly and severally obligated hereunder. The term "other person liable for payment hereof" shall include any endorser, guarantor, surety or other person now or hereafter primarily or secondarily liable for the payment of this Note, whether by signing this or another instrument.

Whenever the context so requires, the neuter gender includes the feminine and/or masculine, as the case may be, and the singular number includes the plural, and the plural number includes the singular.

Maker and any other person liable for the payment hereof respectively, hereby (a) expressly waive any valuation and appraisal, presentment, demand for payment, notice of dishonor, protest, notice of nonpayment or protest, all other forms of notice whatsoever, and diligence in collection; (b) consent that Holder may, from time to time and without notice to any of them or demand, (i) extend, rearrange, renew or postpone any or all payments, (ii) release, exchange, add to or substitute all or any part of the collateral for this Note, and/or (iii) release Maker (or any co-maker) or any other person liable for payment hereof, without in any way modifying, altering, releasing, affecting or limiting their respective liability or the lien of any security instrument; and (c) agree that Holder, in order to enforce payment of this Note against any of them, shall not be required first to institute any suit or to exhaust any of its remedies against Maker (or any co-maker) or against any other person liable for payment hereof or to attempt to realize on any collateral for this Note.

Lender may request periodically as it deems necessary, complete and current financial statements, balance sheets, profit and loss statements, and cash flow information for Maker and Cosigner in accordance with the Loan Documents executed or delivered in connection with this Loan.

Maker understands and agrees that the jury waiver, additional agreements and provisions hereby incorporated by reference, constitute agreements of the Maker and a part of this note. Maker acknowledges receipt of a completed copy of this note.

JURY WAIVER. MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY

TPA:511246:3

4

HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR HOLDER ENTERING INTO THIS AGREEMENT. FURTHER, MAKER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF HOLDER, NOR THE HOLDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT HOLDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. NO REPRESENTATIVE OR AGENT OF THE HOLDER, NOR HOLDER'S COUNSEL HAS THE AUTHORITY TO WAIVE, CONDITION, OR MODIFY THIS PROVISION.

Maker acknowledges that the above paragraph has been expressly bargained for by Holder as part of the loan evidenced hereby and that, but for Maker's agreement and the agreement of any other person liable for payment hereof thereto, Holder would not have extended to the loan for the term and with the interest rate provided herein.

IN WITNESS WHEREOF, Maker has executed this Note on the day and year first above written.

Address of Maker:                    MAKER:

394 S. Hibiscus Drive
Miami Beach, Florida 33139

By: _____
                    EDWARD H. OKUN

Documentary Stamps in the amount of $24,500.00 have been affixed to the original mortgage.

TPA:511246:2

5

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**



COPY

### SECURED PROMISSORY NOTE

New York, New York
May 3, 2006

$26,500,000

1.  FUNDAMENTAL PROVISIONS.

The following terms are used as defined terms in this Secured Promissory Note (as it may be amended, modified, extended and renewed from time to time, the "Note"):

| | |
|---|---|
| Lender: | CORDELL FUNDING, LLLP, a Florida limited liability limited partnership. |
| Borrower: | SAM TRUSTEE SERVICES, LLC, a Virginia limited liability company ("Trustee"), solely in its capacity as trustee of the COLUMBUS WORKS VIRGINIA TRUST created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005 ("Columbus Works Trust"), and in its capacity as trustee of the PARKWAY VIRGINIA TRUST created pursuant to the Irrevocable Trust Agreement dated February 22, 2005 ("Parkway Trust" collectively with the Columbus Works Trust, the "Trusts"), each such trust being an irrevocable trust existing under the laws of the State of Virginia. |
| Principal Amount: | Twenty-Six Million Five Hundred Thousand and No/100 Dollars ($26,500,000.00). |
| Interest Rate: | (i) The greater of twelve percent (12%) per annum or four and one half percent (4½%) per annum in excess of the Prime Rate (defined below) in effect on the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the Prime Rate so published on the first Business Day (defined below) of each succeeding month for the period commencing on the date hereof through and including the calendar day immediately preceding the first anniversary of the date hereof; (ii) the greater of fifteen percent (15%) per annum or seven and one half percent (7½%) per annum in excess of the Prime Rate in effect on the first anniversary of the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the first Business Day of each succeeding month, for the period commencing on the first anniversary of the date hereof through and including the calendar day immediately preceding the second anniversary of the date hereof; and (iii) the greater of eighteen percent (18%) per annum or eleven and one half percent (11½%) per annum in excess of the Prime Rate in effect on the second anniversary of the date hereof, and such Prime Rate shall thereafter be subject to change monthly based on the first Business Day of each succeeding month, for the period commencing on the second anniversary of the date hereof through and including the Maturity Date, except as otherwise provided herein; notwithstanding the foregoing, the Interest Rate shall not exceed twenty-five percent (25%) per annum. |
| Default Interest Rate: | Twenty-five percent (25%). |
| Maturity Date: | May 3, 2009. |

| | |
|---|---|
| Business Day: | Any day of the year other than Saturdays, Sundays and legal holidays on which Lender is obligated or permitted to be closed. |
| Collateral Assignment | That certain Collateral Assignment from Borrower to Lender, dated the date of this Note. |
| Collateral Documents | The documents set forth on Exhibit A. |
| Governmental Authority: | Any court, government or governmental authority (federal, state, local, foreign). |
| Guarantor: | Edward H. Okun. |
| Guaranty: | That certain Key Principal Guaranty from Guarantor to Lender, dated the date of this Note. |
| Interest Period: | Each consecutive one calendar month period (the first of which shall commence June, 2006). |
| Loan: | The loan from Lender to Borrower in the Principal Amount and evidenced by this Note. |
| Loan Documents: | This Note, the Collateral Assignment, the Security Agreement, the Guaranty, the Stock Pledge Agreement, the Membership Interest Pledge Agreement and such other documents and agreements entered into by Borrower and Lender in connection with the Loan. |
| Membership Interest Pledge Agreement: | That certain Membership Interest Pledge Agreement from Guarantor to Lender, dated the date of this Note. |
| Prime Rate: | The daily average prime rate for corporate loans at large United States money center commercial banks published in The Wall Street Journal. If a prime rate is no longer generally published, or is limited, regulated or administered by a governmental or quasi-governmental body, then Lender shall select a comparable interest rate index that is readily available to Borrower and verifiable by Borrower but is beyond Lender's control. |
| Projects: | The real property and improvements constituting the Property as defined in (1) the Columbus Works Mortgage (as defined on Exhibit A) (the "Columbus Project") and (2) the Indiana Mortgage (as defined on Exhibit A) (the "Indiana Project"), collectively. |
| Security Agreement: | That certain Security Agreement from Borrower to Lender, dated the date of this Note. |

|                     |                                                                                  |
|---------------------|----------------------------------------------------------------------------------|
| Stock Pledge Agreement: | That certain Stock Pledge Agreement from Guarantor to Lender, dated the date of this Note. |

2.    PROMISE TO PAY.

For value received, Borrower promises to pay to the order of Lender, at 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez, or at such other place as Lender may from time to time designate in writing, the Principal Amount, together with accrued interest from the date of disbursement on the unpaid principal balance of this Note at the Interest Rate, as set forth below.

3.    INTEREST; PAYMENTS.

(a)    Absent an Event of Default under this Note or under any of the other Loan Documents from the date hereof, interest will accrue on the unpaid principal balance of this Note at the Interest Rate. Interest at the Interest Rate shall be computed on the basis of the actual number of days elapsed over a 360-day year.

(b)    All payments of principal and interest due under this Note must be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts Borrower shall pay, and (ii) without any other set off. Borrower shall pay such amounts as are necessary to ensure that the gross amount of the principal and interest received by the holder hereof is not less than that required by this Note.

(c)    Prior to Lender making any advances under this Note, Borrower shall have paid to Lender (a) a commitment fee in an aggregate amount equal to $795,000 (after the application of the $265,000 deposit paid to Lender prior to the date hereof, the cash amount due and payable at closing shall be $530,000) and (b) a funding fee in an amount equal to $1,325,000.

(d)    Beginning June 1, 2006, and continuing on the first day of each month thereafter until the Maturity Date, Borrower shall make consecutive monthly installments of interest only, in arrears, at the Interest Rate on the then-outstanding Principal Amount. A prorated, stub interest payment shall be collected on the date hereof for the initial partial month.

(e)    Borrower shall make one (1) final "balloon" payment, payable on the Maturity Date, of all unpaid principal, interest and all other amounts due under the Loan Documents. Borrower acknowledges and agrees that the entire principal balance evidenced by this Note shall be due and payable on the Maturity Date.

(f)    If any payment of principal and interest to be made by Borrower hereunder shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time will be included in computing the interest in such payment.

4.    PREPAYMENT.

(a)    Optional Prepayment. Borrower may prepay the unpaid principal balance of this Note, in whole or in part without penalty or premium, at any time.   Any such principal

3

prepayment shall be accompanied by all accrued and unpaid interest on the principal being prepaid and all other amounts due under the Loan Documents.

(b) Mandatory Prepayment. Borrower shall immediately pay to Lender as a prepayment on the unpaid principal balance of this Note, accrued but unpaid interest, and all other amounts due under the Loan Documents any amounts received by Borrower that constitutes a prepayment of the obligations evidenced and secured by the Collateral Documents.

5. LAWFUL MONEY.

Principal and interest must be paid in lawful money of the United States of America.

6. APPLICATION OF PAYMENTS/LATE CHARGE.

(a) Absent the occurrence of an Event of Default under this Note or any of the other Loan Documents, any payments received by the holder hereof pursuant to the terms of this Note will be applied first to payment of sums other than principal and interest to be paid by Borrower under this Note or any of the other Loan Documents, then to the payment of all interest accrued to the date of such payment, and the balance, if any, to the payment of principal. Any payments received by the holder of this Note after the occurrence of an Event of Default under this Note or any of the other Loan Documents will be applied to the amounts specified in this Section 6(a) in such order as the holder may elect in its sole discretion.

(b) If any payment of interest or principal is not received by the holder of this Note when it is due, then in addition to the remedies conferred upon the holder of this Note pursuant to Section 11 and the other Loan Documents, (i) subject to the provisions of this Note limiting interest to the maximum lawful amount, a late charge of 4% of the amount of the installment due and unpaid will be added to the delinquent amount to compensate the holder of this Note for the expense of handling the delinquency for any payment past due in excess of 10 days after when scheduled to be due and payable, and (ii) the amount due and unpaid (including but not limited to the late charge) will bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid.

7. SECURITY AND GUARANTY.

This Note is secured by, inter alia, (a) the Collateral Assignment, (b) the Security Agreement, (c) the Guaranty, (d) the Stock Pledge Agreement, (e) the Membership Interest Pledge Agreement and the other Loan Documents.

8. REPRESENTATIONS AND WARRANTIES.

(a) Organization and Powers. Trustee is a limited liability company, duly organized and validly existing under the laws of the State of Virginia. Each Trust is in existence and Trustee is the duly appointed and currently serving trustee of both Trusts. Trustee has full power and authority or capacity to own and operate the properties of the Trusts, to carry on the businesses of the Trusts as now conducted and as proposed to be conducted, and to execute and deliver this Note and the other Loan Documents and to perform its obligations hereunder and thereunder. The address of Trustee's chief executive office

4

and          principal          place          of          business          is:

(b) Good Standing. Trustee has made all filings and is in good standing as a domestic limited liability company in the jurisdiction in which the character of the property it owns or the nature of the business it transacts makes such filings necessary or where the failure to make such filings could have a materially adverse effect on the business, operations, assets or condition of Trustee or the Trusts.

(c) Non-Foreign Status. Neither Trustee nor either Trust is a "foreign corporation," "foreign partnership," "foreign trust," or "foreign estate," as those terms are defined in the Internal Revenue Code and the regulations promulgated thereunder.

(d) Authorization. The execution, delivery and performance of the Loan Documents by Trustee are within Trustee's trust powers and have been duly authorized by all necessary action required under the applicable trust document.

(e) No Conflict. The execution, delivery and performance of the Loan Documents by Borrower will not violate (i) the trust documents of the Trusts; or (ii) any legal requirement affecting Borrower or any or its properties; or (iii) any agreement to which Borrower is bound or to which it is a party and will not result in or require the creation (except as provided in or contemplated by this Agreement) of any lien upon any of such properties.

(f) Governmental and Private Approvals. To the best of Borrower's knowledge after due inquiry, all governmental or regulatory orders, consents, permits, authorizations and approvals required for the use, occupancy and operation of the Improvements have been obtained and are in full force and effect. No additional governmental or regulatory actions, filings or registrations, and no approvals, authorizations or consents of any trustee or holder of any indebtedness or obligation of Borrower are required for the due execution, delivery and performance by Borrower of the Loan Documents.

(g) Binding Obligations. This Note and the other Loan Documents have been duly executed by Borrower, and are legally valid and binding obligations of Borrower, enforceable against Borrower in accordance with their terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

(h) No Material Defaults. There exists no material violation of or material default by Borrower and, to the best knowledge of Borrower, no event has occurred which, upon the giving of notice or the passage of time, or both, would constitute a material default with respect to (a) the Collateral Documents, (b) any lease or other agreement affecting the Projects to which Borrower is a party, (c) any license, permit, statute, ordinance, law, judgment, order, writ, injunction, decree, rule or regulation of any Governmental Authority, or any determination or award of any arbitrator or other private adjudicator to which Borrower or the Projects may be bound, or (d) any mortgage, instrument, agreement or document by which Borrower, any owner or any of their respective properties is bound: (i) which involves any Loan Document, (ii) which involves that portion of the Projects applicable to Borrower or any owner and is not adequately covered by insurance, (iii) which might materially and adversely affect the ability of Borrower to perform its obligations under any of the Loan Documents or any other

5

material instrument, agreement or document to which it is a party, or (iv) which might adversely affect the priority of the liens created by this Agreement or any of the Loan Documents.

(i)    <u>Litigation; Adverse Facts</u>.  There is no action, suit, investigation, proceeding or arbitration at law or in equity or before or by any foreign or domestic court or other governmental entity (a "Legal Action"), pending or, to the knowledge of Borrower, threatened against or affecting Borrower or Guarantor or any of its respective assets which could reasonably be expected to result in any material adverse change in the business, operations, assets (including the Projects) or condition (financial or otherwise) of Borrower or Guarantor or would materially and adversely affect Borrower's or Guarantor's ability to perform its obligations under the Loan Documents. Borrower is not (a) in violation of any applicable law which violation materially and adversely affects or may materially and adversely affect the business, operations, assets (including the Projects) or condition (financial or otherwise) of Borrower, (b) subject to, or in default with respect to any other legal requirement that would have a materially adverse effect on the business, operations, assets (including the Project) or condition (financial or otherwise) of Borrower, or (c) in default with respect to any material agreement to which Borrower is a party or to which it is bound.  There is no action, suit or proceeding pending or, to the knowledge of Borrower or Guarantor, threatened against or affecting Borrower or Guarantor which, if adversely decided would materially impair the ability of Borrower or Guarantor to perform its obligations under the Loan Documents.

(j)    <u>Title to Collateral; Liens</u>.  Borrower is the sole owner of, and has good and indefeasible title to the Loan Collateral, free from any adverse lien, security interest or encumbrance of any kind whatsoever.

(k)    <u>Disclosure</u>.  There is no fact known to Borrower that materially and adversely affects the business, operations, assets or condition (financial or otherwise) of Borrower or Guarantor which has not been disclosed in this Agreement or in other documents, certificates and written statements furnished to Lender in connection herewith.

(l)    <u>Payment of Taxes</u>.  All tax returns of Borrower required to be filed have been timely filed (subject to rights of extension), and all taxes, assessments, fees and other governmental charges upon Borrower and upon its properties, assets, income and franchises which are due and payable have been paid in a manner so as to not give rise to a lien upon that portion of the Loan Collateral related to Borrower when due and payable.  Borrower knows of no proposed tax assessment against it that would be material to the condition (financial or otherwise) of Borrower, and Borrower has not contracted with any government entity in connection with such taxes.

(m)    <u>Anti-terrorism Laws</u>.

(i) <u>General</u>.  Neither Borrower nor any affiliate of Borrower is in violation of any Anti-Terrorism Law or engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law. "Anti-Terrorism Law" shall mean any statutes, regulations, ordinances and orders ("Laws") relating to terrorism or money laundering, including Executive Order No. 13224, the USA Patriot Act, the Laws comprising or implementing the Bank Secrecy Act, and the Laws administered by the

6

United States Treasury Department's Office of Foreign Asset Control (as any of the foregoing Laws may from time to time be amended, renewed, extended, or replaced).

(ii) <u>Executive Order No. 13224</u>. Neither Borrower, nor its agents acting or benefiting in any capacity in connection with the Loan or other transactions hereunder, is any of the following (each a "Blocked Person"):

    (A)    a person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

    (B)    a person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

    (C)    a person or entity with which any Bank is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law;

    (D)    a person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order No. 13224;

    (E)    a person or entity that is named as a "specially designated national" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list, or

    (F)    a person or entity who is affiliated or associated with a person or entity listed above.

No Borrower or to the knowledge of Borrower, any of its agents acting in any capacity in connection with the Loans or other transactions hereunder (i) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, or (ii) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224.

    (n)    <u>Government Regulations</u>.  Borrower is not subject to any federal or state statute or regulation limiting its ability in incur indebtedness for money borrowed.

**9.**    **COVENANTS.**

    (a)    <u>Compliance with Laws</u>.  Borrower will comply in all material respects with all applicable laws and requirements of any applicable Governmental Authority.

    (b)    <u>Lender Inspections</u>.  Throughout the term of the Loan upon reasonable advance written notice to Borrower and during normal business hours, Borrower will permit, to the extent it has the right to pursuant to the Loan Collateral, Lender and Lender's representatives, inspectors and consultants to enter upon the Borrower's premises or the Projects, to examine the books and records (including, but not limited to, financial and accounting records pertaining to the Loan or the Projects), and to discuss the affairs, finances and accounts of Borrower (or any Affiliate of Borrower which provides goods or services to Borrower) with representatives of Borrower.

    (c)    <u>Financial Statements and Reports</u>.

(i)    As soon as available, and in any event within one hundred twenty (120) days of the end of each fiscal year of Borrower, Borrower shall furnish to Lender, certified as true and correct, a copy of (i) the annual operating statement of each Project, (ii) the unaudited financial statements of Borrower for such year, in form and substance reasonably satisfactory to Lender, and (iii) annual cash flow projections of Borrower and shall also provide Lender with such other information respecting the condition of Borrower, Guarantor and each Project as Lender may from time to time reasonably request in writing.

(ii)   Within forty-five (45) days following the end of the applicable quarter, Borrower shall furnish to Lender a quarterly operating statement for each Project covering the prior calendar quarter and cash flow reports of Borrower. Borrower shall not be required to disclose or furnish the name, address or any personal information of any occupant of each Project.

(iii)  Within twenty (20) days after filing, Borrower shall provide to Lender copies of tax returns of Borrower and Guarantor.

(d)    <u>Further Assurances</u>. Borrower shall execute and deliver from time to time, promptly after any reasonable request therefor by Lender, any and all instruments, agreements and documents and shall take such other action as may be necessary or desirable in the reasonable opinion of Lender to maintain, perfect or insure Lender's security provided for herein and in the other Loan Documents, including, without limitation, the execution of such amendments to the Loan Documents and the delivery of such available endorsements to the Lender's applicable title insurance policy, all as Lender shall reasonably require, and Borrower shall pay all reasonable out-of-pocket third party fees and expenses (including reasonable attorneys' fees) related thereto.

(e)    <u>Notice of Litigation</u>. Borrower will give, or cause to be given, prompt written notice to Lender of (a) any action or proceeding which is instituted by or against it in any Federal or state court or before any commission or other regulatory body, Federal, state or local, foreign or domestic, or any such proceedings which are threatened against it which, if adversely determined, is reasonably likely to have a material and adverse effect upon its ability to repay the Loan, (b) any other action, event or condition of any nature which is reasonably likely to have a material and adverse effect upon its business, operations, management, assets, properties, ownership or condition (financial or otherwise), or which, with notice or lapse of time or both, would constitute an Event of Default or a default under any other material contract, instrument or agreement to which it is a party or to which it or any of its properties or assets may be bound or subject, and (c) any actions, proceedings or notices materially adversely affecting either Project by any zoning, building or other municipal officers, offices or departments having jurisdiction with respect to either Project.

(f)    <u>Anti-Terrorism Laws</u>. Borrower and its respective affiliates and agents shall not (i) conduct any business or engage in any transaction or dealing with any Blocked Person, including the making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, (ii) deal in, or otherwise engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224; or (iii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order No. 13224, the USA Patriot Act or any other

8

Anti-Terrorism Law. Borrower shall deliver to Lender any certification or other evidence requested from time to time by Lender in its sole discretion, confirming Borrower's compliance with this Section.

(g)    Amendments to Borrower's Organizational Documents. Borrower shall not allow any material amendments to be made in the terms of any trust agreement governing the Trusts or the organizational documents of Trustee without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

10.    EVENTS OF DEFAULT.

The occurrence of any one or more of the following will constitute an event of default ("Event of Default") under this Note:

(a)    Failure by Borrower to pay any monetary amount when due under any Loan Document which failure has not been cured within five (5) days after notice from Lender that the same is due;

(b)    Failure by Borrower or Guarantor to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to Borrower or Guarantor under any Loan Document which failure has not been cured upon the expiration of thirty (30) days after written notice of such failure by Lender to Borrower, or such additional period of time as is reasonably required (not to exceed 90 days), provided Borrower has commenced and is diligently prosecuting such cure;

(c)    Any representation or warranty by Borrower or Guarantor in any Loan Document is materially false, incorrect, or misleading as of the date made;

(d)    The occurrence of any event (including, without limitation, a change in the financial condition, business or operations of Borrower or Guarantor for any reason whatsoever or any changes to the governing documents of Guarantor or Borrower other than those permitted pursuant to Section 9(f)) that materially and adversely affects the ability of Borrower or Guarantor to perform any of their respective obligations under the Loan Documents;

(e)    Borrower or Guarantor (i) admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors, or (iii) applies for, consents to, or acquiesces in, the appointment of a trustee, receiver, or other custodian for Borrower or Guarantor or the property of Borrower or Guarantor or any part thereof, or in the absence of such application, consent, or acquiescence, a trustee, receiver, or other custodian is appointed for Borrower or Guarantor or the property of Borrower or Guarantor or any part thereof, and such appointment is not discharged within ninety (90) days;

(f)    Commencement of any case under the Bankruptcy Code, Title 11 of the United State Code, or commencement of any other bankruptcy arrangement, reorganization, receivership, custodianship, or similar proceeding under any federal, state, or foreign law by or against Borrower or Guarantor and with respect to any such case or proceeding that is involuntary, such case or proceeding is not dismissed with prejudice within ninety (90) days of the filing thereof;

9

(g)    Any litigation or proceeding is commenced before any Governmental Authority against or affecting Borrower or the property of Borrower or any part thereof and such litigation or proceeding is not defended diligently and in good faith by Borrower;

(h)    A final judgment or decree for monetary damages or a monetary fine or penalty (not subject to appeal or as to which the time for appeal has expired) in excess of $100,000 in the aggregate is entered against Borrower by any Government Authority, which together with the aggregate amount of all other such judgments and decrees against Borrower that remain unpaid or that have not been discharged, bonded off or stayed, is not paid and discharged, bonded off or stayed within thirty (30) days after the entry thereof;

(i)    Commencement of any action or proceeding which seeks as one of its remedies the dissolution of Borrower;

(j)    All or any material part of the property of Borrower is attached, levied upon, or otherwise seized by legal process, and such attachment, levy, or seizure is not quashed, stayed, or released within forty-five (45) days of the date thereof;

(k)    The existence of any lien or encumbrance on the Columbus Project or the Indiana Project that has not been approved in advance by Lender in writing;

(l)    The occurrence of any Event of Default, as such term is defined in any other Loan Document; or

(m)    Any default under the Collateral Documents.

11.    REMEDIES.

Upon the occurrence and during the continuance of any Event of Default under this Agreement, or upon the occurrence and during the continuance of an Event of Default under any of the other Loan Documents, then at the option of the holder of this Note, the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Borrower under this Note and the other Loan Documents will, without presentment, demand, protest or notice of any kind, immediately become due and payable. Upon the occurrence of an Event of Default (and so long as such Event of Default continues), the entire balance of principal of this Note, together with all accrued interest thereon, all other amounts due under this Note or any of the other Loan Documents, and any judgment for such principal, interest and other amounts will bear interest at the Default Interest Rate, subject to the limitations contained in <u>Section 17</u>. No delay or omission on the part of the holder of this Note in exercising any right under this Note or under any of the other Loan Documents will operate as a waiver of such right.

12.    WAIVER.

Borrower, endorsers, guarantors and sureties of this Note hereby waive diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of nonpayment and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents) and expressly agree that, without in any way affecting the liability of Borrower, endorsers, guarantors, or sureties, the holder of this Note may extend any maturity date or the time for payment of any installment due under this Note, may otherwise modify the Loan Documents, may accept additional security, may release any person liable, and may release any security or

10

guaranty. Borrower, endorsers, guarantors, and sureties waive, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

13. **CHANGE, DISCHARGE, TERMINATION, OR WAIVER.**

No provision of this Note may be changed, discharged, terminated, or waived except in a writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought. No failure on the part of the holder of this Note to exercise and no delay by the holder of this Note in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

14. **INDEMNIFICATION.**

TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AGREES TO PROTECT, INDEMNIFY, DEFEND AND SAVE HARMLESS LENDER AND ITS PARTNERS, MANAGERS, DIRECTORS, OFFICERS, AGENTS AND EMPLOYEES (EACH AN 'INDEMNIFIED PARTY") FOR, FROM AND AGAINST ANY AND ALL LIABILITY, EXPENSE OR DAMAGE OF ANY KIND OR NATURE AND FOR, FROM AND AGAINST ANY SUITS, CLAIMS OR DEMANDS, INCLUDING REASONABLE LEGAL FEES AND EXPENSES ON ACCOUNT OF ANY MATTER OR THING OR ACTION OR FAILURE TO ACT BY LENDER, WHETHER IN SUIT OR NOT, ARISING OUT OF THIS AGREEMENT OR IN CONNECTION HEREWITH, EXCLUDING, HOWEVER, ANY MATTERS ARISING OUT OF INDEMNIFIED PARTY'S NEGLIGENCE OR WILLFUL MISCONDUCT. Upon receiving knowledge of any suit, claim or demand asserted by a third party that Lender believes is covered by this indemnity, Lender shall give Borrower notice of the matter and an opportunity to defend it, at Borrower's sole cost and expense, with legal counsel selected by Borrower and reasonably satisfactory to Lender. Lender may also require Borrower to so defend the matter. The foregoing indemnity shall not terminate upon the repayment of the Loan, but will survive the repayment of the obligations and the termination of the Loan Documents.

In addition to the foregoing, Borrower shall protect, indemnify, defend and hold Lender and any successors to Lender's interests in the Collateral Documents, and any other Person who acquires any portion of the Projects at a foreclosure sale or otherwise through the exercise of Lender's rights and remedies under the Loan Documents, and all directors, officers, employees and agents of all of the aforementioned indemnified parties, harmless from and against any and all actual or potential claims, liabilities, damages (direct or indirect), losses, fines, penalties, judgments, awards, costs and expenses (including, without limitation, reasonable attorneys' fees and costs and expenses of investigation) (collectively, "Expenses") which arise out of or relate in any way to any use, handling, production, transportation, disposal, release or storage of any Hazardous Material in, under or on the Projects, whether by any Borrower or any other person, including, without limitation:

(a) all foreseeable and all unforeseeable Expenses arising out of:

(i) any and all environmental proceedings, whether civil (including actions by private parties), criminal, or administrative proceedings, relating to the Project ("Environmental Proceedings") or the use, generation, storage, discharge or disposal of Hazardous Material by Borrower, any prior owner or operator of the Projects or any person on or about the Projects;

(ii) any residual contamination affecting any natural resource or the environment or

(iii)     any exercise by Lender of any of its rights and remedies hereunder; and

(b)     the costs of any required or necessary investigation, assessment, testing, remediation, repair, cleanup, or detoxification of the Projects and the preparation of any closure or other required plans.

Borrower's liability to the aforementioned indemnified parties shall arise upon the earlier to occur of (1) discovery of any Hazardous Material on, under or about the Projects, or (2) the institution of any Environmental Proceedings, and not upon the realization of loss or damage, and Borrower shall pay to Lender from time to time, immediately upon request, an amount equal to such Expenses, as reasonably determined by Lender. In addition, in the event any Hazardous Material is removed, or caused to be removed from the Projects, by Borrower, Lender or any other person, the number assigned by the U.S. Environmental Protection Agency to such Environmental Proceedings or any similar identification shall in no event be in the name of the Lender or identify the Lender as a generator, arranger or other designation.

For purposes of this Agreement, "Hazardous Material" shall mean and include gasoline, petroleum, asbestos containing materials, explosives, radioactive materials or any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any law of any Governmental Authority having jurisdiction over the Projects or any portion thereof or its use, including: (i) any "hazardous substance" defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9601(14) as may be amended from time to time, or any so-called "superfund" or "superlien" Law, including the judicial interpretation thereof; (ii) any "pollutant or contaminant" as defined in 42 U.S.C.A. § 9601(33); (iii) any material now defined as "hazardous waste" pursuant to 40 C.F.R. Part 260; (iv) any petroleum, including crude oil or any fraction thereof; (v) natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel; (vi) any "hazardous chemical" as defined pursuant to 29 C.F.R. Part 1910; and  (vii) any other toxic substance or contaminant that is subject to any other law or other past or present requirement of any Governmental Authority having jurisdiction over the Projects or any portion thereof or its use.

The obligations set forth herein, including, without limitation, Borrower's obligation to pay Expenses hereunder, are collectively referred to as, the "Environmental Obligations". Notwithstanding any term or provision contained herein or in the other Loan Documents, the Environmental Obligations are unconditional. Borrower shall be jointly and severally and fully and personally liable for the Environmental Obligations hereunder, and such liability shall not be limited to the Principal Amount. The Environmental Obligations shall survive the repayment of the other obligations undeer this Note and any foreclosure, deed-in-lieu of foreclosure or similar proceedings by or through which Lender or any of their affiliates, nominees, successors or assigns or any other person bidding at a foreclosure sale may obtain title to the Collateral Documents, the Projects or any portion thereof

15.     PAYMENT OF EXPENSES.

Borrower shall pay all taxes and assessments and all reasonable expenses, charges, costs and fees provided for in this Agreement or relating to the Loan, including, without limitation, any fees incurred for recording or filing any of the Loan Documents, title insurance premiums and charges, reasonable fees and expenses of Lender's outside counsel, documentation and processing fees, printing, photostatting and duplicating expenses, air freight charges, escrow fees, costs of

surveys, premiums of hazard insurance policies and surety bonds and fees for any appraisal and appraisal review, environmental, seismic studies, market or feasibility study required by Lender. Borrower hereby authorizes Lender to disburse the proceeds of the Loan to pay such expenses, charges, costs and fees notwithstanding that Borrower may not have requested a disbursement of such amount. Such disbursement shall be added to the outstanding principal balance of the Note. The authorization hereby granted shall be irrevocable, and no further direction or authorization from Borrower shall be necessary for Lender to make such disbursements. However, the provision of this Section 15 shall not prevent Borrower from paying such expense, charges, costs and fees from its own funds. All such expenses, charges, costs and fees shall be Borrower's obligation regardless of whether or not Borrower has requested and met the conditions for the disbursement of the Loan.

If this Note is not paid when due or if any Event of Default occurs, Borrower promises to pay all costs of enforcement and collection and preparation therefor, including but not limited to, reasonable attorneys' fees, whether or not any action or proceeding is brought to enforce the provisions of this Note (including but not limited to all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)).

16.    SEVERABILITY.

If any provision of this Note is unenforceable, the enforceability of the other provisions will not be affected and they will remain in full force and effect.

17.    INTEREST RATE LIMITATION.

Borrower hereby agrees to pay an effective rate of interest that is the sum of the interest rate provided for in this Note, together with any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan, including but not limited to any fees to be paid by Borrower pursuant to the provisions of the Loan Documents. Lender and Borrower agree that none of the terms and provisions contained in this Note or in any of the other Loan Documents is to be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by applicable laws. **ALL AGREEMENTS BETWEEN BORROWER AND LENDER, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER WRITTEN OR ORAL, ARE HEREBY LIMITED SO THAT UNDER NO CIRCUMSTANCE, WHETHER BY REASON OF ACCELERATION OF THE MATURITY OF ANY INDEBTEDNESS GOVERNED HEREBY OR OTHERWISE, WILL THE INTEREST CONTRACTED FOR, CHARGED OR RECEIVED BY LENDER EXCEED THE MAXIMUM AMOUNT PERMISSIBLE UNDER APPLICABLE LAW. IF, UNDER ANY CIRCUMSTANCE WHATSOEVER, INTEREST WOULD OTHERWISE BE PAYABLE TO LENDER IN EXCESS OF THE MAXIMUM LAWFUL AMOUNT, THE INTEREST PAYABLE TO LENDER WILL BE REDUCED TO THE MAXIMUM AMOUNT PERMITTED UNDER APPLICABLE LAW; AND, IF UNDER ANY CIRCUMSTANCE LENDER EVER RECEIVES ANYTHING OF VALUE DEEMED INTEREST BY APPLICABLE LAW IN EXCESS OF THE MAXIMUM LAWFUL AMOUNT, AN AMOUNT EQUAL TO ANY EXCESSIVE INTEREST WILL BE APPLIED FIRST TO PAYMENT OF SUMS OTHER THAN PRINCIPAL AND INTEREST PAYABLE BY BORROWER UNDER THIS NOTE OR THE OTHER LOAN DOCUMENTS, THEN TO REDUCE THE PRINCIPAL OF THE LOAN AND NOT TO PAY INTEREST, AND THEN TO THE EXTENT THAT SUCH EXCESSIVE INTEREST EXCEEDS THE UNPAID PRINCIPAL BALANCE OF THE**

LOAN, THE EXCESS WILL BE REFUNDED TO BORROWER. ALL INTEREST PAID OR AGREED TO BE PAID TO LENDER WILL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, BE AMORTIZED, PRORATED, ALLOCATED AND SPREAD THROUGHOUT THE FULL PERIOD UNTIL PAYMENT IN FULL OF THE PRINCIPAL OF THE LOAN (INCLUDING THE PERIOD OF ANY RENEWAL OR EXTENSION THEREOF) SO THAT INTEREST THEREON FOR SUCH FULL PERIOD DOES NOT EXCEED THE MAXIMUM AMOUNT PERMITTED BY APPLICABLE LAW. THIS SECTION CONTROLS ALL AGREEMENTS BETWEEN BORROWER AND LENDER.

18.    NUMBER AND GENDER.

In this Note the singular includes the plural and the masculine includes the feminine and neuter genders, and vice versa.

19.    HEADINGS; SECTION REFERENCES.

Headings at the beginning of each numbered section of this Note are intended solely for convenience and are not part of this Note. Section references appearing in this Note refer to the Sections of this Note unless otherwise stated.

20.    APPLICABLE LAW.

This Note and the rights and obligations of the parties under this Note are governed by and are to be construed in accordance with the laws of the State of New York (without giving effect to principles of conflicts of law).

21.    INTEGRATION.

The Loan Documents contain the complete understanding and agreement of the holder hereof and Borrower and supersede all prior representations, warranties, agreements, arrangements, understandings and negotiations between the parties to the Loan Documents with respect to the Loan.

22.    BINDING EFFECT.

The Loan Documents are binding upon, and inure to the benefit of, the holder of this Note, Borrower and their respective successors and permitted assigns. Borrower may not assign or delegate its obligations under this Note or any of the other Loan Documents.

23.    TIME OF THE ESSENCE.

Time is of the essence with regard to each provision of the Loan Documents as to which time is a factor.

24.    SURVIVAL.

The representations, warranties and covenants of Borrower in the Loan Documents will survive the execution and delivery of the Loan Documents and the making of the Loan.

25.    WAIVER OF JURY TRIAL; CONSENT TO VENUE.

BORROWER AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS NOTE, ANY RELATED INSTRUMENT OR AGREEMENT, ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS NOTE, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY OF THEM. NEITHER BORROWER NOR LENDER MAY SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IF A DISPUTE ARISES UNDER THIS NOTE, THE PARTIES HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A STATE OR FEDERAL COURT IN FRANKLIN COUNTY, OHIO. THE PARTIES HEREBY WAIVE ANY OBJECTION AS TO THE VENUE OF ANY SUCH ACTION BROUGHT IN ANY SUCH COURT OR THAT ANY SUCH COURT IS AN INCONVENIENT FORUM. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER BORROWER OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY EACH OF THEM.

[Remainder of page intentinally left blank. Signature page follows.]

IN WITNESS WHEREOF, Borrower has executed and delivered this Note as of the day, month and year first-above written.

> SAM TRUSTEE SERVICES, LLC, a Virginia limited liability company, as trustee of the COLUMBUS WORKS VIRGINIA TRUST created pursuant to the Irrevocable Trust Agreement dated March 15, 2005 as amended July 7, 2005 and as trustee of the PARKWAY VIRGINIA TRUST created pursuant to the Irrevocable Trust Agreement dated February 22, 2005
>
> By: _Sherrill A. Melroie_
>
> Name: _Sherrill A. Melroie_
>
> Its: _Trustee_

## EXHIBIT A

1.  The Promissory Note dated July 8, 2005 with a principal amount of $27,000,000 payable by IpofA Columbus Works, LLC ("Columbus Owner") to Columbus Works Trust.

2.  The Mortgage, Security Agreement and Fixture Filing dated July 8, 2005 made by Columbus Owner for the Benefit of Columbus Works Trust (the "Columbus Mortgage").

3.  The Promissory Note dated March 1, 2005 with a principal amount of $2,000,000 payable by IPofA Parkway Complex, LLC ("Indiana Owner") to Parkway Trust.

4.  Real Estate Mortgage, Security Agreement and Assignment of Leases made by Indiana Owner, in favor of Assignor, dated March 1, 2005 (the "Indiana Mortgage").

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**

<u>KEY PRINCIPAL GUARANTY</u>

This Key Principal Guaranty ("Guaranty") is made and entered into effective the 3ʳᵈ day of May, 2006, by EDWARD H. OKUN, a Florida resident ("Guarantor"), for the benefit of Cordell Funding, LLLP, a Florida limited liability limited partnership ("Lender").

## BACKGROUND

A.    This Guaranty is being given in connection with the Secured Promissory Note of even date herewith made by Columbus Works Virginia Trust and Parkway Virginia Trust, as co-makers (collectively, the "Borrowers"), in favor of Lender (as amended from time to time, the "Note") evidencing that certain loan in the principal amount of $26,500,000 from Lender to Borrowers (the "Loan"). Guarantor will derive substantial financial benefit from the making of the Loan.

B.    Capitalized terms used in this Guaranty and not otherwise specifically defined shall have the same meaning in this Guaranty as in the Note.

FOR VALUE RECEIVED, and to induce Lender to extend credit to Borrowers as provided for in the Note and the other Loan Documents, Guarantor, having an address as indicated below his name on the signature page of this Guaranty, hereby unconditionally agrees as follows:

1.    <u>Guaranty</u>. Guarantor, as a primary party and not merely as a surety, jointly and severally, unconditionally and irrevocably guarantees the following (collectively, the "Guaranteed Obligations"):

1.1    The full, prompt and complete repayment of all of Borrowers' obligations under the Note;

1.2    The prompt and full payment (and not merely the collectability), performance and observance of all of the obligations, terms and conditions to be paid, performed or observed by Borrowers and/or Guarantor under the Note and/or the other Loan Documents.

1.3    The full, prompt and complete reimbursement of all costs, losses, expenses and damages exclusive of consequential damages (including reasonable attorneys' fees) sustained or incurred by Lender in enforcing the provisions of the Loan Documents and/or this Guaranty, including costs of collection described in Section 16.

Guarantor's obligations under this Guaranty are secured pursuant to the the Membership Interest Pledge Agreement each dated as of even date herewith and made by Guarantor for the benefit of Lender as the same may be amended from time to time (the "Pledge Agreement"). Guarantor hereby acknowledges and agrees that Lender may at its option proceed directly and at once, without further notice, against Guarantor hereunder and under the Pledge Agreement, without proceeding against either Borrower, or any other person or other collateral for the

obligations secured by this Guaranty. Any sums payable by Guarantor under this Guaranty shall bear interest at the Default Interest Rate from the date of demand until the date paid.

This Guaranty shall survive and continue in full force and effect beyond and after the payment, performance and satisfaction of the Guaranteed Obligations in the event Lender is required to disgorge or return any payment or property received as a result of any laws pertaining to preferences, fraudulent transfers or fraudulent conveyances.

This Guaranty is a guaranty of payment and performance and not of collection.

2.    Waivers. Guarantor hereby waives and relinquishes to the fullest extent now or hereafter not prohibited by applicable law:

2.1    All suretyship defenses and defenses in the nature thereof;

2.2    Any right or claim of right to cause a marshalling of the assets of Borrowers or of the collateral or, except as otherwise expressly provided herein, to cause Lender to proceed against any of the other security for the Guaranteed Obligations before proceeding under this Guaranty against Guarantor;

2.3    Until the payment and satisfaction of the Guaranteed Obligations, any rights against Borrowers in respect of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to indemnitors, guarantors, sureties or accommodation parties. Provided, however, unless Lender otherwise expressly agrees in writing, such waiver by Guarantor shall not be effective to the extent that by virtue thereof Guarantor's liability under this Guaranty or under any other Loan Document is rendered invalid, voidable, or unenforceable under any applicable state or federal law dealing with the recovery or avoidance of so-called preferences or fraudulent transfers or conveyances or otherwise;

2.4    Notice of the acceptance hereof and, except for notices and demands specifically required under this Guaranty, presentment, demand for payment, protest, notice of protest, or any and all notice of nonpayment, nonperformance, nonobservance or default, or other proof or notice of demand whereby to charge Guarantor under this Guaranty; and

2.5    The pleading of any statute of limitations as a defense to Guarantor's Obligations under this Guaranty.

Any and all payments made by Borrowers, or any person other than Guarantor, and any and all payments, proceeds, credits or other sums received by Lender on account of the Loan Documents whether arising from the disposition of collateral, or otherwise, shall be applied first, without modifying, releasing or reducing the Guaranteed Obligations, to reduce that portion of the obligations not guaranteed by Guarantors under this Guaranty, and only thereafter to the Guaranteed Obligations.

3.    Cumulative Rights. Lender's rights under this Guaranty shall be in addition to and not in limitation of all of the rights and remedies of Lender under the other Loan Documents. All rights and remedies of Lender shall be cumulative and may be exercised in such manner and

2

certified mail, or (ii) hand delivered by any commercially recognized courier service or overnight delivery service such as Federal Express, or (iii) sent by facsimile transmission if a FAX number is designated below, provided a copy is also sent by first-class mail, addressed as follows:

If to Guarantor:

To the address set forth below its signature on the signature page(s) of this Guaranty.

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

All periods of notice shall be measured from the deemed date of delivery. A notice shall be deemed to have been given, delivered and received upon the earliest of: (i) if sent by such certified or registered mail, on the third Business Day following the date of post-mark, or (ii) if hand delivered by such courier or overnight delivery service, when so delivered or tendered for delivery during customary business hours on a Business Day at the specified address, or (iii) if facsimile transmission is a permitted means of giving notice, upon receipt as evidenced by confirmation.

8.    <u>No Oral Change</u>.  No provision of this Guaranty may be changed, waived, discharged, or terminated orally (in person or by telephone) or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge or termination is sought.

9.    <u>Parties Bound; Benefit</u>.  This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators and personal representatives, successors and assigns and shall be for the benefit of Lender, and any subsequent holder of any Lender's interest in the Loan and any owner of a participation interest therein.  In the event the interest of Lender under the Loan Documents is sold or transferred, then the liability of Guarantor to such Lender shall then be in favor of both such Lender and each subsequent holder of such Lender's interest therein, to the extent of their respective interests.

10.    <u>Partial Invalidity</u>.  Each of the provisions of this Guaranty shall be enforceable against Guarantor to the fullest extent now or hereafter not prohibited by applicable law.  The invalidity or unenforceability of any provision of this Guaranty shall not limit the validity or enforceability of each other provision of this Guaranty.

11.    <u>Governing Law</u>. This Guaranty and the rights and obligations of the parties under this Guaranty shall in all respects be governed by and construed and enforced in accordance with the internal laws of the State of Ohio, without giving effect to principles of conflicts of law. Lender may enforce its rights under this Guaranty and under the other Loan Documents, including, but not limited to, its rights to sue Guarantor or to collect any outstanding indebtedness in accordance with applicable law.  It is understood and agreed that this Guaranty was drafted, negotiated and delivered in the State of Ohio which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by the Loan Documents.

12.    CONSENT TO JURISDICTION. GUARANTOR AND LENDER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER. GUARANTOR AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. IN THE EVENT OF A DISPUTE UNDER THIS GUARANTY, GUARANTOR AND LENDER HEREBY AGREE THAT EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN FRANKLIN COUNTY, OHIO. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY GUARANTOR OR LENDER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY SAME.

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY AT ANY TIME AFTER THE SAME BECOMES DUE, WHETHER BY ACCELERATION OR OTHERWISE, IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO OR ANY OTHER COURT OF RECORD IN OR OF THE STATE OF OHIO OR ELSEWHERE, AND TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST THE GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF THE LENDER AGAINST GUARANTOR FOR THE AMOUNT THAT MAY BE DUE, WITH INTEREST AT THE RATE HEREIN MENTIONED AND COST OF SUIT, AND TO WAIVE AND RELEASE ALL ERRORS IN SUCH PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR AND RIGHTS OF APPEAL FROM THE JUDGMENT RENDERED. THE FOREGOING WARRANT OF ATTORNEY SHALL SURVIVE ANY JUDGMENT, AND, IF ANY JUDGMENT BE VACATED FOR ANY REASON, THE LENDER NEVERTHELESS MAY THEREAFTER USE THE FOREGOING WARRANTS OF ATTORNEY TO OBTAIN AN ADDITIONAL JUDGMENT OR JUDGMENTS AGAINST THE UNDERSIGNED.

13.    Financial Statements. Guarantor shall furnish or cause to be furnished to Lender when due all of the information with respect to the Guarantor required pursuant to Section 9.c. of the Note.

14.    Covenant of Guarantor. Guarantor shall pay, perform, observe and comply with all of the obligations, terms, covenants and conditions set forth in this Guaranty.

15.    Subordination. Guarantor hereby subordinates any and all claims which it now has, or in the future may acquire, as a creditor of Borrowers, to the prior payment and satisfaction in full of this Guaranty. If, prior to the payment and satisfaction of this Guaranty, Guarantor would, without reference to the provisions of this Section 15, be entitled to receive any payment on account of any claim of Guarantor against the Borrowers, all such payments shall be made instead to Lender until the Guaranteed Obligations have been paid and satisfied in

full, and each Guarantor hereby so directs. If any Guarantor receives any payment on account of any claim of each Guarantor against the Borrowers, such Guarantor shall immediately pay the same over to Lender to be applied to the payment or satisfaction of the Guaranteed Obligations, if any. Notwithstanding the foregoing, unless an Event of Default has occurred, and any such Event of Default has not been either waived or acknowledged to have been cured in writing by Lender, such Guarantor may receive and retain payments from the Borrowers.

16.    Legal Fees, Costs and Expenses.  Guarantor further agrees to pay upon demand all costs and expenses reasonably incurred by Lender or its successors or assigns in connection with enforcing any of the rights or remedies of Lender, or such successors or assigns, under or with respect to this Guaranty including, but not limited to, reasonable attorneys' fees and the out-of-pocket expenses and disbursements of such attorneys. Any such amounts which are not paid within 15 days of demand therefor shall bear interest at the Default Interest Rate from the date of demand until paid.

17.    Setoff, etc.  All accounts, deposits, securities, instruments and other property of Guarantor in the possession of Lender or any of its affiliates, whether for safekeeping or otherwise, may be applied or set-off against the Guaranteed Obligations, whether or not other collateral is then available to Lender.

18.    Time of Essence.  Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations under this Guaranty.

19.    Entire Agreement.  This Guaranty and the Pledge Agreement embody the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations.

20.    Incorporation by Reference.  The Preamble and the Recitals to this Guaranty are incorporated into this Guaranty as if the same were fully set forth in this Guaranty.

[Remainder of page intentionally left blank. Signature page follows.]

WITNESS the execution and delivery of this Guaranty as an instrument under seal as of the _____ day of May, 2006.

WARNING — BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

GUARANTOR:

EDWARD H. OKUN

Address: 394 Hibiscus Dr.
Miami Beach, FL 33139

**Other documents executed in connection with this loan are voluminous and will be provided to the Court at hearing.**

## ESCROW AGREEMENT

This Escrow Agreement (the "Agreement"), dated as of August 1, 2007 (the "Effective Date"), by and between CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Retirement Plan Trust ("Cordell Retirement"), CORDELL FUNDING, LLLP, a Florida limited liability limited partnership ("Cordell Funding"; together with Cordell Retirement, the "Lenders"), each having a mailing address of 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez; EDWARD H. OKUN ("Okun"), IPOFA SHREVEPORT INDUSTRIAL PARK, LLC, a Delaware limited liability company ("IPofA Shreveport"), SAM TRUSTEE SERVICES, LLC, a Virginia limited liability company, as trustee of the Columbus Works Virginia Trust created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005, and as trustee of the Parkway Virginia Trust created pursuant to the Irrevocable Trust Agreement dated February 22, 2005 ("Sam"), and IPOFA 5201 LENDER, LLC, a Delaware limited liability company ("IPOFA 5201"; together with IPofA Shreveport, Sam and Okun, the "Borrowers"), each having a principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235, and Wilmington Trust (the "Escrow Agent").

Lenders and Borrowers are in the process of negotiating a certain Loan Modification Agreement concerning the parties' rights and interests in connection with the loans referenced in Exhibit 1 hereto.

Pending the parties' completion of discussions, and execution and delivery of the referenced Loan Modification Agreement, Lenders and Borrowers have agreed to enter into this Escrow Agreement to memorialize certain interim agreements among them.

Lenders, Borrowers and Escrow Agent agree as follows:

1.    From and after the Effective Date, Lenders and Borrowers agree that Borrowers shall cause to be deposited into escrow all payments (the "Escrow Property") arising from and after August 1, 2007 from the following collateral: (i) the promissory notes (the "Notes") pledged by Borrowers to Lenders as collateral described in Exhibit 2 attached hereto and (ii) the rents to be received from the tenants listed on Exhibit 3 (after deduction for and payment of the reasonable and customary costs of operating such properties). Escrow Agent is willing to hold and distribute the Escrow Property in accordance with the instructions of Lenders, subject to the terms identified in this Agreement.

2.    The term (the "Term") of this Agreement commences on the Effective Date and will continue as to each individual Loan identified in Exhibit 1 hereto through the date that (a) all of Borrowers' obligations under such Loan is paid in full, together with interest, default interest, costs, and reasonable attorneys' fees as provided for under the respective loan documents and (b) as to each such Loan, Borrowers deliver to Escrow Agent lien satisfactions or assignments executed and delivered by Lenders as to the payment, satisfaction and release of such Loan.

3.    Lenders and Borrowers shall direct all obligors under the Notes listed on Exhibit 2 and tenants listed on Exhibit 3 to make all payments due from and after August 1, 2007 to Escrow Agent. All property deposited with Escrow Agent shall be and is

deemed transferred and delivered to Escrow Agent irrevocably and in trust for Lenders, subject in all respects to Lenders' respective liens and security interests (subject to paragraph 16 herein), with such funds to be distributed in accordance with Paragraph 4 below.

4.      On October 31, 2007, if the Term has not expired (*i.e.* all of Borrowers' obligations under each of the loans described in Exhibit 1 attached hereto have not been satisfied in full, as indicated by Borrowers' inability to deliver lien satisfactions or assignments executed and delivered by Lenders for each of the loans described in Exhibit 1), Escrow Agent shall disburse the Escrow Property to Lenders with regard to any Loan not previously satisfied and released by Lender. Thereafter, Escrow Agent shall disburse the Escrow Property to Lenders on the sixth day of each month until the Term has expired as to each Loan that remains outstanding on such date. Upon Borrowers' satisfaction and repayment in full of their obligations under a Loan(s) described in Exhibit 1 attached hereto, and the release thereof by Lender, as indicated by Lender executing and delivering either lien satisfactions or assignments for each of the loans, (a) the Escrow Agent shall disburse to Borrowers any Escrow Property relating to such satisfied Loan(s), and (b) all obligations on the part of each of (i) Borrowers, (ii) the payees of the applicable Note(s) identified in Exhibit 2 hereto, and (iii) the tenants for the affected properties relating to the satisfied Loan(s) identified in Exhibit 3 hereto, to deposit and pay over to the Escrow Agent the Escrow Property described in Paragraph 1 hereof shall terminate. Upon Borrowers' satisfaction and repayment in full of their obligations under a Loan(s) described in Exhibit 1 attached hereto, and the release thereof by Lender (as provided herein), Lenders shall execute and deliver to Borrowers an appropriate form of notice to the payees of the applicable Note(s) identified in Exhibit 2 hereto and the tenants for the affected properties relating to the satisfied Loan(s) identified in Exhibit 3 hereto terminating the payment and escrow directions previously provided them.

5.      Borrowers and Lenders further agree that anything herein to the contrary notwithstanding, Borrowers shall not be permitted to pay and satisfy in full, or have purchased, any of the Loans identified as items (a), (b) and (c) in Exhibit 1 hereto unless all three (3) such Loans are paid, satisfied and released, or purchased, simultaneously. Escrow Property (i.e. receipts) from the collateral described as item 1 of Exhibit 2 shall be maintained by Escrow Agent in a segregated account not to be commingled with other Escrow Property. Additionally, Borrowers and Lenders further agree that in the event Borrowers have not satisfied and paid in full the Loan identified as item (a) in Exhibit 1 hereto prior to the expiration of the Term of this Agreement, the Escrow Property deposited with the Escrow Agent in respect of the Loans identified as items (b) and (c) in Exhibit 1 hereto shall not be released to Borrowers at the expiration of the Term hereof, and instead shall be paid over to Lenders as provided herein as additional collateral for said Loans.

6.      All notices shall be sent via first class mail, postage prepaid, or by facsimile promptly followed by mailing such notice via first class mail, postage prepaid, to the addresses and/or facsimile numbers provided on the signature page of this Agreement. Notice shall be effective as of the time of deposit in the mail or, in the event of initial facsimile transmission, upon the successful transmission of such facsimile, except

that any notice given to Escrow Agent shall not be deemed given until actually received.

7.   Lenders and Borrowers agree to hold Escrow Agent harmless and shall indemnify Escrow Agent against any act it may do or omit to do as agent, except for acts that constitute gross negligence or willful misconduct. Any act done or omitted by Escrow Agent on the advice of its own attorneys shall be deemed conclusively to have been done or omitted in good faith. Escrow Agent shall have the right at any time to consult with counsel on any question arising under this Agreement. Escrow Agent shall incur no liability for any delay reasonably required to obtain the advice of counsel.

8.   Escrow Agent is authorized to rely on the apparent authority and identity of the Lenders and Borrowers in executing or delivering these instructions or any notices, documents or papers given, deposited or called for under this Agreement.

9.   Escrow Agent shall invest the Escrow Property in the Wilmington U.S. Government Money Market Fund, a mutual fund managed by Rodney Square Management Corporation, a subsidiary of Escrow Agent. The parties acknowledge that shares in this mutual fund are not obligations of Wilmington Trust Company, are not deposits and are not insured by the FDIC. Escrow Agent or its affiliates are compensated by this mutual fund for services rendered in its capacity as investment advisor, custodian and/or transfer agent; Wilmington Trust Company, or its affiliates, are also compensated by these mutual funds for providing shareholder and distribution services; and such compensation is both described in detail in the prospectus for the fund, and is in addition to the compensation, if any, paid to Wilmington Trust Company in its capacity as Escrow Agent hereunder. Escrow Agent, in its capacity as Escrow Agent, shall not be accountable or liable for any losses resulting from the sale or depreciation in the market value of such investments.

10.  Escrow Agent shall track each of the payments received into the Escrow Property, and Borrowers shall provide to Escrow Agent promptly any additional information to enable Escrow Agent to properly account for such receipts and to perform its functions and duties as Escrow Agent.

11.  Escrow Agent shall not be a party to and shall not be bound by any agreements related hereto other than this Agreement. Furthermore, Escrow Agent shall have no duty to know or determine the performance or nonperformance of any provision of any agreement that exists between the Lenders and Borrowers and any other third parties or any of its members. Escrow Agent assumes no responsibility for the validity, accuracy, or sufficiency of any documents or papers delivered to it by Lenders and Borrowers.

12.  Each of Lenders and Borrowers shall provide Escrow Agent with a Form W-9. Interest accruing on the Escrow Property shall be paid to the party entitled to receive the Escrow Property.

13.  Escrow Agent is expressly authorized to disregard any and all notices or warnings given by any person or entity other than Lenders and Borrowers, except orders or

process of a court, with or without jurisdiction. Escrow Agent is expressly authorized to comply with and obey any and all court orders, judgments or decrees. Escrow Agent shall not be liable to Lenders and Borrowers or to any other person or entity by reason of compliance with any court order, notwithstanding that such order, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated, or found to have such been entered without jurisdiction.

14. This Agreement shall be administered in accordance with the laws of the State of New York. In the event of any dispute arising under this Agreement, New York law will govern. With respect to the disposition of the Escrow Property, Escrow Agent may deposit the property held in escrow with the Clerk, or acting Clerk, of the District Court of the City and County of New York, State of New York. Escrow Agent may interplead the Lenders and Borrowers and their members. Upon deposit of the Escrow Property and filing a complaint in interpleader, Escrow Agent shall be relieved of all liabilities under the terms of this Agreement. The Lenders and Borrowers shall submit themselves to the jurisdiction of the District Court and shall appoint the Clerk, or acting Clerk, of the District Court, as their agent for the service of all process in connection with such proceedings.

15. Escrow Agent may resign at any time by giving written notice to the Lenders and Borrowers pursuant to Section 5 hereof. Resignation shall be effective 10 days after such notice has been deposited in the mail or, in the event of initial facsimile transmission, upon the sending of facsimile. If a successor agent has not been appointed within such 10 day period, Escrow Agent may petition any court of competent jurisdiction or may interplead the Escrow Property in a proceeding for the appointment of a successor Escrow Agent, and all fees, including but not limited to extraordinary fees associated with the filing of interpleader, and expenses associated therewith shall be deducted from the Escrow Property.

16. The Lenders and Borrowers agree to indemnify and hold harmless Escrow Agent for any loss, expense or liability incurred without gross negligence or bad faith to any person or entity arising out of or in connection with having accepted or administered the Escrow Agreement and to reimburse all expenses, including, among other things, attorney fees and court costs. Escrow Agent shall have a first and prior lien on the Escrow Property to secure its indemnification and payment of fees and expenses. In the event payment is not received promptly from the Lenders and Borrowers (each shall be responsible for payment of half of such fees and expenses), Escrow Agent is authorized to deduct from the Escrow Property fees and expenses without prior notice. Escrow Agent shall not be liable for the acts or omissions of any vendors or service providers hired in connection with this Agreement.

17. This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute one and the same document.

18. This Agreement may not be altered, amended, modified or revoked except pursuant to a writing signed by Lenders, Borrowers and Escrow Agent.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first set forth above.

**BORROWERS:**

_____
Edward H. Okun, Individually
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

IPOFA 5201 LENDER, LLC,
By: IPofA Fund Management, LLC, a Virginia limited liability company, its Manager
    By:_____
    Name: *EDWARD H. OKUN*
    Its: *MANAGER*
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

SHREVEPORT INDUSTRIAL PARK, LLC
By:    IPofA Fund Manager, LLC, its Manager
    By:_____
    Name: *EDWARD H. OKUN*
    Its: *MANAGER*
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005
    By:_____
    Name: _____
    Its: _____
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

Aug 02 07 04:10p    Natural Body Midtown    404-574-4410    p.2

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first set forth above.

**BORROWERS:**

_____
Edward H. Okun, Individually
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

IPOFA 5201 LENDER, LLC
By: IPofA Fund Manager, LLC, a Virginia limited liability company, its Manager
     By:_____
     Name:_____
     Its:_____
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

SHREVEPORT INDUSTRIAL PARK, LLC
By:    IPofA Fund Manager, LLC, its Manager
     By:_____
     Name:_____
     Its:_____
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005
     By:_____
     Name: Sherrill Melody
     Its: Sole Member
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

{00278046.DOC;2}

5

SHREVEPORT INDUSTRIAL PARK, LLC
By:    IPofA Fund Manager, LLC, its Manager
    By: _____
    Name: _____
    Its: _____
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005.
    By: _____
    Name: Sherrill A. Melroy
    Its: Sole Member
c/o Investment Properties of America, LLC
10800 Midlothian Turnpike, Suite 309
Richmond, Virginia 23235
Facsimile:

7

**LENDERS:**

CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN,
a Qualified Retirement Plan Trust

By: *Robin Rodriguez*

Name: Robin Rodriguez
Its: Trustee and Administrator
Attention: Robin Rodriguez
3333 Poinciana Avenue
Coconut Grove, Florida 33133
Attention: Robin Rodriguez
Facsimile:

CORDELL FUNDING, LLLP

By: *Robin Rodriguez*

Name: Robin Rodriguez
Its: Managing Partner
Attention: Robin Rodriguez
3333 Poinciana Avenue
Coconut Grove, Florida 33133
Facsimile:

**ESCROW AGENT:**

WILMINGTON TRUST COMPANY

By: _____
Name: David B. Young
Its: Assistant Vice President
Rodney Square North
1100 N. Market Street
Wilmington DE 19890
Facsimile: (302) 636-4149

**LENDERS:**

CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN,
a Qualified Retirement Plan Trust

By: _____
Name: _____
Its: _____
Attention: Robin Rodriguez
3333 Poinciana Avenue
Coconut Grove, Florida 33133
Attention: Robin Rodriguez
Facsimile:

CORDELL FUNDING, LLLP
By: _____
Name: _____
Its: _____
Attention: Robin Rodriguez
3333 Poinciana Avenue
Coconut Grove, Florida 33133
Facsimile:

**ESCROW AGENT:**

WILMINGTON TRUST COMPANY

By: _____
Name: David B. Young
Its: Assistant Vice President
Rodney Square North
1100 N. Market Street
Wilmington DE 19890
Facsimile: (302) 636-4149

# EXHIBIT 1

(a) $2,500,000 loan to IPofA 5201, which loan is evidenced by that certain Promissory Note dated December 12, 2006 from IPofA 5201 payable to the order of Cordell Retirement (the "5201 Note"), repayment of which 5201 Note is secured by, among other things, a pledge to Cordell Retirement of IPofA 5201's interest in that certain Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000 made by WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), the Mortgage and Security Agreement dated February 2, 2005 made by Obligor and IPofA West 86th Street LeaseCo, LLC to Morgan Stanley, and the other Loan Documents described in the 5201 Note.

(b) $3,000,000 loan to Edward H. Okun, which loan is evidenced by that certain Promissory Note dated December 19, 2006 from Edward H. Okun payable to the order of Cordell Retirement (the "$3mil Okun Note"), repayment of which $3mil Okun Note is secured by, among other things (i) that certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Derive, Carmel, Indiana, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida, and (iv) the other Loan Documents described in the $3mil Okun Note.

(c) $7,000,000 loan to Edward H. Okun, which loan is evidenced by that certain Promissory Note dated April 20, 2007, from Edward H. Okun payable to the order of Cordell Retirement (the "$7mil Okun Note"), repayment of which $7mil Okun Note is secured by, among other things (i) that certain third priority Mortgage Deed and Security Agreement dated April 20, 2007 encumbering the premises at 394 S. Hibiscus Drive, Miami Beach, Florida 33139, (ii) Collateral Assignment of Membership Interest dated April 20, 2007 by which the membership interest in IPofA Salina Central Mall Member, LLC were assigned to Cordell Retirement, and (iii) the other Loan Documents described in the $7mil Okun Note.

(d) $26,500,000 loan to Sam Trustee Services, LLC, trustee, which loan is evidenced by that certain Promissory Note dated May 3, 2006, from Sam Trustee Services, LLC, as trustee of the Columbus Works Virginia Trust and of the Parkway Virginia Trust, payable to the order of Cordell Funding (the "Sam Note"), repayment of which Sam Note is secured by, among other things a Collateral Assignment, a Security Agreement, a Guaranty, a Stock Pledge Agreement, a Membership Interest Pledge and the other Loan Documents described in the Sam Note.

(e) $13,416,000 loan to IPofA Shreveport Industrial Park, LLC, which loan is evidenced by that certain Promissory Note dated February 26, 2007, from IPofA Shreveport Industrial Park, LLC payable to the order of Cordell Funding (the "Shreveport Note"), repayment of which Shreveport Note is secured by, among other things a Loan Agreement, Promissory Note, Mortgage, Security Agreement and Assignment of Leases and Rents, Guaranty Agreement and the other Loan Documents described in the Shreveport Note and related Loan Agreement.

**EXHIBIT 2**

1.    The Promissory Note dated February 2, 2005 in the original principal amount of $7,100,000 made by WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC to Morgan Stanley Mortgage Capital Inc.

2.    The Promissory Note dated July 8, 2005 with a principal amount of $27,000,000 payable by IPofA Columbus Works, LLC to Columbus Works Trust.

3.    The Promissory Note dated March 1, 2005 with a principal amount of $2,000,000 payable by IPofA Parkway Complex, LLC to Parkway Trust.

## EXHIBIT 3

### Tenant Rents

Tenants of the Indiana Warehouse, Columbus Works and Parkway Plaza include, but are not limited to, the following:

Shenker Logistics

Eagle Sales & Engineering

Solo Source LLC

Pinnacle Oil

Q-Hub Logistics

Stanley Best

Lucent Technology

[LOUISIANA PROPERTY TENANTS]

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (this "Agreement") is entered as of August 10, 2007 by and among CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Retirement Plan Trust ("Cordell Retirement"); CORDELL FUNDING, LLLP, a Florida limited liability limited partnership ("Cordell Funding"; together with Cordell Retirement, the "Lenders"), each having a mailing address of 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez; EDWARD H. OKUN ("Okun"), IPOFA SHREVEPORT INDUSTRIAL PARK, LLC, a Delaware limited liability company ("IPofA Shreveport"), SAM TRUSTEE SERVICES, LLC, a Virginia limited liability company, as trustee of the Columbus Works Virginia Trust created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005, and as trustee of the Parkway Virginia Trust created pursuant to the Irrevocable Trust Agreement dated February 22, 2005 ("Sam"), and IPOFA 5201 LENDER, LLC, a Delaware limited liability company ("IPOFA 5201"; together with IPofA Shreveport, Sam and Okun, the "Borrowers"), each having a principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

## WITNESSETH:

WHEREAS, Cordell Retirement is the payee under the loans described in Exhibit 1 annexed hereto (collectively, the "Cordell Retirement Loans"), and the holder of the Loan Documents (as defined in the respective Promissory Note for each loan) which evidence and secure repayment of such loans (the "Cordell Retirement Loan Documents"); and

WHEREAS, Cordell Funding is the payee under the loans described in Exhibit 2 annexed hereto (collectively, the "Cordell Funding Loans"; together with the Cordell Retirement Loans, the "Loans"), and the holder of the Loan Documents (as defined in the respective Promissory Note or Loan Agreement for each loan) which evidence and secure repayment of such loans (the "Cordell Funding Loan Documents"; together with the Cordell Retirement Loan Documents, the "Loan Documents"); and

WHEREAS, as a result of Borrowers' failure to timely pay the May 1, 2007, June 1, 2007, July 1, 2007 and August 1, 2007 installments of interest due pursuant to the Loan Documents, and continuing defaults/cross-defaults thereafter, certain Defaults and Events of Defaults have occurred and are continuing under the Loan Documents (such Defaults and Events of Default hereinafter referred to collectively as the "Specified Events of Default"); and

WHEREAS, Borrowers have received notices of the Specified Events of Default in respect of each Loan; and

WHEREAS, each Borrower acknowledges that, to date, none of the Specified Events of Default have been cured; and

WHEREAS, each Borrower acknowledges that each of the Loans is in default and has been accelerated; and

WHEREAS, as a result of the Specified Events of Default, Lenders noticed the sale of certain collateral pursuant to the Uniform Commercial Code and have begun to take additional steps to enforce their respective interests, claims, and liens against the Borrowers and respective collateral; and

WHEREAS, the Loans are supported by good and valuable consideration, the receipt of which is and has been acknowledged by each Borrower; and

WHEREAS, Borrowers have requested that Lenders modify the terms of and forbear from the exercise of the remedies available to them under the Loan Documents as a result of the occurrence of the Specified Events of Default; and

WHEREAS, Lenders are willing to modify such terms and grant such forbearance, but only upon the terms and subject to the conditions and limitations specified in this Agreement; and

WHEREAS, Borrowers and Lenders executed a certain Escrow Agreement (as defined below) as provided for pursuant to Section 2.4 below and the respective Borrowers as the case may be, have directed that all required payments beginning with the August 1, 2007 payments as provided for under Section 2.4 be paid to the Escrow Agent in accordance with Section 2.4; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## SECTION 1. DEFINITIONS

1.1    The following terms used in this Agreement shall have the meanings set forth below:

"Escrow Agreement Default" means (i) any failure of Borrowers to make the payments due pursuant to Section 1(i) of that certain Escrow Agreement dated August 1, 2007 between Lenders and Borrowers (the "Escrow Agreement") on or before the 5th business day of each month during the term of the Escrow Agreement (or the date hereof with regard to the August, 2007 payments); or (ii) any failure of Borrowers to make the payments due pursuant to Section 1(ii) of the Escrow Agreement and to provide a true and correct balance sheet showing in detail acceptable to Lenders the rent collections for such month and the expected ordinary and customary operating expenses to be incurred for such month, on or before the 10th business day of each month during the term of the Escrow Agreement (or the date hereof with regard to the August, 2007 payments).

"Modification Default" means any one the following: (a) except as otherwise expressly provided in Section 5.2(b) of this Agreement, the occurrence of any Default or Event of Default (other than the Specified Events of Defaults) under the Loan Documents; (b) in the event that a plan of reorganization (the "Plan"), disclosure statement (the "Disclosure Statement"), and proposed order fixing hearings on approval of the foregoing are not filed in the bankruptcy cases of The 1031 Tax Group, LLC, et al. ("1031 Tax Group"), Lead Case No. 07-11488 (MG), pending in Bankruptcy Court for the Southern District of New York on or before August 6, 2007, which Plan includes a request for approval of an agreement or agreements between Okun, each

2

of the respective debtors, official creditors' committee ("Creditors' Committee") and JPS Capital Partners, LLC as lender (or other bona fide lender) for new financing (the "New Financing") whose sole or part purpose is to repay the Cordell Funding Loans and which is in sufficient sums to repay the principal balance of the Cordell Funding Loans in full on or before the earlier of (i) the closing on any such financing agreement or (ii) November 1, 2007; (c) in the event that such a Plan containing the required provisions as detailed above, is not confirmed on or before September 30, 2007; (d) [intentionally omitted]; (e) in the event that the Cordell Funding Loans have not been repaid in full (together with interest, default interest, attorneys fees, and any and all other charges and costs provided under the Loan Documents) on or before the earlier of the funding of the New Financing or November 1, 2007; (f) in the event that the Cordell Retirement Loans have not been made current in full (together with interest, default interest, attorneys fees, and any and all other charges and costs provided under the Loan Documents, but excluding the principal balance of the Cordell Retirement Loans) and an additional $2 million has been paid against the then outstanding principle balance owed on the $7mil Okun Note, on or before the earlier of the funding of the New Financing or November 1, 2007; (g) in the event that title to the properties provided for under Section 5.1(e) are not transferred to Cordell Retirement as required thereunder; (h) in the event any action is commenced against Lenders or any of Lenders officers, directors, or agents, including, but not limited to Robin Rodriguez, for any reason whatsoever other than to enforce this Agreement, by any party, including, but not limited to Borrowers, 1031 Tax Group or the Creditors' Committee; (i) in the event of the filing of a bankruptcy petition by or against any of the Borrowers, the appointment of a receiver or assignee for the benefit of creditors or any other court appointed representative over the assets of Borrowers other than as expressly provided for hereunder; (j) the failure of Borrowers to comply with any term, condition or covenant in all material respects set forth in this Agreement; (k) any representation made by Borrowers in this Agreement shall have been false or misleading as of the date when made; (l) in the event there is any Escrow Agreement Default; or (m) any other obligation of Borrowers set forth in this Agreement is not timely complied with in full, as determined by Lenders. Nothing herein shall be construed as consent to financing against any of Lenders' collateral, or to waiver of anything whatsoever contained in the Loan Documents except as expressly provided in this agreement. In addition, notwithstanding anything contained herein or under the Loan Documents to the contrary, it is agreed that Lenders shall not be required to release any of their respective collateral regarding the Cordell Funding Loans, until and unless all obligations required hereunder have been paid, including but not limited to payment of all obligations due under the Cordell Funding Loans (including, but not limited to principal, interest, default interest, attorneys fees, and any and all other charges and costs), payment of $2 million against the $7mil Okun Note, transfer to Cordell Retirement of title to the properties required to be transferred pursuant to Section 5.1(e), and payment and cure of any and all then outstanding obligations required to bring current the Cordell Retirement Loans, including, but not limited to interest, default interest, attorneys fees and any and all other charges and costs, but excluding the principal balances thereof. In addition, notwithstanding anything contained herein to the contrary, Lenders shall not release any of their respective collateral regarding the Cordell Retirement Loans, until and unless all obligations required to be paid under such Loans have been paid in full, including, but not limited to interest, default interest, attorneys fees, and any and all other charges and costs.

"Maturity Date" means the earliest to occur of (a) 5:00 p.m. Eastern Time on November 1, 2007, (b) the date upon which a Modification Default occurs, or (c) the date of the first funding of the New Financing.

## SECTION 2. AGREEMENT TO FORBEAR

2.1    Borrowers, 1031 Tax Group, and Creditors' Committee agree to execution and filing of the Plan, execution of a financing agreement or agreements and obtaining all necessary approvals for same, all of which shall provide for the repayment of the Cordell Funding Loans in full (together with interest, default interest, attorneys fees, and any and all other charges and costs provided under the Loan Documents), the repayment or cure of the Cordell Retirement Loans (together with interest, default interest, attorneys fees, and any and all other charges and costs provided under the Loan Documents), payment of an additional $2 million against the $7mil Okun Loan, and transfer of title to the properties provided for under Section 5.1(e), as provided under Paragraph 1.1 above. In addition, Borrowers, 1031 Tax Group and Creditors' Committee agree that Lenders shall be expressly excluded from any channeling or other injunctions provided for under the Plan. Provided that no Modification Default occurs, except as set forth below, from and after the execution of this Agreement by all parties, Lenders, through the Maturity Date, hereby agree to modify the Loan Documents solely as provided herein and to forbear and refrain from exercising their respective rights and remedies under the Loan Documents that may exist because of the Specified Events of Default. In addition, provided Lenders are excluded from any channeling or other injunction provided for under the Plan, Lenders agree not to oppose the Plan as same exists on the date hereof (and as modified to exclude Lenders from the injunction) or as same may be modified hereafter provided no such modifications negatively impact on Lenders.

2.2    Except as explicitly provided in this Agreement, nothing in this Agreement shall be construed as a waiver, cure or elimination, in whole or in part, of the Specified Events of Default, which defaults shall continue in existence subject only to the agreement of Lenders not to enforce their respective rights and remedies for a limited period of time as set forth herein. The execution and delivery of this Agreement shall not: (a) constitute an amendment, extension, modification, or waiver of any aspect of the Loan Documents, except as specifically provided herein; (b) extend the due date of any payments required by the Loan Documents (the "Obligations"); (c) give rise to any obligation on the part of Lenders to extend, modify or waive any term or condition of the Loan Documents; (d) give rise to any defenses or counterclaims to the right of Lenders to compel payment of the Obligations or to otherwise enforce their respective rights and remedies under the Loan Documents; or (e) waive the right of Lenders to collect default interest and/or late fees provided for in the Loan Documents with regard to the Specified Events of Default. Except as expressly limited herein, Lenders hereby expressly reserve all of their respective rights and remedies under the Loan Documents and under applicable law with respect to such Specified Events of Default. Except as expressly provided herein, Borrowers expressly acknowledge and agree that the parties have not entered into a mutual disregard of the terms and provision of the Loan Documents, or engaged in any course of dealing in variance with the terms and provision of the Loan Documents. Each Borrower further expressly acknowledges that from and after the Maturity Date, each Lender shall be entitled to enforce the Loan Documents and require strict compliance with all of the terms and provisions of the Loan Documents.

4

2.3    Should a Modification Default occur, Lenders retain the right to reinstate its U.C.C. sales and other enforcement actions against Borrowers based on the Specified Events of Default pursuant to the provisions of the Loan Documents.

2.4    Lenders and Borrowers confirm that they have entered into the Escrow Agreement which is in full force and effect. Wilmington Trust is serving as Escrow Agent under the Escrow Agreement. It is confirmed by Borrowers and Lenders that all property deposited with the Escrow Agent shall be and is deemed transferred and delivered to the Escrow Agent irrevocably and in trust for Lenders as expressly provided for in the Escrow Agreement and subject in all respects to Lenders respective liens and security interests. Notwithstanding the transfer of property to the Escrow Agent, the amounts due to Lenders shall not be reduced by any amounts so deposited, and default interest shall continue to accrue on the full amount due on the Loans unless the escrow has been released to Lenders and only to extent applied by Lenders for such purpose all of which is subject to Paragraph 5.2(a) below.

## SECTION 3. CROSS DEFAULT AND CROSS COLLATERALIZATION

3.1    In addition to any and all other rights of Lenders, each Borrower for the Cordell Retirement Loans hereby agrees that from and after the date hereof, upon the occurrence of an Event of Default under any particular Cordell Retirement Loan, such Event of Default shall be deemed an Event of Default under all of the other Cordell Retirement Loans, allowing Cordell Retirement to exercise all remedies provided for in the Cordell Retirement Loan Documents upon the occurrence of an Event of Default.

3.2    Each Borrower hereby agrees that the collateral given as security for the performance of the obligations of each Borrower under its applicable Cordell Retirement Loan or Cordell Retirement Loans shall serve as collateral security for the performance of all of the obligations of each other Borrowers under its applicable Cordell Retirement Loan or Cordell Retirement Loans. Each Borrower under the Loans shall execute, or cause to be executed, such other documents as Lenders may require effectuating this Agreement, and with respect to Cordell Retirement Loans, the cross collateralization, not later than three (3) business days after execution of this Agreement unless otherwise agreed by Lenders in writing. The Borrowers and to the extent applicable, 1031 Tax Group and/or Creditors' Committee, shall take all reasonable and necessary steps to effectuate this Agreement.

3.3    None of the (i) Cordell Retirement Loans may be satisfied in full unless all of the Cordell Retirement Loans are satisfied in full, including, but not limited to legal fees and related costs simultaneously and (ii) Cordell Funding Loans may be satisfied in full or purchased unless all of the Cordell Retirement Loans are made current in full, including, but not limited to interest, default interest, legal fees and related costs, the Okun Note has been paid down by $2 million, and title to the properties required to be transferred to Cordell Retirement under Section 5.1(e).

3.4    None of the Cordell Retirement Loans may be purchased unless all of the Cordell Retirement Loans are purchased. The purchase price for the Cordell Retirement Loans shall include principal, non-default interest, default interest (reduced as provided for in Section 5.2(a)) as set in from the date of the original defaults until paid in full, legal fees and related costs,

## SECTION 4. REPRESENTATIONS, WARRANTIES, AND COVENANTS

In consideration of this Agreement, each Borrower hereby represents, warrants and covenants in favor of the each Lender as follows:

4.1     Each Borrower has the individual, limited liability company or corporate power and authority (a) to enter into this Agreement, and (b) to do all acts and things as are required or contemplated hereunder to be done, observed and performed by it. Each of the trusts for which Sam is trustee is in existence and Sam is duly appointed and currently serving as trustee for each trust.

4.2     This Agreement has been duly authorized, validly executed and delivered by one or more authorized signatories of each of the entity Borrowers and constitutes the legal, valid and binding obligation of each Borrower, enforceable against each Borrower in accordance with its terms.

4.3     The execution and delivery of this Agreement and performance by each Borrower does not and will not require the consent or approval of any regulatory authority or governmental authority, court or agency having jurisdiction over any Borrower that has not already been obtained, nor contravene or conflict with the formation, charter or organizational documents of each entity Borrower, or the provisions of any statute, judgment or order to which any Borrower is a party or by which any of their respective properties are or may become bound.

4.4     The outstanding indebtedness owing under the Loan Documents for each Loan as of July 31, 2007 totals the amounts set forth on Exhibit 3 attached hereto, plus costs, expenses and other fees and charges as provided in the Loan Documents and any and all continuing obligations under the Loan Documents, including but not limited to default interest, costs and fees as they accrue in the normal course. Lender's legal fees through the date of this Agreement aggregate not less than $250,000, which amount Borrowers hereby acknowledge and approve. Payment of the entire amount of Lender's legal fees shall be a condition precedent to any satisfaction or conveyance of any of the Cordell Funding Loans.

4.5     Borrowers acknowledge that the Specified Event of Default has occurred, and that they have no defenses or counterclaims with regard thereto. Borrowers are not aware of any other existing Events of Default or Defaults which with the passage of time or the giving of notice would be deemed an Event of Default. Borrowers agree to execute the annexed acknowledgment of liability and affidavit of confession of judgment regarding the Cordell Retirement Loans substantially in the form attached hereto as Schedule 4.5, which shall be held in escrow by Lenders' counsel and not released until and unless there is a Modification Default as provided hereunder. In the event that the Cordell Retirement Loans are made current and the monthly payments are timely made under each Cordell Retirement Loan for three consecutive months after being made current, and further provided no other material Event of Default (as defined in the Loan Documents) has occurred and remains outstanding, upon request made by Borrowers Lenders shall return the acknowledgment of liability and affidavit of confession of judgment to Borrowers.

4.6     Borrowers hereby reconfirm all of the representations and warranties made by each Borrower in the Loan Documents, and acknowledge that all such representations and warranties are true and correct as of the date hereof. Borrowers further agree, represent, and warrant that there are outstanding balances as of the date hereof as follows: (i) on the $7.1 Million Note of not less than $5.92 million; (ii) on the $26.5 Million Columbus Works Note of not less than $23,501,652.6 and (iii) on the $2 Million Parkway Plaza Note of not less than $2,000,000, and that Borrowers shall not directly or indirectly, by acts or omissions, cause the reduction in such principal balance unless and until the respective loans hereunder have been paid in full (including interest, default interest, legal fees and other costs provided for in the Loan Documents), other then as a result of regular monthly scheduled payments.

4.7     Immediately after giving effect to the transactions contemplated by this Agreement, Borrowers shall have adequate capital to carry on their respective businesses. No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated by this Agreement with the intent to hinder, delay or defraud either present or future creditors of Borrowers.

## SECTION 5. COVENANTS AND AGREEMENTS

5.1     In order to induce Lenders to enter this Agreement, each Borrower hereby covenants and agrees as follows:

(a)     Except as otherwise expressly provided in Section 5.2(b) of this Agreement, Borrowers shall continue to timely perform and observe all terms and conditions contained in the Loan Documents that are not specifically mentioned in this Agreement as Specified Events of Default.

(b)     Borrowers waive any defense, claim or offset which they may have with regard to the payment of the Obligations, as and when same are due.

(c)     Borrowers acknowledge that Lenders have complied with each of their respective obligations set forth in the Loan Documents to be performed by each Lender as of the date hereof.

(d)     Borrowers acknowledge that no Lender is required to make any further advances to any Borrower pursuant to the Loan Documents.

(e)     Within five (5) business days of the date hereof Borrowers shall cause good and marketable fee title to the house located at 10548 Coppergate Drive, Carmel, Indiana (the "House") and the condominium units designated as condominium unit 1808 at 901 Brickell, Miami, Florida and condominium unit 3404 at 901 Brickell, Miami, Florida (the "Condominiums") to be conveyed and transferred to Cordell Retirement (or such entity as is designated by Cordell Retirement, which for purposes of the House and Condominiums, shall also be referred to herein as Cordell Retirement) to be applied against the outstanding amounts due on the Cordell Retirement Loans in partial (or full, if applicable) satisfaction of such loans solely as provided in Section 5.2 below, with Cordell Retirement expressly retaining any and all deficiency claims, together with all other outstanding obligations, including default interest, interest, attorneys, costs, and any and all other costs under the respective Loan Documents. The

House is to transferred and conveyed free and clear of any liens, tenancies or occupants and in good condition, other then the lien in favor of Cordell Retirement. The Condominiums are to be transferred and conveyed free and clear of any liens, tenancies or occupants and in good condition, other then the lien in favor of Cordell Retirement and the leases attached hereto as Exhibit 4. Borrowers shall cause warranty deeds (or local equivalents) and all other required conveyance documents for the House and Condominiums (which have been prepared by Lenders) to be duly executed and delivered to Lenders within five business days of the date hereof. Though Lenders shall record all such deeds, Borrowers shall be liable for all costs and expenses incurred by Lenders in connection therewith, including, without limitation, transfer taxes, recording fees, and fees required to be paid to the Condominiums condominium association (if any). Within the five business day period Borrowers shall also execute an assignment of leases regarding the Condominium leases and a notice to the tenants informing them of the conveyance of the Condominiums to Cordell Retirement and directing that all rents are to be paid to Cordell Retirement. In addition, Borrowers shall upon the execution hereof deliver to Cordell Retirement the tenant security deposits paid by the tenants under the Condominium leases. (See below for Lender's covenants regarding the House and Condominiums).

(f)    Simultaneously with the first funding of the New Financing, in addition to other payments required to make the $7mil Okun Note Loan current, Borrowers shall pay an additional $2,000,000 to Cordell Retirement as a principal reduction of the $7mil Okun Note. Upon and subject to the Okun Note Loan having been brought current and payment of the additional $2 million to reduce the principal balance on such note as provided hereunder, Cordell Retirement agrees to and shall release its lien on the property located at 394 S. Hibiscus Drive, Miami Beach, Florida.

5.2    In order to induce Borrowers to enter this Agreement, each Lender hereby covenants and agrees as follows:

(a)    From the effective date of this Agreement through the Maturity Date, provided that no Modification Default occurs, the interest rate charged in respect of each Loan shall be a rate equal to the Default Rate (as set forth and defined in each Loan) less 5% per annum.

(b)    From August 1, 2007 through the Maturity Date, Borrowers' payment obligations under the Loan Documents shall be and are suspended and deferred. Unless each Loan has been fully paid or solely with respect to the Cordell Retirement Loans, have been made fully current (as described above) and Borrowers have timely and fully performed their respective obligations under this agreement (including, but limited to the timely payment of all required monies due and the transfer of property as required hereunder), immediately upon the Maturity Date, the Loans shall be and are deemed accelerated and are in default without any further or other notice by Lenders. Nothing contained herein shall affect Borrowers obligations under the Loan Documents upon a default other than with respect to the deferment of payments as expressly provided in this Paragraph 5.2(b) and the reduction in default interest as provided in Paragraph 5.2(a) above. Borrowers shall owe default interest as reduced hereunder on the full outstanding balance of all Loans and the deposit and transfer of funds into the escrow as provided under the Escrow Agreement shall not be deemed to and shall not reduce the aggregate

8

amounts due under the Loans or the obligation of Borrowers to pay default interest on all such amounts unless the funds held pursuant to the Escrow Agreement are released to Lenders and only to extent applied by Lenders for such purpose.

(c)     Upon the conveyance of good and marketable title to the House and Condominiums to Cordell Retirement, Cordell Retirement will place same for sale with regionally or nationally recognized third party real estate brokers in the area of the respective properties as it determines in its sole and exclusive discretion. Cordell Retirement may accept any bona fide good faith commercially reasonable offer under the circumstances which it receives for any of the properties in its sole discretion. The net amount of the sale proceeds received (after transfer taxes, legal fees, brokers commissions and any and all other costs of sale) shall be credited against the amount due with regard to the $3mil Okun Note and then towards the other Cordell Retirement Loans in such manner or order as Cordell Retirement may determine in its sole and absolute discretion. As provided above, Cordell Retirement shall maintain a continuing claim for any additional amounts outstanding, including any deficiency claims, as well as all other obligations due under the Loan Documents. In the event that Borrowers pay the full amount of the Cordell Retirement Loans before Cordell Retirement's entering into a contract for the sale of any of the three properties, any such property not already conveyed or under contract will be reconveyed to the original owner (or such other entity as it shall direct) by quit claim deed from Cordell Retirement. Borrowers shall be solely responsible for recording such deeds and paying all expenses related thereto. If any of the properties are under contract, Cordell Retirement will retain title to the property and shall deliver to the original owner thereof (or such entity as it shall direct) the net sales proceeds when and if a closing should occur. If the contract is terminated, then Cordell Retirement shall reconvey the property. If the reconveyance relates to either of the Condominiums, Cordell Retirement will quit claim assign the tenant leases to the original owner (or entity it shall direct) and turn over the tenant security deposits.

5.3     In the event that Lenders agree to assign any of the Loans to Borrowers' new lender(s), such assignments shall be made by Lenders without representation, warranty or recourse of any nature whatsoever.

## SECTION 6. MISCELLANEOUS

6.1     ACKNOWLEDGMENT OF VALIDITY; ENFORCEABILITY OF LOAN DOCUMENTS AND RELEASE.

(a)     In the event of any inconsistencies between the terms and provisions of this Agreement and the terms and provisions of the Loan Documents, this Agreement shall govern. In all other respects the Loan Documents shall remain in full force and effect. Borrowers expressly acknowledge and agree that the Loan Documents are valid and enforceable by Lenders, and expressly confirm, ratify and reaffirm each of their obligations under the Loan Documents, free and clear of all defenses, offsets and counterclaims of any kind or nature. Borrowers agree that they shall not dispute the validity or enforceability of the Loan Documents or any of their respective obligations thereunder, or the validity, priority, enforceability or extent of the liens created by the Loan Documents.

9

(b)    Each Borrower on behalf of itself and any person claiming by and through or under them, represents and warrants that there are no claims, causes of action, suits, debts, obligations, liabilities or demands of any kind, character or nature whatsoever, fixed or contingent, which any Borrowers may have, or claim to have, against any Lender, with respect to the subject matter hereof, the Loan Documents or matters relating thereto, and each Borrower hereby releases, acquits and forever discharges Lenders, and each of them, and their respective agents, employees, officers, directors, servants, representatives, attorneys, affiliates, successors and assigns (collectively, the "Released Parties") from any and all liabilities, claims, suits, debts, causes of action and the like of any kind, character or nature whatsoever, known or unknown, fixed or contingent that Borrowers may have, or claim to have, against any of such Released Parties with respect to the subject matter hereof, the Loan Documents or matters relating thereto from any action taken from the beginning of time until and through the date of execution and delivery of this Agreement.

6.2    EXPENSES.  Borrowers shall reimburse Lenders, upon demand, for all fees, costs and expenses (including, but not limited to, reasonable attorneys' and consultants' fees, costs and expenses) incurred by Lenders or any of them in connection with any defaults under the Loan Documents (including but not limited to those specified herein) and this Agreement including, but not limited to, such fees, costs and expenses incurred in connection with the negotiation, drafting, implementation, administration and enforcement of this Agreement and the other Loan Documents.

6.3    AMENDMENTS.  No amendment or modification of any provision of this Agreement shall be effective without the written agreement of Lenders, and no termination or waiver of any provision of this Agreement, or consent to any departure therefrom, shall in any event be effective without the written consent of Lenders.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

6.4    DEFAULT WAIVER.  Failure at any time or times hereafter on the part of Lenders to require strict performance by Borrowers with any provision or term of this Agreement shall not waive, affect or diminish any right of Lenders thereafter to demand strict compliance and performance therewith.  Any suspension or waiver by Lenders of a Default or Event of Default shall not, except as may be expressly set forth herein, suspend, waive or affect any other Default or Event of Default, whether the same is prior or subsequent thereto and whether of the same or of a different kind or character.

6.5    SOLE BENEFIT OF PARTIES.  This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other person or entity shall have any right, benefit or interest under or because of the existence of this Agreement.

6.6    SECTION TITLES.  The section titles contained in this Agreement are included for the sake of convenience only, shall be without substantive meaning or content of any kind whatsoever, and are not a part of the agreement between the parties.

6.7    WAIVER BY LENDERS.  No course of dealing between Borrower and any Lender and no delay or omission by any Lender in exercising any right or remedy under this Agreement or the other Loan Documents or with respect to the Obligations shall operate as a

10

waiver thereof or of any other right or remedy, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy. All rights and remedies of Lenders are cumulative.

6.8 SEVERABILITY. The provisions of this Agreement are independent of and separable from each other, and no such provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other such provision may be invalid or unenforceable in whole or in part. If any provision of this Agreement is prohibited or unenforceable in any jurisdiction, such provision shall be ineffective in such jurisdiction only to the extent of such provision or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent it is not prohibited or unenforceable nor render prohibited or unenforceable such provision in any other jurisdiction.

6.9 ENTIRE AGREEMENT. This Agreement and the other Loan Documents constitute the entire agreement and understanding between the parties hereto with respect to the transactions contemplated hereby and supersede all prior negotiations, understandings and agreements between such parties with respect to such transactions. This Agreement may not be modified in any respect except by a written instrument executed by all parties hereto.

6.10 APPLICABLE LAW. THIS AGREEMENT AND THE TRANSACTIONS EVIDENCED HEREBY SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. BORROWERS AND LENDERS HEREBY AGREE THAT THE EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN NEW YORK COUNTY, NEW YORK. BORROWERS AND LENDERS AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF BORROWERS OR LENDERS. BORROWERS AND LENDER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.

6.11 CONSULTATION WITH COUNSEL. THE PARTIES HERETO REPRESENT TO LENDERS THAT THEY HAVE DISCUSSED THIS AGREEMENT WITH THEIR ATTORNEYS.

6.12 COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile transmission shall be equally effective as a manually delivered executed counterpart hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first set forth above.

_____
Edward H. Okun, Individually

IPOFA 5201 LENDER, LLC

By:    IPofA Fund Manager, LLC, a Virginia limited liability company, its Manager

By: _____
Name: EDWARD H. OKUN
Its: MANAGER


IPOFA SHREVEPORT INDUSTRIAL PARK, LLC

By:    IPofA Fund Manager, LLC, its Manager

By: _____
Name: Edward H. Okun
Its: MANAGER


SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005


By: _____
Name: _____
Its: _____


12

08/13/2007 [TX/RX NO 5381] @002

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first set forth above.

_____
Edward H. Okun, Individually

IPOFA 5201 LENDER, LLC

By:    IPofA Fund Manager, LLC, a Virginia limited liability company, its Manager

      By:_____
      Name:_____
      Its:_____


IPOFA SHREVEPORT INDUSTRIAL PARK, LLC

By:    IPofA Fund Manager, LLC, its Manager

      By:_____
      Name:_____
      Its:_____


SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005

By:_____
Name: Sherrill Melrose
Its: Sole Member

12

CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified
Retirement Plan Trust

By: _____
Name: Robin Rodriguez
Its: Trustee

CORDELL FUNDING, LLLP

By: _____
Name: Robin Rodriguez
Its: Managing Partner

13

The undersigned, as guarantors of certain of the Loans, hereby (i) acknowledge the contents of the foregoing Loan Modification Agreement, (ii) consent to its execution by Borrowers, (iii) agree that their respective guaranties are hereby spread so that each such guaranty shall cover each and every payment and performance obligation due from each Borrower pursuant to the Promissory Notes, Loan Agreements and other Loan Documents executed and delivered to Lenders in connection with each and every of the Loans, and (iv) hereby ratify and confirm their respective guaranties, as spread hereby.

_____
Edward H. Okun, Individually


INVESTMENT PROPERTIES OF AMERICA, LLC

By: _____
Name: Edward H. Okun
Its: MANAGER


CROSSROADS TRANSPORTATION & LOGISTICS, INC.

By: _____
Name: Edward H. Okun
Its: MANAGER


SIMONE CONDO I, LLC

By: _____
Name: Edward H. Okun
Its: Sole Member


SIMONE CONDO II, LLC

By: _____
Name: Edward H. Okun
Its: Sole Member


14

This Loan Modification Agreement has been received and accepted by:

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE 1031 TAX GROUP, LLC, et al.

By: _____
Name: Stephen M. Gray
Its: Co-Chair Member

THE 1031 TAX GROUP, LLC, et al.

By: _____
Name:

JPS CAPITAL PARTNERS, LLC

By: _____
Name:
Its: Member

15

This Loan Modification Agreement has been received and accepted by:

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE 1031 TAX GROUP, LLC, et al.

By: _____
Name:
Its: Co-Chair Member

THE 1031 TAX GROUP, LLC, et al.

By: _____
Name: JAMES M. LUKENDA
Chief Restructuring Officer

JPS CAPITAL PARTNERS, LLC

By: _____
Name:
Its: Member

This Loan Modification Agreement has been received and accepted by:

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE 1031 TAX GROUP, LLC, et al.

By:_____
Name:
Its: Co-Chair Member

THE 1031 TAX GROUP, LLC, et al.

By:_____
Name:

JPS CAPITAL PARTNERS, LLC

By:_____
Name: PAUL SCHAAL
Its: Member

15

Exhibit 1                         Cordell Retirement Loans

(a) $2,500,000 loan to IPofA 5201, which loan is evidenced by that certain Promissory Note dated December 12, 2006 from IPofA 5201 payable to the order of Cordell Retirement (the "5201 Note"), repayment of which 5201 Note is secured by, among other things, a pledge to Cordell Retirement of IPofA 5201's interest in that certain Promissory Note (the $7.1 Mil Note") dated February 2, 2005 in the original principal amount of $7,100,000 made by WEST 86TH STREET 1, LLC, IPofA WEST 86TH STREET 2, LLC, IPofA WEST 86TH STREET 3, LLC, IPofA WEST 86TH STREET 4, LLC, IPofA WEST 86TH STREET 5, LLC, IPofA WEST 86TH STREET 6, LLC, IPofA WEST 86TH STREET 7, IPofA WEST 86TH STREET 8, LLC, IPofA WEST 86TH STREET 9, LLC, IPofA WEST 86TH STREET 10, LLC, IPofA WEST 86TH STREET 11, LLC, IPofA WEST 86TH STREET 12, LLC, IPofA WEST 86TH STREET 13, LLC, IPofA WEST 86TH STREET 14, LLC, IPofA WEST 86TH STREET 15, LLC, IPofA WEST 86TH STREET 16, LLC, IPofA WEST 86TH STREET 17, LLC, IPofA WEST 86TH STREET 18, LLC, IPofA WEST 86TH STREET 19, LLC, IPofA WEST 86TH STREET 20, LLC (collectively, "Obligor") to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), the Mortgage and Security Agreement dated February 2, 2005 made by Obligor and IPofA West 86th Street LeaseCo, LLC to Morgan Stanley, and the other Loan Documents described in the 5201 Note.

(b) $3,000,000 loan to Edward H. Okun, which loan is evidenced by that certain Promissory Note dated December 19, 2006 from Edward H. Okun payable to the order of Cordell Retirement (the "$3mil Okun Note"), repayment of which $3mil Okun Note is secured by, among other things (i) that certain First Priority Real Estate Mortgage And Security Agreement dated December 19, 2006 encumbering the premises located at 10548 Coppergate Drive, Carmel, Indiana, together with the assignment of leases and rents thereto, (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida, (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 3404 at 901 Brickell, Miami, Florida, and (iv) the other Loan Documents described in the $3mil Okun Note.

(c) $7,000,000 loan to Edward H. Okun, which loan is evidenced by that certain Promissory Note dated April 20, 2007, from Edward H. Okun payable to the order of Cordell Retirement (the "$7mil Okun Note"), repayment of which $7mil Okun Note is secured by, among other things (i) that certain third priority Mortgage Deed and Security Agreement dated April 20, 2007 encumbering the premises at 394 S. Hibiscus Drive, Miami Beach, Florida 33139, (ii) Collateral Assignment of Membership Interest dated April 20, 2007 by which the membership interest in IPofA Salina Central Mall Member, LLC were assigned to Cordell Retirement, and (iii) the other Loan Documents described in the $7mil Okun Note.

Exhibit 2                     Cordell Funding Loans

(a)  $26,500,000 loan to Sam Trustee Services, LLC, trustee, which loan is evidenced by that certain Promissory Note dated May 3, 2006, from Sam Trustee Services, LLC, as trustee of the Columbus Works Virginia Trust and of the Parkway Virginia Trust, payable to the order of Cordell Funding (the "Sam Note"), repayment of which Sam Note is secured by, among other things a Collateral Assignment, a Security Agreement, a Guaranty, a Stock Pledge Agreement, a Membership Interest Pledge and the other Loan Documents described in the Sam Note.

(b)  $13,416,000 loan to IPofA Shreveport Industrial Park, LLC, which loan is evidenced by that certain Promissory Note dated February 26, 2007, from IPofA Shreveport Industrial Park, LLC payable to the order of Cordell Funding (the "Shreveport Note"), repayment of which Shreveport Note is secured by, among other things a Loan Agreement, Promissory Note, Mortgage, Security Agreement and Assignment of Leases and Rents, Guaranty Agreement and the other Loan Documents described in the Shreveport Note and related Loan Agreement.

| Exhibit 3 | Outstanding Indebtedness[1] |
|---|---|
| 5201 Note: | $2,618,351.05 (as of August 1, 2007) |
| $3mil Okun Note: | $3,196,251.70 (as of August 1, 2007) |
| $7mil Okun Note: | $7,609,700.00 (as of August 1, 2007) |
| Sam Note: | $28,718,730.87 (as of August 1, 2007) |
| Shreveport Note: | $14,568,822.91 (as of August 1, 2007) |

---

[1] Includes payments due through July 31, 2007.

18

Ex 4

August 14, 2007

Simone Condo II, LLC
10800 Midlothian Turnpike
Suite 300
Richmond, VA 23235

      Re:    **Carbonell Condominium**
              **Unit 1808**
              **901 Brickell Key Boulevard**
              **Miami, Florida 33131**

Ladies and Gentlemen:

This letter will acknowledge that the undersigned is occupying the above-referenced condominium unit on a month-to-month basis, at a rental of $4,500.00 per month. There are no security deposits paid or due.

              Very truly yours,

              Gary Bassett

JC/db

*Ex 9*

August 14, 2007

Simone Condo I, LLC
10800 Midlothian Turnpike
Suite 300
Richmond, VA 23235

      Re:    **Carbonell Condominium**
               **Unit 3404**
               **901 Brickell Key Boulevard**
               **Miami, Florida 33131**

Ladies and Gentlemen:

    This letter will acknowledge that the undersigned is occupying the above-referenced condominium unit on a month-to-month basis, at a rental of $3,500.00 per month. There are no security deposits paid or due.

                                  Very truly yours,

                                    John Cantrell

JC/db

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CORDELL CONSULTANTS INC., MONEY
PURCHASE PLAN, a Qualified Florida
Retirement Plan Trust,

Plaintiff,

- against -

EDWARD H. OKUN; IPOFA 5201 LENDER,
LLC; INVESTMENT PROPERTIES OF
AMERICA, LLC; CROSSROADS
TRANSPORTATION & LOGISTICS, INC.;
SIMONE CONDO I, LLC; and SIMONE
CONDO II, LLC,

Defendants.

Index No. _____

**Affidavit of Confession of
Judgment**

---

Edward Okun, (hereinafter "Okun"), being duly sworn deposes and says:

1.    I am an individual who maintains his principal place of business at c/o Investment

Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235

and the managing member of the above-captioned defendants (Okun, together with all of the

defendants, hereinafter, the "Defendants") as follows:

(i) IPOFA 5201 LENDER, LLC ("IPofA 5201"), a Delaware limited liability company,
maintains its principal place of business at c/o Investment Properties of America, LLC,
10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235 (Okun, Sam and
IPofA 5201 shall collectively be referred to as the "Borrowers");

(ii) INVESTMENT PROPERTIES OF AMERICA, LLC, a Virginia limited liability
company, maintains its principal place of business at 10800 Midlothian Turnpike, Suite
309, Richmond, Virginia 23235;

(iii) CROSSROADS TRANSPORTATION & LOGISTICS, INC. ("Crossroads"), a
Delaware corporation, maintains a place of business at 10800 Midlothian Turnpike, Suite
309, Richmond, Virginia 23235;

(iv) SIMONE CONDO I, LLC ("Simone I"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235;

(v) SIMONE CONDO II, LLC ("Simone II"), a Delaware limited liability company, maintains a place of business at 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

2. Plaintiff CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN ("Cordell Retirement" or "Lender"), a Qualified Florida Retirement Plan Trust, maintains its principal place of business at 3333 Poinciana Avenue, Coconut Grove, Florida 33133.

3. The Defendants hereby confess judgment herein and authorizes entry thereof against Defendants, for the sum of $ 13,424,302.05 through July 31, 2007 as expressly detailed in the annexed Schedule "A", plus interest and default interest as provided under the Modification Agreement (as defined below), plus reasonable and necessary attorneys fees (collectively, the "Obligation"). I hereby authorize Lender, its successors or assignee, to enter judgment against Defendants in the full amount of the Obligation as provided in the preceding sentence.

5. This confession of judgment is for amounts justly due and owing to Lenders arising out of the following facts:

a. By loan modification agreement (the "Modification Agreement") dated as of August 10, 2007, Defendants agreed to pay Lender certain amounts as detailed more fully in the Modification Agreement on or before November 1, 2007 or in the event of a Modification Default as defined in the Modification Agreement.

b. Pursuant to the Modification Agreement, upon Defendants' default in repaying all of Cordell Funding Loans in full as expressly provided under the Modification Agreement on or before November 1, 2007 or in the event of a Modification Default, Defendants agree to entry of

judgment in Lender's favor in the full amount of the Obligation as expressly provided for in the annexed Schedule "A", together with all default interest accruing on and after August 1, 2007 and reasonable attorneys fees and expenses without further notice or demand.

c. Defendants have failed to make the required payments or are otherwise in default under the Modification Agreement, and accordingly, Lenders shall be immediately entitled to enter judgment against Defendants on the Obligation.

Edward Okun, individually, and on behalf of and authorized signatory for the above-captioned defendants

State of ~~New York~~ New Hampshire )

County of ~~New York~~ Carroll ) ss:

Sworn to before me this 15th day of August, 2007

Notary Public

Schedule A                  Outstanding Indebtedness[1]

5201 Note:               $2,618,351.05 (as of August 1, 2007)

$3mil Okun Note:       $3,196,251.70 (as of August 1, 2007)

$7mil Okun Note:       $7,609,700.00 (as of August 1, 2007)

---

[1] Includes payments due through July 31, 2007.

## SUPPLEMENT TO LOAN MODIFICATION AGREEMENT[1]

This Supplement to Loan Modification Agreement (this "Supplemental Agreement") is entered by and among CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified Retirement Plan Trust ("Cordell Retirement") and CORDELL FUNDING, LLLP, a Florida limited liability limited partnership ("Cordell Funding"; together with Cordell Retirement, the "Lenders"), each having a mailing address of 3333 Poinciana Avenue, Coconut Grove, Florida 33133, Attention: Robin Rodriguez; and EDWARD H. OKUN ("Okun"), IPOFA SHREVEPORT INDUSTRIAL PARK, LLC, a Delaware limited liability company ("IPofA Shreveport"), SAM TRUSTEE SERVICES, LLC, a Virginia limited liability company, as trustee of the Columbus Works Virginia Trust created pursuant to the Irrevocable Trust Agreement dated March 15, 2005, as amended July 7, 2005, and as trustee of the Parkway Virginia Trust created pursuant to the Irrevocable Trust Agreement dated February 22, 2005 ("Sam") and IPOFA 5201 LENDER, LLC, a Delaware limited liability company ("IPOFA 5201"; together with IPofA Shreveport, Sam and Okun, the "Borrowers"), each having a principal place of business at c/o Investment Properties of America, LLC, 10800 Midlothian Turnpike, Suite 309, Richmond, Virginia 23235.

WHEREAS, that certain Loan Modification Agreement (the "Loan Modification Agreement") was executed by the Borrowers, and which Loan Modification Agreement was acknowledged and accepted by each of the guarantors (the "Guarantors") of the Loans, 1031 Tax Group, Inc. and its affiliates (collectively, "1031 Tax Group"), the Official Creditors' Committee of 1031 Tax Group (the "Creditors' Committee"), and JPS CAPITAL PARTNERS, LLC ("JPS"; collectively, Lenders, Borrowers, Guarantors, 1031 Tax Group, Creditors' Committee and JPS, the "Parties") on August 15, 2007; and

WHEREAS, Lenders and Borrowers entered into a certain Escrow Agreement (the "Escrow Agreement") dated on or about August 1, 2007 as referenced in Paragraph 1.1 of the Loan Modification Agreement; and

WHEREAS, a dispute amongst the Parties arose over interpretation of certain provisions of the Loan Modification Agreement on August 16, 2007; and

WHEREAS, in order to facilitate the implementation of the foregoing agreements, and after further discussion between the Parties and their respective counsel, the Parties have agreed to enter the within Supplemental Agreement which modifies the Loan Modification Agreement and Escrow Agreement solely as expressly provided hereunder (the Loan Modification Agreement and Escrow Agreement, as modified by this Supplemental Agreement, are hereafter referred to as the "Amended Loan Modification Agreement" and the "Amended Escrow Agreement", respectively. The Effective Date of the Amended Loan Modification shall be the date of execution hereof).

---

[1] Capitalized terms shall have the meaning as ascribed in the Loan Modification Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. Wilmington Trust (*i.e.,* the Escrow Agent) is hereby authorized and directed to immediately disburse all funds now held in Escrow by it to Lenders by wire transfer to one or more accounts designated by Lenders. Any funds hereinafter received by Wilmington Trust pursuant to the Amended Escrow Agreement are directed to be immediately sent by wire transfer to Lenders.

2. The payment(s) originally required to be paid into escrow (*i.e.,* to Wilmington Trust) on August 17, 2007 totaling $129,616 pursuant to the Loan Modification Agreement and Escrow Agreement shall be paid directly to Lenders simultaneously with the execution of this Supplemental Agreement by wire transfer of immediately available funds to an account or accounts designated by Lenders.

3. All future payments required to be paid by Borrowers under the Amended Loan Modification Agreement and Amended Escrow Agreement shall be paid directly to Lenders rather than to Wilmington Trust. Such payments shall be made in the amounts set forth in Paragraph 6 of this Supplemental Agreement and within the same deadlines as otherwise required under the Amended Loan Modification Agreement and Amended Escrow Agreement, it being the intention of the Parties that Lenders receive the full amount of funds payable pursuant to the Amended Escrow Agreement and Amended Loan Modification Agreement going forward as expressly provided for in the Amended Escrow Agreement. Based on the Budgets provided by Borrowers, the amounts to be paid Lenders are as set forth in Paragraph 6 hereof.

4. All payments to Lenders under the above Paragraphs 1, 2, and 3, shall be applied by Lenders in their sole discretion as provided for in the underlying Loan Documents, and shall be applied first to reduce costs and attorneys fees, default interest and interest.

5. It shall be an additional Event of Default under the Amended Loan Modification Agreement if Borrowers fail to timely comply with the requirements under Section 1.1 of the Amended Loan Modification Agreement except that payments shall be made to Lenders and not the Wilmington Trust. Except as modified pursuant to this Supplemental Agreement, all of the terms and provisions of the Loan Modification Agreement and Escrow Agreement are and shall remain in full force and affect.

6. In addition to their other obligations under the underlying Loans, the Amended Loan Modification Agreement and the Amended Escrow Agreement, Borrowers shall pay Lenders the full mortgage payments due pursuant to Section 1(i) of the Amended Escrow Agreement for September 2007 and October 2007 within the time required under the Amended Loan Modification Agreement and Amended Escrow Agreement (except August 2007 shall be paid as provided for under Paragraphs 1 and 2 above). Such payments shall be made prior to any payments to the tenants in common ("TICS") which own the properties described below. No payments shall be made to the TICS

2

unless and until Lenders have been paid the full amounts due under this Paragraph 6. The amounts due to be paid to Lenders for each property are as follows:

Columbus Works:    Monthly mortgage payments to Cordell Funding $193,436.

5201 Warehouse:    Monthly mortgage payments to Cordell Retirement $44,452.

Parkway:    Monthly mortgage payments to Cordell Funding $16,728.

7. Borrowers agree to pay Lenders a forbearance fee (the "Forbearance Fee") in the amount of $100,000, which shall be added to the total obligations due to Lenders in such allocation as the Lenders may determine in their sole discretion. The Forbearance Fee shall be paid to Lenders in cash or wire transfer of immediately available funds on or before the earlier of (i) payment of the October 2007 payment to the TICS; (ii) closing on the New Financing; or (iii) November 1, 2007.

8. Provided that Borrowers have paid Lenders the Forbearance Fee and timely made the other payments to Lender contemplated hereby and by the Amended Loan Modification Agreement and the Amended Escrow Agreement, they may make the October 2007 payment to the TICS pursuant to the budget provided to Lenders under the Amended Loan Modification Agreement (the "Budget"). In no event shall the TICS receive any payments unless Lenders have been paid the Forbearance Fee and all other payments contemplated hereby and by the Amended Loan Modification Agreement and the Amended Escrow Agreement.

9. All Payments to the TICS shall be in accordance with the Budget and shall only be made provided the Amended Loan Modification Agreement is not in Default. Notwithstanding Lenders' agreement that the TICS may be paid as provided above, nothing herein shall be construed as an acknowledgement that payments to the TICS constitute "an ordinary and customary operating expense", which Lenders contest, or a waiver of any of the Lenders' rights.

10. No amendment or modification of any provision of this Supplemental Agreement shall be effective without the written agreement of Lenders, and no termination or waiver of any provision of this Supplemental Agreement, or consent to any departure therefrom, shall in any event be effective without the written consent of Lenders. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

11. Failure at any time or times hereafter on the part of Lenders to require strict performance by Borrowers with any provision or term of this Supplemental Agreement shall not waive, affect or diminish any right of Lenders thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Lenders of a Default or Event of Default shall not, except as may be expressly set forth herein, suspend, waive or affect any other Default or Event of Default, whether the same is prior or subsequent thereto and whether the same or of a different kind or character.

12. This Supplemental Agreement, the Amended Loan Modification Agreement, Amended Escrow Agreement, and the other Loan Documents constitute the entire agreement and understanding between the parties hereto with respect to the transactions contemplated hereby and supersede all prior negotiations, understandings and agreements between such parties with respect to such transactions. This Supplemental Agreement shall be deemed to be jointly drafted and may not be modified in any respect except by a written instrument executed by all parties hereto.

13. THIS SUPPLEMENTAL AGREEMENT AND THE TRANSACTIONS EVIDENCED HEREBY SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.  BORROWERS AND LENDERS HEREBY AGREE THAT THE EXCLUSIVE JURISDICTION AND VENUE LIES IN A COURT OF COMPETENT JURISDICTION IN NEW YORK COUNTY, NEW YORK.  THE PARTIES HERETO REPRESENT TO LENDERS THAT THEY HAVE DISCUSSED THIS SUPPLEMENTAL AGREEMENT WITH THEIR ATTORNEYS.

14. The Parties shall take such other actions as reasonably necessary to carry out the purposes and intent of this Supplemental Agreement.  To the extent the Plan is modified, it shall include provision for repayment of the Loans as provided for under the Amended Loan Modification Agreement and hereunder, otherwise the confirmation order shall so provide in either case in language reasonably satisfactory to Lenders. Lenders agree not to oppose the Plan or any modifications to same, so long as the Plan does not negatively impact the Lenders.

15. This Supplemental Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Delivery of an executed counterpart of this Supplemental Agreement by facsimile transmission shall be equally effective as a manually delivered executed counterpart hereof.  The parties shall deliver original counterparts as soon as practicable after execution.

IN WITNESS WHEREOF, the parties hereto have duly executed this Supplemental Agreement effective as of August 22, 2007.

_____
Edward H. Okun, Individually

IPOFA 5201 LENDER, LLC

By:    IPofA Fund Manager, LLC, a Virginia limited liability company, its Manager

By: _____
Name: _Edward Okun_____
Its: _____manager_____

IPOFA SHREVEPORT INDUSTRIAL PARK, LLC

By:    IPofA Fund Manager, LLC, its Manager

By: _____
Name: _Edward Okun_____
Its: _____manager_____

SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005

By: _____
Name: _____
Its: _____

5

08/23/2007 THU 21:24  [TX/RX NO 5852] @002

IN WITNESS WHEREOF, the parties hereto have duly executed this
Supplemental Agreement effective as of August 40, 22, 2007.

_____
Edward H. Okun, individually

IPOFA 5201 LENDER, LLC

By:    IPofA Fund Manager, LLC, a Virginia limited liability company, its Manager

    By:_____
    Name:_____
    Its:_____

IPOFA SHREVEPORT INDUSTRIAL PARK, LLC

By:    IPofA Fund Manager, LLC, its Manager

    By:_____
    Name:_____
    Its:_____

SAM TRUSTEE SERVICES, LLC,
a Virginia limited liability company, as trustee
of the Columbus Works Virginia Trust
created pursuant to the Irrevocable Trust Agreement
dated March 15, 2005 as amended July 7, 2007 and as
trustee of the Parkway Virginia Trust created
pursuant to the Irrevocable Trust Agreement dated
February 22, 2005

By:_____
Name: Sherrill Melroy
Its: Sole Member

5

CORDELL CONSULTANTS INC., MONEY PURCHASE PLAN, a Qualified
Retirement Plan Trust

By: _____
Name: _____
Its: _____

CORDELL FUNDING, LLLP

By: _____
Name: _____
Its: _____

6

The undersigned, as guarantors of certain of the Loans, hereby (i) acknowledge the contents of the foregoing Supplemental to Loan Modification Agreement, (ii) consent to its execution by Borrowers, (iii) agree that their respective guarantees are hereby spread so that each such guaranty shall cover each and every payment and performance obligation due from each Borrower pursuant to the Promissory Notes, Loan Agreements and other Loan Documents executed and delivered to Lenders in connection with each and every of the Loans, and (iv) hereby ratify and confirm their respective guaranties, as spread hereby.

_____

Edward H. Okun, as Guarantor


INVESTMENT PROPERTIES OF AMERICA, LLC, as Guarantor

By: _____
Name: _Edward Okun_____
Its: ____Manager_____


CROSSROADS TRANSPORTATION & LOGISTICS, INC. as Guarantor

By: _____
Name: _Edward Okun_____
Its: ____President_____


SIMONE CONDO I, LLC

By: _____
Name: Edward H. Okun
Its: Sole Member


SIMONE CONDO II, LLC

By: _____
Name: Edward H. Okun
Its: Sole Member


{Bankruptcy\6025\0047/M0463459 v.1; 8/22/2007 10:54 AM}

This Supplemental Loan Modification Agreement has been received and accepted by:

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE 1031 TAX GROUP, LLC, et al.


By:_____
Name:
Its: Co-Chair Member


THE 1031 TAX GROUP, LLC, et al.


By: _____
Name:


JPS CAPITAL PARTNERS, LLC

By: _____ 08/23/07
Name: PAUL SCHACK
Its: Member

{Bankruptcy\6025\0047\M0463459 v.1; 8/22/2007 10:54 AM}

This Supplemental Loan Modification Agreement has been received and accepted by:

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE 1031 TAX GROUP, LLC, et al.

By: Steven M. Gray
Name: Steven M. Gray (Attorney for Co-Chair Capital Associates, Ltd.)
Its: Co-Chair Member

THE 1031 TAX GROUP, LLC, et al.

By: _____
Name:

JPS CAPITAL PARTNERS, LLC

By: _____
Name:
Its: Member

This Supplemental Loan Modification Agreement has been received and accepted by:

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE 1031 TAX GROUP, LLC, et al.

By:_____
Name:
Its: Co-Chair Member


THE 1031 TAX GROUP, LLC, et al.

By: _____
Name: JAMES M. LUKENDA
Chief Restructuring officer


JPS CAPITAL PARTNERS, LLC

By: _____
Name:
Its: Member

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Douglas E. Spelfogel
direct dial: 212.569.4280
dspelfogel@bakerlaw.com

October 12, 2007

**VIA FACSIMILE**

Investment Properties of America LLC (Facsimile # 804-419-2190)
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235
Att: Edward H. Okun
    Laura Coleman

Kuger, Peretz, Kaplan & Berlin  (Facsimile # 305-379-3428)
201 South Biscayne Blvd.
Miami Center, Suite 1700
Miami, Florida 33131
Att: Eliot Abbott, Esq.
    Howard Berlin, Esq.

Re:    **Default Notice**

Dear Sirs and Madam:

Pursuant to the underlying loan and related agreements and guarantees with Cordell Retirement and Cordell Funding (together, "Cordell"), as well as the Loan Modification Agreement, it is a breach of such agreements and an event of default for Okun to transfer his assets or take any other steps which adversely impact his financial position or to otherwise deposit his assets with a trustee, receiver or other third party representative absent express written approval by Cordell.

Please take further notice that Cordell does not consent to any such transfers or sale(s).  In the event we do not receive written confirmation by 2:00 p.m. on Monday, October 15, 2007 that none of Okun's personal assets have been transferred or otherwise disposed of, together with written confirmation that Cordell's claims and interest, in Cordell's sole discretion, shall continue in and against any such assets notwithstanding any such transfer or sale, Cordell reserves all of its rights to immediately terminate the forbearance agreement and proceed to levy on all of its collateral and other assets subject to its claims and interests.

In addition, demand is made for an accounting to be received no later than 2:00 p.m. on Monday, October 15, 2007 confirming all disbursements from the collateral pursuant to

October 12, 2007
Page 2

the Escrow Agreement and Supplement, including but not limited to confirmation that no payments have been made to the so-called TICS for October 2007. In the event any such payment has been made to the so-called TICS, Cordell demands payment in cash by immediate wire transfer of the required $100,000 forbearance fee.

Lastly, Cordell demands written confirmation that a plan conforming to the Modification Agreement is still viable in all substantive terms required under such agreement.

Cordell does not by reason of this notice waive and or release any of its rights, claims and interests, amongst other things, all of which are expressly reserved.

Please be guided accordingly,

Very truly yours,

Douglas E. Spelfogel

cc:     Robin Rodriguez
        Andrew Drogen, Esq.
        Lawrence Markowitz, Esq.
        Steve Fox, Esq.
        Tom Weber, Esq.

101868920.1

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

October 17, 2007

Douglas E. Spelfogel
direct dial: 212.569.4280
dspelfogel@bakerlaw.com

**VIA FACSIMILE**

Edward H. Okun
IPofA 5201 Lender LLC
Investment Properties of America LLC
Crossroads Transportation & Logistics, Inc.
Simone Condo I, LLC
Simone Condo II, LLC
IPofA Shreveport Industrial Park, LLC
Sam Trustee Services, LLC as trustee of
the Columbus Works Virginia Trust and
Parkway Virginia Trust

(*see attached Notice List*)

Kuger, Peretz, Kaplan & Berlin
201 South Biscayne Blvd.
Miami Center, Suite 1700
Miami, Florida 33131
Att: Eliot Abbott, Esq.
    Howard Berlin, Esq.

Re:    **Notice of Modification Default**

Dear Sirs and Madam:

Please be advised, as a result of your continuing defaults pursuant to the underlying loan and related agreements and guarantees with Cordell Retirement and Cordell Funding (together, "Cordell"), as well as the Loan Modification Agreement, together with the failure to address the default related issued provided in our October 12, 2007 letter, you are hereby notified that a Modification Default (together with an Event of Default under the underlying Loan Documents) has occurred and is continuing, and that by virtue of the foregoing, the Loan Modification Agreement shall be and has matured as of the earlier of the date of the first Modification Default or close of business today, October 17, 2007.

October 17, 2007
Page 2

Please be further advised, pursuant to Section 5.2 of the Modification Agreement, all of the underlying Loans have previously been accelerated, and are due in full, together with interest, default interest, fees and all other costs and charges as provided under the underlying agreements.

Please be further advised that Cordell reserves all of its rights and remedies against the respective borrowers and guarantors, as well as to proceed to levy upon any and all of its respective collateral and other assets. Cordell does not by reason of this notice waive and or release any of its rights, claims and interests, amongst other things, all of which are expressly reserved.

Please be guided accordingly,

Very truly yours,

Douglas E. Spelfogel

cc:    Robin Rodriguez
       Andrew Drogen, Esq.
       Lawrence Markowitz, Esq.
       Steve Fox, Esq.
       Tom Weber, Esq.

## Notice List

IPofA 5201 Lender LLC (Facsimile # 804-419-2190)
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235
Att: Edward H. Okun
    Laura Coleman

Investment Properties of America LLC (Facsimile # 804-419-2190)
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235
Att: Edward H. Okun
    Laura Coleman

Crossroads Transportation & Logistics, Inc. (Facsimile # 804-419-2190)
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235
Att: Edward H. Okun
    Laura Coleman

Edward H. Okun (Facsimile # 804-419-2190)
394 S. Hibiscus Drive
Miami, Florida 33139

Simone Condo I, LLC (Facsimile # 804-419-2190)
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235

Simone Condo II, LLC (Facsimile # 804-419-2190)
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235

Kuger, Peretz, Kaplan & Berlin (Facsimile # 305-379-3428)
201 South Biscayne Blvd.
Miami Center, Suite 1700
Miami, Florida 33131
Att: Eliot Abbott, Esq.
    Howard Berlin, Esq.

IPofA Shreveport Industrial Park, LLC (Facsimile # 804-419-2190)
c/o of Edward Okun
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235

Sam Trustee Services, LLC as trustee of the (Facsimile # 804-419-2190)
Columbus Works Virginia Trust and
Parkway Virginia Trust
10800 Midlethian Turnpike
Suite 309
Richmond, Virginia 23235